**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHESTNUT STREET CONSOLIDATED, LLC,** | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. _____ |
| | : | |
| v. | : | |
| | : | |
| **BAHAA DAWARA,** | : | |
| | : | |
| **IMAD DAWARA,** | : | |
| | : | |
| **FATAN DAWARA** a/k/a **FATEN DAWARA** | : | |
| | : | |
| **MAISAA DAWARA,** | : | |
| | : | |
| **MIRVAT DAWARA,** | : | |
| | : | |
| **ABEER NAIM,** | : | |
| | : | |
| **HITHAM ALBAROUKI** a/k/a **HAITHAM ALBAROUKI**, | : | |
| | : | |
| and | : | |
| | : | |
| **DOE INDIVIDUALS (1-10),** | : | |
| | : | |
| **DOE ENTITIES (1-10),** | : | |
| | : | |
| Defendants. | : | |
| | : | |

## <u>COMPLAINT</u>

Plaintiff Chestnut Street Consolidated, LLC, by and through undersigned counsel, Gellert

Scali Busenkell & Brown LLC, hereby files the following Complaint:

**INTRODUCTION**

1.      On February 18, 2018, Imad Dawara and Bahaa Dawara (the "Dawara Arsonists") intentionally set fire to two beautiful buildings in the vibrant heart of historic Old City Philadelphia, 239 Chestnut Street and 241-43 Chestnut, Street (the "Buildings"), causing a 4-alarm fire that decimated these buildings, threatened many lives and caused tens of millions of dollars in property damage (the "Fire"). The Dawara Arsonists admitted setting the Fire and were convicted of conspiracy to commit arson, among other criminal charges.

2.      Plaintiff is the owner of claims against the Dawara Arsonists by purchase and assignment from the individual and corporate victims of the Dawara Arsonists' crimes. The assignors of these claims are the owners of multiple condominium units that were located in both Buildings on February 18, 2018, including all but one units in the completely destroyed Building at 239 Chestnut Street, and three out of eight units in the Building at 241-43 Chestnut Street[1]. These destroyed and severely damaged properties constitute all the uninsured real estate that was destroyed by the Fire in the Buildings, and much of the severely underinsured real estate.

3.      Shortly after the Dawara Arsonists' arrest on October 16, 2019, Plaintiff ant its predecessors in interest sued the Dawara Arsonists in the Philadelphia Court of Common Pleas (the "Philadelphia Case")[2]. After their guilty plea before this Court, the Dawara Arsonists expressly acknowledged that they are liable to Plaintiff in the Philadelphia Case[3].

---

[1] The names of the assignors of these claims are not disclosed in the open record in this case. The assignments of their claims are in the possession of the undersigned counsel at Gellert, Scali, Busenkell & Brown, LLC, and are available for examination *in camera* if necessary. The Plaintiff, through Gellert, Scali, Busenkell & Brown, LLC, will be responsible for the appropriate distribution of proceeds.

[2] Court of Common Pleas of Philadelphia County, November Term 2019, Case No. 03370. As of the present date, despite their guilty plea in this Court, the Dawara Arsonists continue to maintain their verified statements to the Philadelphia Court, that they did not set the Fire and have no idea who did.

[3] A true copy of the email from the Dawara Arsonists' counsel acknowledging their liability is attached hereto as Exhibit 12. While the amount of the liability has not yet been finalized by a final judgment, Plaintiff is an undisputed creditor of the Dawara Arsonists. There is also no dispute that the assignors' direct losses/damages, the

4.      As Plaintiff learned only on June 24, 2021, while the Dawara Arsonists were claiming to have accepted responsibility for their crimes before this Court and purported to express remorse and apologies to their victims (including in open court during the sentencing proceedings on June 22-24, 2021), behind the scenes they conspired to further harm their victims by fraudulently transferring their last remaining assets to their siblings in a brazen attempt to thwart their victims' ability to recover civil damages in the Philadelphia Case. This included clearly fraudulent transfers that took place within mere days of the Dawara Arsonists' arrest in 2019, followed by the audacious fraudulent transfers made in the weeks leading up to their sentencing by this Court.

5.      Among these fraudulent transfers are transfers of ten (10) properties previously owned by the Dawara Arsonists out of their names to joint ownership with relatives in November 2019 for $1 consideration, followed by further $1 transfers of at least some of these properties to Dawara Arsonists' siblings' names in or about April 2021.

6.      In this action Plaintiff seeks to claw back these fraudulent transfers. Principally, Plaintiff seeks to claw back the transfers of three properties valued at approximately $813,600 which the Dawara Arsonists do **not** have to sell under their restitution agreement with the government in their criminal case.

7.      Plaintiff also seeks an accounting of the assets of the Dawara Arsonists and to impose a trust over these assets to prevent any further dissipation of assets, as well as to discover what Plaintiff believes are other assets that have been transferred in a similarly fraudulent fashion.

8.      Plaintiff asks the court to void the transfers or obligations to the extent necessary to satisfy the Plaintiff's claim. The entire transactions should be set aside so that the transferred

---

corresponding claims assigned to Plaintiff, and the resulting liability of the Dawara Arsonists to Plaintiff, are in the millions of dollars, not including punitive damages and other causes of action.

property is returned to the ownership of the debtor so that the Plaintiff may proceed against it by legal process.

9.      Plaintiff asks the court to issue an attachment against the assets transferred along with other property of the transferees. This remedy permits the court to put the transferred assets directly under the control of the court from where the Plaintiff may cause it to be sold and the proceeds used to pay the debt. This remedy should be applied not only against the particular items that were fraudulently transferred, but also against any other property that might belong to the transferees to satisfy the debt.

10.     Plaintiff asks the court to issue an injunction against further transfers by either the Dawara Arsonists or transferees or both. Since it is clear that the transfers identified so far were fraudulent, an injunction is a speedy way of arranging that the property to be used to satisfy the debt, so value is not lost. Considering the history of the defendants' disregard of the law, the severest penalties for disobeying an injunction may be needed in this case.

**JURISDICTION AND VENUE**

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because this action involves a dispute between parties deemed citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

12.     To the extent permitted by law, this Court has supplemental jurisdiction over certain claims pursuant to 28 U.S.C. § 1367.

13.     Venue is properly laid in this judicial district pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiff s claims occurred in the Eastern District of Pennsylvania, and because all of the Defendants reside in the Eastern District of Pennsylvania.

**PARTIES**

14.     Plaintiff Chestnut Street Consolidated, LLC is a Delaware entity. All members of Plaintiff are Delaware corporations.

15.     Defendant Imad Dawara is an individual citizen of the Commonwealth of Pennsylvania currently held in the custody of the Federal Bureau of Prisons at 700 Arch St, Philadelphia, PA 19106.

16.     Defendant Bahaa Dawara is an individual citizen of the Commonwealth of Pennsylvania currently held in the custody of the Federal Bureau of Prisons at 700 Arch Street, Philadelphia, PA 19106.

17.     Upon information and belief, Defendant Fatan Dawara is an individual citizen of the Commonwealth of Pennsylvania currently residing at 19 Ridge Avenue, Norwood, PA 19074. Fatan Dawara is a sibling of the Dawara Arsonists. In fraudulent transfer transactions giving rise to this Complaint, Fatan Dawara disguised her name as Faten Dawara.

18.     Upon information and belief, Defendant Maisaa Dawara is an individual citizen of the Commonwealth of Pennsylvania currently residing at 305 Seminole Street, Lester, PA 19029. Maisaa Dawara is a sibling of the Dawara Arsonists.

19.     Upon information and belief, Defendant Mirvat Dawara is an individual citizen of the Commonwealth of Pennsylvania currently residing at 407 Seminole Street, Lester, PA 19029. Mirvat Dawara is a sibling of the Dawara Arsonists.

20.     Upon information and belief, Defendant Abeer Naim is an individual citizen of the Commonwealth of Pennsylvania currently residing at 1007 Milmont Avenue, Swarthmore, PA 19081. Abeer Naim is the spouse of Imad Dawara.

21.    Upon information and belief, Defendant Hitham Albarouki is an individual citizen of the Commonwealth of Pennsylvania currently residing at 132 South Scott Avenue, Glenolden, PA 19036. Hitham Albarouki is the brother-in-law of the Dawara Arsonists and the husband of Fatan Dawara. In fraudulent transfer transactions giving rise to this Complaint, Hitham Albarouki disguised his name as H**a**itham Albarouki.

22.    Defendants Imad Dawara, Bahaa Dawara, Fatan Dawara (a.k.a. Faten Dawara), Maissa Dawara, Mirvat Dawara, Abeer Naim, and Hitham Albarouki (a.k.a. Haitham Albarouki) are referred to herein collectively as the "Dawara Conspiracy Group."

<strong><u>FACTS COMMON TO ALL COUNTS</u></strong>

**<u>Incorporation of Related Criminal Dockets</u>**

23.    Plaintiff incorporates by reference thereto the criminal dockets in the following cases in the U.S. District Court for the Eastern District of Pennsylvania:

- 2019-cr-00414 – USA. v. IMAD DAWARA and BAHAA DAWARA

- 2020-cr-00104 – USA. v. IMAD DAWARA and BAHAA DAWARA

- 2020-cr-00391 – USA v. ABEER NAIM

24.    The above dockets generally represent, respectively, the arson case against the Dawara Arsonists; the tax evasion and healthcare program fraud case against the Dawara Arsonists; and the healthcare program fraud case against Abeer Naim, the wife of Imad Dawara.

**<u>The Arson Conspiracy</u>**

25.    On February 18, 2018, the Dawara Arsonists intentionally started the Fire that destroyed or severely damaged the leased premises and Plaintiff's other real and tangible property.

26.    On July 18, 2019, a federal grand jury returned a 10-count indictment against the Dawara Arsonists for the arson conspiracy and related crimes.

6

27.     On October 16, 2019, the Dawara Arsonists were arrested at the Philadelphia International Airport.

28.     On February 25, 2021, the Dawara Arsonists pled guilty to the arson conspiracy, as well as the subsequently charged crimes of tax evasion and fraud against the United States.

29.     On June 22 and 24, 2021, respectively, Imad Dawara and Bahaa Dawara were sentenced by this Court to identical prison sentences of 108 months and ordered to pay over $22 million in restitution.

30.     As part of their guilty pleas, the Dawara Arsonists have admitted to intentionally setting fire to the buildings located at 239 and 241-43 Chestnut Street on February 18, 2018.

31.     The Dawara Arsonists conspired to commit their violent crime of arson out of a dual motivation: financial gain and retribution against their landlord[4].

**The Concealment of Assets – Prior to Arrest**

32.     The Dawara Arsonists have significant ties to their native land of Syria and neighboring countries. Upon arrest in this case, Imad Dawara and Bahaa Dawara, both naturalized U.S. citizens, were found to also have Syrian passports.

33.     In 2019, the Dawara Arsonists traveled to Qatar and Lebanon, where they celebrated Bahaa Dawara's marriage to a Syrian citizen with their respective families.

34.     Bahaa Dawara has traveled out of the United States eight times in the last five years, with the majority of those trips to the Middle East.

35.     A potential witness close to Imad Dawara reported to the government that Imad Dawara was building a house in Syria prior to his arrest.

---

[4] The landlord is one of the assignors of the claims being pursued by Plaintiff in this action.

36.    Imad Dawara's and Bahaa Dawara's many business entities included a nightclub on Delaware Avenue, "B-Side," where they directed two other individuals to use their names as the listed owners of the club and the liquor license that they need to operate the club. This deception was admitted by Imad Dawara during an examination under oath.

37.    The government's financial analysis revealed the possible existence of cash hoards deliberately kept from bank accounts to avoid detection by the government.

38.    Imad Dawara offered $500,000 – in cash – to his neighbor in Swarthmore, Pennsylvania, to buy the neighbor's home for Bahaa Dawara to live there.

### The Concealment of Assets – After Arson and Arrest

39.    Since the arson on February 18, 2018 that gave rise to Plaintiff's claims, and particularly shortly after the arrest of the Dawara Arsonists on October 16, 2019, the Dawara Conspiracy Group engaged in the following well-orchestrated fraudulent transfers of at least ten (10) real estate properties (the "Properties") with approximate market value of $2,797,000[5], some transferred multiple times, diverting these valuable assets away from the Dawara Arsonists' names to the names of others in the Dawara Conspiracy Group, in each instance for a nominal consideration of $1:

| Ex[6] | Property / Parcel ID | Value | Transfers |
|---|---|---|---|
| 1 | 19 Ridgeway Ave Norwood, PA 19074 31-00-01187-00 | 350,600 | 11/2019: Bahaa Dawara => Bahaa Dawara & Faten Dawara *Bahaa Dawara and Faten (Fatan) Dawara are siblings |
| 2 | 305 Seminole St Essington, PA 19029 45-00-01849-00 | 240,800 | 11/2019: Imad Dawara => Imad Dawara & Maisaa Dawara 03/2021: Imad Dawara & Maisaa Dawara => Maisaa Dawara *Imad Dawara and Maisaa Dawara are siblings |

---

[5] Market value estimate obtained on www.zillow.com on June 30, 2021.
[6] The Exhibit number in the left column corresponds to the attached Exhibits 1 through 10, which contain true copies of deeds available in the public records of Delaware and Philadelphia counties. Exhibits 2 and 3 are produced as separate Exhibits 2A and 2B for the two deeds relating to 305 Seminole Street property, and separate Exhibits 3A, 3B and 3C for the three deeds relating to the 407 Seminole Street property.

8

| 3 | 407 Seminole St<br>Essington, PA 19029<br>45-00-01841-00<br>45-00-01841-01 | 222,200 | 11/2019: Imad Dawara => Imad Dawara & Mirvat Dawara<br>03/2021: Imad Dawara & Mirvat Dawara => Mirvat Dawara<br>*Imad Dawara and Maisaa Dawara are siblings |
|---|---|---|---|
| 4 | 1524 McKean St<br>Philadelphia, PA 19145<br>481103700 | 305,400 | 11/2019: Imad Dawara => Imad Dawara & Abeer Naim<br>*Imad Dawara and Abeer Naim are husband and wife<br>*Haitham (Hitham) Albarouki, who is Imad Dawara's brother-in-law and the husband of Faten Dawara, acted on behalf of Imad Dawara as his power of attorney in this transaction |
| 5 | 321 Massasiot St<br>Essington, PA 19029<br>45-00-00900-00 | 258,600 | 11/2019: Imad Dawara => Imad Dawara & Abeer Naim<br>*Imad Dawara and Abeer Naim are husband and wife |
| 6 | 224 Erickson Ave<br>Essington, PA 19029<br>45-00-00378-00 | 203,000 | 11/2019: Imad Dawara => Imad Dawara & Abeer Naim<br>*Imad Dawara and Abeer Naim are husband and wife |
| 7 | 312 Fern St<br>Darby, PA 19023<br>14-00-00812-00 | 73,800 | 11/2019: Bahaa Dawara => Bahaa Dawara & Faten Dawara<br>*Bahaa Dawara and Faten (Fatan) Dawara are siblings |
| 8 | 134 Garfield Ave<br>Woodlyn, PA 19094<br>38-02-00911-00 | 324,900 | 11/2019: Bahaa Dawara => Bahaa Dawara & Faten Dawara<br>*Bahaa Dawara and Faten (Fatan) Dawara are siblings<br>*Property sold 02/08/21 to satisfy restitution |
| 9 | 140-142 Garfield Ave<br>Woodlyn, PA 19094<br>38-02-00913-00<br>38-02-00912-00 | 289,000 | 11/2019: Bahaa Dawara => Bahaa Dawara & Faten Dawara<br>*Bahaa Dawara and Faten (Fatan) Dawara are siblings<br>*Property sold 02/24/21 to satisfy restitution |
| 10 | 1007 Milmont Avenue<br>Swarthmore, PA 19081<br>38-05-00790-01 | 528,700 | 11/2019: Imad Dawara => Imad Dawara & Abeer Naim<br>*Imad Dawara and Abeer Naim are husband and wife<br>*Property sold 05/14/21 to satisfy restitution |

40.    The ten Properties in the above table ("Schedule 1") fall in three groups with respect to the Dawara Arsonists' restitution agreement with the government in their criminal case:

a.    Three of the Properties, highlighted pink in the above table and numbered 8, 9, and 10, have been sold as part of the restitution agreement ("Sold Properties"). Plaintiff does not seek relief with respect to title of these Sold Properties but does seek punitive damages for their diversion and attempted concealment.

b.    Four of the Properties, highlighted yellow in the above table and numbered 4, 5, 6, and 7, are part of the restitution agreement and subject to sale, but have

9

not been sold as of the date of this Complaint ("Pending Properties"). Plaintiff does not seek relief with respect to title of these Pending Properties but does seek punitive damages for their diversion and concealment, the ability to collect any amount from their sale that is in excess of the $1,000,000 being collected as part of the restitution agreement, and punitive damages for their fraudulent conveyance.

c.  Three of the Properties, highlighted green in the above table and numbered 1, 2, and 3, are exempt from sale under the restitution agreement ("Subject Properties"). These three Subject Properties form the primary target of Plaintiff's collection and execution effort under this Complaint. Plaintiff seeks to avoid the transfers and the sale or turn over to Plaintiff to satisfy the Dawara Arsonists' debt to Plaintiff, as well as punitive damages for their diversion and attempted concealment.

41.    The transfers marked "11/2019" in the rightmost column of Schedule 1 have varying dates entered in the heading of the deed, next to the signature of the grantor, and the recording stamp by the county, with all three of these dates in each case falling within the approximately 2.5-month period between mid-October 2019 when the Dawara Arsonists were arrested, and late December 2019 by which time all these deeds were already recorded. The exact dates can be seen on Exhibits 1 through 10.

42.    The names of the Dawara Conspiracy Group members who received title to the Properties are believed to have been intentionally disguised in at least some of the cases to make these assets and transfers more difficult to discover. For example, while Fatan Dawara and Hitham Albarouki are listed with the spelling "FATAN" and "HITHAM" on the March 2020 deed to their

10

residence at 132 South Scott Avenue, Glenolden, PA 19036 (a true copy of which from the public records of Delaware County is attached as Exhibit 11), they listed their names slightly differently on the deeds attached as Exhibits 4 ("H**A**ITHAM") and 1, 7, 8, and 9 ("FAT**E**N") just a few months earlier in late 2019.

43. The above transfers were accomplished in an unabashed but poorly disguised effort to frustrate the recovery of Plaintiff on the substantial debt owed by the Dawara Arsonists.

44. Plaintiff believes and therefore avers that other transfers of other assets took place to divert assets from the Dawara Arsonists to other members of the Dawara Conspiracy Group and John Doe Defendants in a similarly fraudulent fashion, but unlike the transfers of the Properties, they may not have left a trail in the public record.

45. At all times since starting the Fire, being arrested, pleading guilty, and at all times thereafter through the present time, the Dawara Arsonists were aware of their growing financial obligations pursuant to the harm caused by the fire they intentionally started.

46. At least two out of three Subject Properties were transferred completely away from the Dawara Arsonists' names in April 2021, between the entry of the Dawara Arsonists' guilty plea and their sentencing. It was during this period that the Dawara Arsonists, through their attorney in the Philadelphia Case, represented the acceptance of liability, but delayed the entry of a judgment based on a purported delays in getting instructions from his clients about the amount.

47. It is now clear that the reason for the delay was not a genuine issue of fact, but the need to transfer the Subject Properties away from the Dawara Arsonists' names to the names of other members of the Dawara Conspiracy Group.

48. The Dawara Arsonists have acted to conceal and re-title their assets in order to evade the obligations owed to Plaintiff.

11

49.     In addition, the Dawara Arsonists have intentionally co-mingled their assets with those of the other Defendants.

50.     Upon information and belief, Dawara Arsonists have caused Defendants to acquire and maintain title to assets used or to be used by the Dawara Arsonists personally either under circumstances where the Dawara Arsonists did not receive any value or did not receive reasonably equivalent value, to avoid the possession of assets or cash that would be available to satisfy the obligations owed to Plaintiff.

51.     In addition to the Dawara Arsonists, who have been convicted of arson conspiracy, tax evasion, and healthcare fraud, other members of the Dawara Conspiracy Group have been found guilty of fraud and other misconduct as well. Specifically, on December 18, 2020, Abeer Naim pled guilty before this Court to three counts of healthcare fraud and conversion of government funds in criminal case 2:20-cr-00391-JS-1 in the Eastern District of Pennsylvania. On June 8, 2021, Abeer Naim was sentenced by this Court to three years of probation.

52.     While the Dawara Arsonists are known to own significant real estate and financial assets (listed in their names and otherwise), even before their arrest, they had a documented record of concealing and misrepresenting their assets, including placing assets in straw owners' names and dealing in large amounts of concealed cash. The Dawara Arsonists have pled guilty to the crime of Conspiracy to Defraud the United States in Case 2:20-cr-00104-JS in relation to their misconduct in placing significant valuable assets in straw owners' names.

53.     By their admitted conduct in setting the Fire to the Chestnut Street buildings where their business was located, the Dawara Arsonists also have a proven record of intentionally destroying their own valuable property.

54.    After their arrest, the Dawara Arsonists did not cease their misconduct, but doubled down on it by engaging in further fraudulent transfers that are facially obvious from Schedule 1 and the attached Exhibits 1-10. Their pattern of placing assets in the names of others has continued, and doubtless will continue unless they and their fellow members of the Dawara Conspiracy Group are stopped by this Court.

55.    If urgent assistance of this Court is not provided, there is little doubt that the three Subject Properties will be further transferred to others, likely completely outside the reach of Plaintiff.

56.    The facts set forth in this Complaint establish a substantive *prima facie* legal claim and circumstances that support an asset freezing injunction; that there is a strong likelihood that Plaintiff will prevail at trial on the merits; assets exist that are at risk of destruction or dissipation to satisfy a judgment; and that there is a very significant risk that (without an injunction) those assets will be destroyed or dissipated.

### COUNT I
### VOIDABLE TRANSFERS, PUVTA, 12 Pa.Stat. §§ 5101 – 5114
### AGAINST ALL MEMBERS OF THE DAWARA CONSPIRACY GROUP

57.    The foregoing Paragraphs are incorporated herein by reference as though set forth at length.

58.    The transfers of Properties in which the Dawara Arsonists had an interest to members of the Dawara Conspiracy Group were made after February 18, 2018.

59.    The Dawara Arsonists received no or insufficient value in exchange for each of said transfers.

60.    As a creditor of the Dawara Arsonists, Plaintiff was detrimentally affected.

61.     At the time of each of the transfers, the Dawara Arsonists were insolvent, or became insolvent, because of the transfers.

62.     At the time of each of the transfers, the Dawara Arsonists were engaged in a transaction, or were about to engage in a transaction, for which capital remaining with the transferor was unreasonably small.

63.     At the time of each of the transfers, the Dawara Arsonists intended to incur, or believed that they would incur, debts that would be beyond their ability to pay as such debts matured.

64.     The transfers constitute fraudulent transfers avoidable by Plaintiff.

65.     To the extent an initial transferee of any of the above-listed transfers or conveyances subsequently transferred such interests to an immediate or mediate transferee, as alleged with regard to various transfers discussed herein, such transfers are recoverable from such subsequent transferee.

66.     The transfers of the Properties were performed in an outrageous fashion by the Dawara Conspiracy Group. Section 7(a)(3)(iii) of PUVTA allows a court to award "any other relief the circumstances may require." This Court has previously interpreted the same clause in PUFTA, a predecessor law to PUVTA, to allow an award of punitive damages in especially egregious cases of fraudulent conveyance[7]. The case of arsonists and their relatives conspiring to conceal property from the victims of arson in a manner described in this Complaint is at the upper end of the range of egregious violations of the PUVTA.

---

[7] See, Klein v. Weidner (ED Pa Feb. 17, 2010), https://www.casemine.com/judgement/us/5914b0d8add7b04934755579, *affirmed* Klein v. Weidner, 729 F.3d 280 (3rd Cir. 2013). PA UVTA, which is a revision of PUFTA, has not altered the pertinent language of Section 7(a)(3)(iii).

67.     As a result of the foregoing, Plaintiff is entitled to a judgment: (a) avoiding and preserving the transfers, (b) directing that the transfers be set aside, (c) recovering the transfers, or the value thereof, from the Defendants for their sole benefit, and (d) punitive damages.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in their favor and against Defendants Dawara Arsonists and Dawara Conspiracy Group (a) avoiding and preserving the transfers of Subject Properties and Pending Properties for Plaintiff, (b) directing that the transfers of Subject Properties and Pending Properties be set aside, and (c) recovering the transfers, or the value thereof, from the Defendants for their sole benefit up to the amount owed to Plaintiff, or in another amount determined by the Court, plus (d) attorney's fees and costs and (e) punitive damages with respect to the transfer of all of the Properties in an amount determined by the Court, and (f) for such other relief as this Court deems proper and just.

<u>**COUNT II**</u>
**VOIDABLE TRANSFERS, PUVTA, 12 Pa.Stat. §§ 5101 – 5114**
**AGAINST ALL DEFENDANTS**

68.     The foregoing Paragraphs are incorporated herein by reference as though set forth at length.

69.     Upon information and belief, in addition to the ten (10) Properties, the Dawara Arsonists fraudulently transferred other and additional assets to others, including but not limited to other members of the Dawara Conspiracy Group and unknown John Doe Defendants, with actual intent to hinder, delay and defraud Plaintiff in the satisfaction of its claim, in violation of 12 PA. CONST. STAT. § 5104(a)(l).

70.     The assets, transfers and the identities of John Doe Defendants are expected to be identified during discovery in this case.

WHEREFORE, Plaintiff prays that the Court enter judgment in their favor and against Defendants Dawara Arsonists, other members of the Dawara Conspiracy Group, and John Doe Defendants when identified, (a) avoiding and preserving the transfers for Plaintiff, (b) directing that the transfers be set aside, (c) recovering the transfers, or the value thereof, from the Defendants for their sole benefit up to the amount owed to Plaintiff, or in another amount determined by the Court, plus (d) attorney's fees and costs and (e) punitive damages with respect to the transfer in an amount determined by the Court, and (f) for such other relief as this Court deems proper and just.

## COUNT III
## IMPOSITION OF AN ACCOUNTING
## AGAINST ALL DEFENDANTS

71.     The foregoing Paragraphs are incorporated herein by reference as though set forth at length.

72.     Upon information and belief, Defendants received assets and/or payments, including but not limited to the ten (10) Properties, from the Dawara Arsonists or and/or one or more business entities owned, managed and/or controlled by the Dawara Arsonists.

73.     Defendants are holding the Dawara Arsonists' assets in their name to avoid collection by Plaintiff or, in the alternative, Defendants substantially profited at the expense of the Dawara Arsonists and Plaintiff.

74.     The course of dealings between the Dawara Arsonists and other Defendants is a complicated series of transactions, involving other parties, with details of the transactions being either concealed or disguised.

75.     Plaintiff is entitled to obtain a full and accurate description of the amount and use of the assets and funds conveyed directly or indirectly to or for the benefit of any or all of the

Defendants, for the time period starting from February 18, 2018 and onward, to assist Plaintiff and the Court in the resolution of this controversy.

76.     On information and belief, the Dawara Arsonists and members of the Dawara Conspiracy Group were involved in a program of fraud and misrepresentation whereby assets were transferred, and monies were paid to, by, and among and between the Defendants, in a series of mutual and complicated account transactions and transfers. On information and belief, the primary purpose of the program was to conceal assets in which Dawara Arsonists maintained an interest or power.

77.     Plaintiff does not possess an adequate remedy at law.

78.     Plaintiff is entitled to and demands an accounting of all transfers,  benefits and services received directly or indirectly by or for the benefit of any or all Defendants,  including those paid to entities any of the Defendant(s) controlled or in which any of the Defendant(s) had an interest to include, *inter alia*, the description and amount of each transaction, the entity or individual(s) that withdrew or were paid the funds, and the  ultimate use or disposition of the funds or other things of value for the time period from the date of the Fire onward.

79.     Upon a determination of the disposition of said funds or items of value that Defendants received from Dawara Arsonists, Plaintiff demands the return of those assets, property or otherwise, as an asset of the Dawara Arsonists, and the imposition of a constructive trust on those assets wherever they may reside and/or judgment for a return of the assets or their value to Plaintiff, and such other relief as the court may determine to be just and proper.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in its favor and against Defendants and direct an accounting of all transfers, benefits and services received directly or indirectly by or for the benefit of any or all Defendants, including those paid to other entities

the Defendant(s) controlled or in which the  Defendant(s) had an interest damages, plus attorney's fees and costs, and for such other relief as may be proper and just.

## COUNT IV
### IMPOSITION OF CONSTRUCTIVE TRUST
### PLAINTIFF AGAINST ALL DEFENDANTS

80.    The foregoing Paragraphs are incorporated herein by reference as though set forth at length.

81.    In the alternative, Plaintiff has been wrongfully deprived of its rights due to the Defendants obtaining or holding legal property rights to various assets which they should not possess due to unjust enrichment or property interference.

82.    Defendants have a record of concealment and obfuscating their assets.

83.    Defendants have a record of using petty cash to conduct business and personal affairs, such as buying and selling real estate.

84.    Upon information and belief, Defendants have substantial overseas holdings, such as real estate in Syria.

85.    Plaintiff's recovery of damages is likely to be hindered or impossible unless a constructive trust is imposed over the assets of the Dawara Arsonists.

**WHEREFORE**, Plaintiff prays that the Court enter judgment imposing constructive trust over all assets of Defendants Dawara Arsonists, including any and all hidden assets of the Dawara Arsonists held in the names of the Dawara Conspiracy Group members or any other presently unidentified persons.

## COUNT V
### INJUNCTIVE RELIEF – ASSET FREEZE
### PLAINTIFF AGAINST ALL DEFENDANTS

18

86.    The foregoing Paragraphs are incorporated herein by reference as though set forth at length.

87.    The six factors relevant to the granting of preliminary injunctive relief are: (1) immediate and irreparable harm that cannot be adequately compensated by money damages; (2) greater injury would result from refusing the injunction than from granting it; (3) the preliminary injunction restores the parties to their status as it existed before the alleged wrongful conduct; (4) the movant is likely to prevail on the merits; (5) the preliminary injunction is reasonably suited to abate the offending activity; and (6) the preliminary injunction will not adversely affect the public interest.

88.    Plaintiff is facing immediate and irreparable harm resulting from the Defendants' ongoing scheme to render the Dawara Arsonists judgment–proof. Should the Dawara Conspiracy Group succeed in its efforts, significant assets will be liquidated and sent out of the country and forever out of reach of the Plaintiff.

89.    To prevent undue harm to the Defendants' flowing from the injunction, the preliminary injunction sought in this case is narrowly tailored to the harm presented. The injunction seeks to protect Plaintiff's right to actually collect a judgment to which the Dawara Arsonists have agreed in principle but yet not the amount[8], while not attaching to the non-Dawara Arsonists' property owned by members of the Dawara Conspiracy Group.

90.    The Dawara Arsonists have a record of concealing and obfuscating their assets.

91.    The Dawara Arsonists have a record of using petty cash to conduct business and personal affairs, such as buying and selling real estate.

---

[8] It is undisputed, however, that the sum of damages owed to Plaintiffs' assignors is in the millions of dollars. The Dawara Arsonists have admitted in this Court as part of their criminal proceedings that their victims' losses equal at least $22 million. The loss claims of Plaintiff's assignors constitute a significant part of this amount (the assignors owned all of the uninsured and much of the underinsured real estate destroyed in the Fire).

92.    Upon information and belief, the Dawara Arsonists have substantial overseas holdings, such as real estate in Syria.

93.    Defendants have no lawful right under Pennsylvania law to dissipate assets for the purpose of becoming judgment proof.

**WHEREFORE**, Plaintiff prays that the Court enter judgment freezing all of Defendants Bahaa Dawara's and Imad Dawara's assets, however titled, including but not limited to the four (4) Pending Properties and the three (3) Subject Properties.

Dated: July 8, 2021                          **GELLERT, SCALI, BUSENKELL & BROWN, LLC**

                                                          **/s/ Gary F Seitz**
                                             By:    Gary Seitz
                                                      Attorney I.D. No.: 52865
                                             1628 John F. Kennedy Boulevard, Suite 1901
                                             Philadelphia, Pennsylvania 19103
                                             Ph: (215) 238-0010
                                             Fx: (215) 238-0016
                                             gseitz@gsbblaw.com
                                             Attorneys for Plaintiff

20