# EXHIBIT A

**GELLERT, SCALI, BUSENKELL & BROWN, LLC**
By:   Gary Seitz       Attorney I.D. No.: 52865
       Holly Miller    Attorney I.D. No.: 203979
1628 John F. Kennedy Boulevard, Suite 1901
Philadelphia, Pennsylvania 19103
Ph: (215) 238-0010
Fx: (215) 238-0016
gseitz@gsbblaw.com
hmiller@gsbblaw.com
*Attorneys for Plaintiffs*

*Filed and Attested by the
Office of Judicial Records
11 MAY 2019 03:54 pm*

JURY TRIAL DEMAND
ASSESSMENT OF DAMAGES
REQUIRED

COMMERCE PROGRAM

| | |
|---|---|
| **FRESHER START INC ("FSC")** : | IN THE COURT OF COMMON PLEAS |
| c/o Gellert, Scali, Busenkell & Brown, LLC : | |
| 1628 John F. Kennedy Blvd., Ste. 1901 : | PHILADELPHIA COUNTY |
| Philadelphia, PA 19103 : | |
| : | NOVEMBER TERM, 2019 |
| and : | |
| : | NO. _____ |
| **DAVID CIURLINO ("CIURLINO")** : | |
| c/o Gellert, Scali, Busenkell & Brown, LLC : | |
| 1628 John F. Kennedy Blvd., Ste. 1901 : | |
| Philadelphia, PA 19103 : | **JURY TRIAL DEMANDED** |
| : | |
| and : | |
| : | |
| **STEVEN GELBART ("GELBART")** : | |
| c/o Gellert, Scali, Busenkell & Brown, LLC : | |
| 1628 John F. Kennedy Blvd., Ste. 1901 : | |
| Philadelphia, PA 19103 : | |
| : | |
| and : | |
| : | |
| **CHESTNUT STREET** : | |
| **CONSOLIDATED LLC ("CSC")** : | |
| c/o Gellert, Scali, Busenkell & Brown, LLC : | |
| 1628 John F. Kennedy Blvd., Ste. 1901 : | |
| Philadelphia, PA 19103 : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| **RCL MANAGEMENT LLC ("RCL")** : | |
| c/o Bahaa Dawara and Imad Dawara | |
| c/o Federal Bureau of Prisons : | |

700 Arch St, Philadelphia, PA 19106     :
    :
      and     :
    :
**BAHAA DAWARA ("Bahaa")**     :
c/o Federal Bureau of Prisons     :
700 Arch St, Philadelphia, PA 19106     :
    :
      and     :
    :
**IMAD DAWARA ("Imad")**     :
c/o Federal Bureau of Prisons     :
700 Arch St, Philadelphia, PA 19106     :
    :
      and     :
    :
**WESTCHESTER / ILLINOIS UNION**     :
**INSURANCE COMPANY ("Chubb")**     :
436 Walnut Street, Philadelphia, PA 19106     :
    :
      and     :
    :
**DOE INDIVIDUALS (1-10)**     :
    :
      and     :
    :
**DOE ENTITIES (1-10)**     :
    :
          Defendants.     :
_____ :

## COMPLAINT - CIVIL ACTION

### NOTICE TO DEFEND

      YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THE COMPLAINT AND NOTICE ARE SERVED, BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**
**Philadelphia Bar Association**
**Lawyer Referral and Information Service**
**1101 Market Street, 11th Floor**
**Philadelphia, PA 19107**
**(215) 238-6333**

**AVISO**

LE HAN DEMANDADO A USTED EN LA CORTE, SI DESEA DEFENDERSE CONTRA LAS QUEJAS PERSESENTADA, ES ABSOLUTAMENTE NECESSARIO QUE USTED RESPONDA DENTRO DE 20 DIAS DESPUES DE SER SERVIDO CON ESTA DEMANDA Y AVISO. PARA DEFENDERSE ES NECESSARIO QUE USTED, O SU ABOGADO, REGISTRE CON LA CORTE EN FORMA ESCRITA, EL PUNTO DE VISTA DE USTED Y CUALQUIER OBJECCION CONTRA LAS QUEJAS EN ESTA DEMANDA.

RECUERDE: SI USTED NO RESPONDE A ESTA DEMANDA, SE PUEDE PROSEGUIR CON EL PROCESO SIN SU PARTICPACION. ENTONCES, LA COUTE PUEDE, SIN NOTIFICARIO, DECIDIR A FAVOR DEL DEMANDANTE Y REQUERIRA QUE USTED CUMPLA CO TODAS LAS PROVISIONES DE ESTA DEMANDA. POR PRAZON DE ESA DECISION, ES POSSIBLE QUE USTED PUEDE PERDER DINERO, PROPIEDAD U OTROS DERECHOS IMPORTANTES. LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATEMENTE.

SE NO CONOCE A UN ABOGADO, LLAME AL "LAWYER REFERENCE SERVICE" (SERVICIO DE REFERENCIA DE ABOGADOS), 215-238-6333.

**Philadelphia Bar Association**
**Lawyer Referral and Information Service**
**1101 Market Street, 11th Floor**
**Philadelphia, PA 19107**
**(215) 238-6333**

Case ID: 191103370

**GELLERT, SCALI, BUSENKELL & BROWN, LLC**
By:    Gary Seitz    Attorney I.D. No.: 52865
        Holly Miller   Attorney I.D. No.: 203979
1628 John F. Kennedy Boulevard, Suite 1901
Philadelphia, Pennsylvania 19103
Ph: (215) 238-0010
Fx: (215) 238-0016
gseitz@gsbblaw.com
hmiller@gsbblaw.com
*Attorneys for Plaintiffs*

|  |  |  |
|---|---|---|
| **FRESHER START INC ("FSC")** | : | IN THE COURT OF COMMON PLEAS |
| c/o Gellert, Scali, Busenkell & Brown, LLC | : | |
| 1628 John F. Kennedy Blvd., Ste. 1901 | : | PHILADELPHIA COUNTY |
| Philadelphia, PA 19103 | : | |
|  | : | NOVEMBER TERM, 2019 |
| and | : | |
|  | : | NO. _____ |
| **DAVID CIURLINO ("CIURLINO")** | : | |
| c/o Gellert, Scali, Busenkell & Brown, LLC | : | |
| 1628 John F. Kennedy Blvd., Ste. 1901 | : | |
| Philadelphia, PA 19103 | : | **JURY TRIAL DEMANDED** |
|  | : | |
| and | : | |
|  | : | |
| **STEVEN GELBART ("GELBART")** | : | |
| c/o Gellert, Scali, Busenkell & Brown, LLC | : | |
| 1628 John F. Kennedy Blvd., Ste. 1901 | : | |
| Philadelphia, PA 19103 | : | |
|  | : | |
| and | : | |
|  | : | |
| **CHESTNUT STREET** | : | |
| **CONSOLIDATED LLC ("CSC")** | : | |
| c/o Gellert, Scali, Busenkell & Brown, LLC | : | |
| 1628 John F. Kennedy Blvd., Ste. 1901 | : | |
| Philadelphia, PA 19103 | : | |
|  | : | |
| Plaintiffs, | : | |
|  | : | |
| v. | : | |
|  | : | |
| **RCL MANAGEMENT LLC ("RCL")** | : | |
| c/o Bahaa Dawara and Imad Dawara | : | |
| c/o Federal Bureau of Prisons | : | |

JURY TRIAL DEMANDED
ASSESSMENT OF DAMAGES IS
REQUIRED

COMMERCE PROGRAM

Case ID: 191103370

700 Arch St, Philadelphia, PA 19106                          :
                                                             :
     and                            :
                                                             :
**BAHAA DAWARA ("Bahaa")**                                   :
c/o Federal Bureau of Prisons                                :
700 Arch St, Philadelphia, PA 19106                          :
                                                             :
     and                            :
                                                             :
**IMAD DAWARA ("Imad")**                                     :
c/o Federal Bureau of Prisons                                :
700 Arch St, Philadelphia, PA 19106                          :
                                                             :
     and                            :
                                                             :
**WESTCHESTER / ILLINOIS UNION**                             :
**INSURANCE COMPANY ("Chubb")**                              :
436 Walnut Street, Philadelphia, PA 19106                    :
                                                             :
     and                            :
                                                             :
**DOE INDIVIDUALS (1-10)**                                   :
                                                             :
     and                            :
                                                             :
**DOE ENTITIES (1-10)**                                      :
                                                             :
       Defendants.        :
_____:

## COMPLAINT

     Plaintiffs, Fresher Start Inc, David Ciurlino, Chestnut Street Consolidated LLC and Steven Gelbart, by and through their undersigned counsel, Gellert Scali Busenkell & Brown LLC, hereby file the following Complaint:

## NATURE OF ACTION

     1.    This action stems from the devastating story of 239 Chestnut Street ("239 Building") and 241 Chestnut Street ("241 Building"), two magnificent Old City buildings in the

Case ID: 191103370

vibrant heart of historic Philadelphia that were devastated by a 4-alarm fire on February 18, 2018 (the "Fire").

2.      Plaintiffs, owners of commercial and residential space in the Buildings, principally seek to recover contract damages from Defendants RCL and tort damages from its owners and operators, Defendants Bahaa and Imad (together with Defendant RCL, "Defendants[1]") stemming from the Fire that was started by Defendants Bahaa and Imad.

3.      Prior to the Fire, Defendant RCL was a tenant on the commercial space in the Buildings under a 2011 lease agreement ("Lease") and operated a restaurant there. A true and correct copy of the Lease is attached and marked as Exhibit A.

4.      Plaintiffs also seek the payment of $100,000 in insurance proceeds from Chubb[2], which issued a fire insurance policy for the aforementioned amount specifically naming Plaintiff FSC as the beneficiary of said policy. A true and correct copy of the insurance policy evidencing coverage of landlord's property and the endorsement naming the landlord, Plaintiff FSC, as additional insured (together, "Policy") are attached and marked as Exhibits B1 and B2, respectively.

5.      Under the Lease, Defendant RCL was obligated to obtain over $620,132 in fire and business interruption insurance coverage for the leased premises, but only obtained the aforementioned $100,000 in fire coverage.

6.      On February 18, 2018 at or about 3:11 a.m., instead of ensuring Defendant RCL's compliance with the Lease, Defendants Bahaa and Imad, seeking to defraud their insurance carrier

---

[1] Since Chubb is a defendant only in limited contract and bad faith counts at the very end of this Complaint, it is not to be deemed part of the term "Defendants" as used throughout this Complaint. The term "Defendants" is to be understood as referring only to Defendants RCL, Bahaa and Imad.

[2] See footnote 1 above.

Chubb and to harm their landlord and other residents of the Buildings, intentionally started the Fire that destroyed or severely damaged the leased premises and Plaintiffs' other real and tangible property in the Buildings.

7.      On July 18, 2019, a federal grand jury returned a 10-count indictment against Defendants Bahaa and Imad ("Indictment").

8.      On October 16, 2019, Defendants Bahaa and Imad were arrested at the Philadelphia International Airport. A true and correct copy of the Indictment, which was unsealed on the date of the arrest, is attached and marked as Exhibit C.

9.      On October 21, 2019, the Government filed Motions for Pretrial Detention against Defendants Bahaa and Imad, highlighting a long list of financial fraud and wrongdoing, commingling of assets, fraudulent transfer of assets among RCL Defendants and related parties, dealing in vast amounts of cash, and other criminal and fraudulent wrongdoing. True and correct copies of the Pretrial Detention Motions against Defendants Bahaa and Imad are attached and marked as Exhibits D1 and D2, respectively.

10.     On October 22, 2019, after an evidentiary hearing on the Government's Motions for Pretrial Detention, the U.S. District Court for the Eastern District of Pennsylvania found (a) by a preponderance of the evidence that Defendants Bahaa and Imad were flight risks and (b) by clear and convincing evidence they were a danger to other persons and the community. Based on these findings, the court ordered Defendants Bahaa and Imad to remain in custody pending trial. True and correct copies of the Pretrial Detention Orders pertaining to Defendants Bahaa and Imad are attached as marked as Exhibit E1 and E2, respectively.

11.     If convicted, Defendants Bahaa and Imad are facing mandatory minimum sentences of 17 years in federal prison.

12.     While Defendants Bahaa, Imad and RCL are believed to own real estate and financial assets, they have a documented record of concealing and misrepresenting their assets, including placing assets in straw owners' names and dealing in large amounts of concealed cash.

13.     By their conduct in setting the Fire to the Chestnut Street buildings where their business was located, Defendants Bahaa, Imad and RCL also have a record of intentionally destroying their own valuable property.

14.     Defendants Bahaa and Imad are expected to face significant legal expenses as part of their legal fees, which may diminish or eliminate their ability to pay damages to Plaintiffs.

15.     Plaintiffs will be irreparably harmed if this Court does not prohibit the dissipation and destruction of assets of Defendants Bahaa, Imad and RCL.

16.     Accordingly, in addition to monetary relief set forth in this Complaint, Plaintiffs seek this Court's urgent help in imposing a constructive trust and freeze on Defendants' assets pending final resolution of this Complaint.

17.     The facts set forth in this Complaint establish a substantive prima facie legal claim and circumstances that support an asset freezing injunction; that there is a strong likelihood that the Plaintiffs will prevail at trial on the merits (at the absolute least on their contract claims under the Lease[3]); assets exist that are at risk of destruction or dissipation to satisfy a judgment; and that there is a significant risk that, without an injunction, those assets will be destroyed or dissipated.

---

[3] Plaintiffs are extremely likely to prevail at the very least on their contract claims under the Lease. These claims are effectively a "documents case" because the obligation to provide $620,132 is obvious from the plain reading of the Lease, and the fact that the Fire destroyed or severely damaged the leased premises cannot be disputed. Plaintiffs do not need to reach the question of who set the Fire – the indisputable facts and documents are sufficient for Plaintiffs to prevail on the $620,132 contract claim.

Case ID: 191103370

18.     Given the conduct of Defendants giving rise to this Complaint and the Indictment, out of concern for Plaintiffs' and their principals' safety, the business and personal addresses of Plaintiffs ("Address List") are in the possession of Plaintiffs' counsel and shall be provided to the Court for in camera review. Plaintiffs' counsel will follow the Court's instructions in publicly filing these addresses or providing them to Defendants' counsel.

## PARTIES

19.     Plaintiff Fresher Start Inc ("FSC") is a corporation organized and validly existing under the laws of Pennsylvania with offices located at the address specified in the Address List. Plaintiff FSC may be served at the address of its counsel listed in the caption of this Complaint.

20.     Plaintiff Chestnut Street Consolidated LLC ("CSC") is a limited liability company organized and validly existing under the laws of Pennsylvania with offices located at the address specified in the Address List. Plaintiff CSC may be served at the address of its counsel listed in the caption of this Complaint.

21.     Plaintiff David Ciurlino ("Ciurlino") is an individual residing at the address specified in the Address List. Plaintiff Ciurlino may be served at the address of its counsel listed in the caption of this Complaint.

22.     Plaintiff Steven Gelbart ("Gelbart") is an individual residing at the address specified in the Address List. Plaintiff Gelbart may be served at the address of its counsel listed in the caption of this Complaint.

23.     Defendant Imad Dawara ("Imad") is an individual currently held in the custody of the Federal Bureau of Prisons at 700 Arch St, Philadelphia, PA 19106.

24.     Defendant Bahaa Dawara ("Bahaa") is an individual currently held in the custody of the Federal Bureau of Prisons at 700 Arch Street, Philadelphia, PA 19106.

Case ID: 191103370

25.     Defendant RCL Management LLC ("RCL") is a limited liability company organized and existing under the laws of Pennsylvania with offices formerly located at 239 Chestnut Street, Philadelphia, PA 19106, which is the address presently stated in the publicly available records of the Pennsylvania Department of State. The building at 239 Chestnut Street was completely destroyed by the Fire and has been completely demolished, and Defendant RCL has not provided a substitute address to the Pennsylvania Department of State. On information and belief, Defendants Bahaa and Imad are the sole two owners, officers and principals of Defendant RCL. Therefore, Defendant RCL is believed and deemed to be currently located for purposes of service of process at the same place as its principals, Defendants Imad and Bahaa, namely at 700 Arch Street, Philadelphia, PA 19106, c/o Federal Bureau of Prisons.

26.     Defendant Westchester (Illinois Union Insurance Company) ("Chubb") is an insurance company with offices located at 436 Walnut Street, Philadelphia, PA 19106.

### FACTS COMMON TO ALL COUNTS

27.     This action pertains to several pieces of real property ("Units") located in the City and County of Philadelphia and denominated as:

- 239 Chestnut Street, Unit COMM-1, Philadelphia, PA 19006 ("Unit 239-C")

- 239 Chestnut Street, Unit RU-1, Philadelphia, PA 19006 ("Unit 239-1")

- 239 Chestnut Street, Unit RU-2, Philadelphia, PA 19006 ("Unit 239-2")

- 239 Chestnut Street, Unit RU-4, Philadelphia, PA 19006 ("Unit 239-4")

- 241 Chestnut Street, Unit B, Philadelphia, PA 19006 ("Unit 241-B")

- 241 Chestnut Street, Unit C, Philadelphia, PA 19006 ("Unit 241-C")

28.     The Units at the respective 239 and 241 Chestnut Street addresses are part of the 239 Chestnut Condominium Association ("239 Association") and the 241-243 Condominium Association ("241 Association"), respectively (together, "Associations").

29.     The Units are described as Units 239-C, 241-B, 239-1, 239-2, 241-C, and 239-4.

30.     Plaintiff CSC presently owns Unit 241-B and is the assignee of the rights of Plaintiffs FSC and Ciurlino to recover damages from Defendants.

31.     Plaintiffs FSC, Ciurlino and Gelbart retain ownership, possessory and occupancy rights to Units 239-C, 239-1, 239-2 and 239-4. However, the 239 Building has been completely destroyed, and the Units exist solely as Plaintiffs FSC's and Ciurlino's interests in the 239 Condominium Association, but no longer as physical real estate.

32.     Venue lies in this Court because this action concerns real property located in Philadelphia County and the acts and events giving rise to the action all took place in Philadelphia.

33.     On February 18, 2018, Plaintiff FSC owned Units 239-C and 241-B, Plaintiff Ciurlino owned Units 239-1, 239-2 and 241-C, and Plaintiff Gelbart owned Unit 239-4.

34.     Plaintiff CSC presently owns Unit 241-B and is the assignee of the rights of Plaintiffs FSC and Ciurlino to recover damages from Defendants.

35.     Plaintiffs FSC, Ciurlino and Gelbart retain ownership, possessory and occupancy rights to Units 239-C, 239-1, 239-2 and 239-4. However, the 239 Building has been completely destroyed, and the Units exist solely as Plaintiffs FSC's and Ciurlino's interests in the 239 Condominium Association, but no longer as physical real estate.

36.     Units 239-C, 239-1, 239-2 and 239-4 constitute all real estate that was completely destroyed in the Fire that did not have insurance coverage. The owners of the only other unit in the 239 Building (unit RU-3) had insurance coverage and declined to participate in the present

action out of fear for personal safety. Accordingly, Plaintiffs in this Complaint include all willing owners of the 239 Building that was destroyed by the Fire.

## FACTS RELATED TO CONTRACT CLAIMS

37.     Plaintiffs' contract claims concern Units 239-C and 241-B ("Leased Units").

38.     Unit 239-C was approximately 5,100 sf in size, and Unit 241-B was approximately 1,200 sf in size.

39.     On January 11, 2011, Plaintiff FSC (as Landlord) and Defendant RCL (as Tenant) entered into the Lease, contracting to rent lease the Leased Units.

40.     Paragraph 8(A) of the Lease states in relevant part:

> *Tenant must at all times keep fire and liability insurance on the rented premises for $500,000 repair and $1,000,000 liability. […] Tenant shall also carry twelve (12) months' business interruption insurance.*

(See Exhibit A, page 4)

41.     Paragraph 2(B) of the Lease states: in relevant part

> *The rental payments during any renewal lease term, as created and as permitted under the Lease, shall be $120,132.00 per year […].*

(See Exhibit A, page 3)

42.     On February 18, 2018, the Fire, among its other effects, completely destroyed Unit 239-C and severely damaged Unit 241-B.

43.     As Landlord under the Lease, Plaintiff FSC relied on Defendant RCL obtaining the $500,000 fire insurance coverage described in Paragraph 8(A) of the Lease to protect Plaintiff FSC from possible losses due to fire damage to the Leased Units, and the $120,132 business interruption

Case ID: 191103370

insurance to cover Plaintiff FSC's rental income from the Lease for one year, for an aggregate total of $620,132 in required insurance coverage.

44.     Plaintiff FSC's losses related to the Fire far exceed the $620,132 amount for reasons more fully described below.

45.     Insurance for both Condominium Associations has been insufficient to restore even the common elements of the Buildings. In particular:

a.   Hartford Insurance Company, the insurance carrier for 239 Association, has paid 239 Association approximately $1,750,000 (net of 5% adjustor fees), or approximately $120/sf, to cover the loss of the 14,300 square foot building at 239 Chestnut Street, which was the limit under the policy, while the cost of reconstructing the common elements of the building is approximately $300/sf, representing a $180/sf shortfall and loss;

b.   Hanover Insurance Company, the insurance carrier for 241 Association, has paid 241 Association approximately $3,350,000 (net of 5% adjustor fees), or approximately $140 per square foot, to cover the damage to the 24,000 square foot building at 241-243 Chestnut Street, which was the limit under the policy, while the cost of repairs of the common elements is approximately $4,800,000, or $200 per square foot, representing a $60/sf shortfall and loss.

46.     The above amounts and shortfalls are only related to common elements, and do not include the cost of replacing interior improvements of the Leased Units, which is estimated at an additional $200/sf.

47.     Plaintiffs had no other insurance policies covering the Leased Units, and therefore have received no recovery for damage to the Leased Units other than their proportionate benefits

from the policies carried by the respective Condominium Associations (or rather, their proportionate losses in the corresponding policy shortfalls).

48.     As a result of the Fire, the Leased Units sustained damage far in excess of the $500,000 minimum fire coverage amount required to be provided by Defendant RCL by nature of Unit 239-C being completely destroyed and the interior and many common elements and all interior improvements of Unit 241-B having to be demolished to remediate smoke and water damage. The following is a calculation of the estimated amount of damage to the Leased Units, which totals $2,270,000:

    a.   Unit 239-C:

- Common Elements Shortfall: 5,100 sf x $180 = $918,000;

- Interior Improvements: 5,100 sf x $200 = $1,040,000.

    b.   Unit 241-B:

- Common Elements Shortfall: 1,200 sf x $60 = $72,000;

- Interior Improvements: 1,200 sf x $200 = $240,000.

49.     As landlord under the Lease, Plaintiff FSC relied on Defendant RCL obtaining the additional business interruption coverage to protect Plaintiff FSC's right to rental income from the Leased Units for a period of one year following a possible fire.

50.     Rent owed under the Lease was $120,132 per year pursuant to Paragraphs 2(vi) and 2(B) of the Lease. This is the amount Plaintiff FSC would have received if Defendant RCL obtained the proper insurance coverage.

51.     Despite failing to provide the insurance coverage in the above amounts, Defendant RCL has failed and refused to pay the $500,000 towards repairs of the Leased Units or the rent of $120,132 during the first year after the Fire.

52. At the time of the Fire, Defendant RCL also owed past due Rent under the Lease in the amount of at least $64,000.

## COUNT I
### BREACH OF LEASE AGREEMENT – 1
### MINIMUM DAMAGES
### ALL PLAINTIFFS AGAINST DEFENDANT RCL

53. The foregoing Paragraphs are incorporated herein by reference as though set forth at length.

54. This Count I is a claim for the absolute minimum recovery to which Plaintiff FSC is entitled as a result of the indisputable events and violations of the Lease, irrespective of Defendants' involvement in setting the Fire.

55. Defendant RCL is in breach of the Lease for its failure to obtain and maintain adequate fire and business interruption insurance coverage and to compensate Plaintiff FSC for damage to Leased Units arising from the Fire.

56. "[A] lease is in the nature of a contract and is to be controlled by principles of contract law." *Pugh v. Holmes*, 486 Pa. 272, 405 A.2d 897, 903 (1979).

57. To prove a breach of contract, a party must establish the following: "(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract, and (3) resultant damages." *McCausland v. Wagner*, 78 A.3d 1093, 1101 (Pa. Super. 2013) (citation and internal quotation marks omitted).

58. As set forth above, the Lease was executed by Defendant RCL and Plaintiff FSC, and therefore constituted an existing contract between them.

59. Defendants RCL's failure to maintain insurance coverage in the amount of $500,000 to cover repairs to the Leased Units constituted a breach of the Lease Agreement.

60.     Defendant RCL's failure to maintain business interruption insurance coverage to cover rent for one year in the amount of $120,132 constituted breach of the Lease Agreement.

61.     Plaintiff FSC has sustained unrecovered damages in the amount $2,270,000 relating to the destruction of and damage to the Leased Premises.

62.     Plaintiff FSC has also sustained an additional $120,132 in damages because Defendant RCL has not paid Rent under the Lease for a year after the Fire, plus ongoing damages at the same annual rate.

63.     Plaintiff FSC has also sustained an additional $64,000 in damages because Defendant RCL has not paid Rent under the Lease prior to the Fire.

64.     Irrespective of the cause of the Fire, Defendant RCL is responsible for compensating Plaintiff FSC in the amount of at least $684,132, constituting the aggregate of $500,000 for Defendant RCL's failure to secure fire insurance, plus $120,132 for Defendant RCL's failure to secure business continuity insurance, plus $64,000 past due rent under the Lease.

65.     Defendant RCL's failure to compensate Plaintiff FSC in the amount of $684,132 is a breach of the Lease Agreement.

66.     Plaintiff FSC is entitled to recover those damages for default of Defendant RCL under the Lease.

67.     As such, Plaintiff FSC has set forth a prima facie case for Breach of Lease.

68.     Plaintiffs have agreed to share in the recovery of damages from Defendants.

**WHEREFORE**, Plaintiffs pray that the Court enter judgment in favor of Plaintiffs and against Defendant RCL for damages arising out of default under the Lease Agreement in the amount of $684,132, or in another amount determined by the Court, plus attorney's fees and costs, and for such other relief as may be proper and just.

## COUNT II

### BREACH OF LEASE AGREEMENT – 2
### ADDITIONAL DAMAGES, BREACH OF CORPORATE VEIL, JOINT RESPONSIBILITY
### ALL PLAINTIFFS AGAINST DEFENDANTS

69.     The foregoing Paragraphs are incorporated herein by reference as though set forth at length.

70.     At all relevant times, Defendants Bahaa and Imad were the principals, owners, officers and agents of Defendant RCL.

71.     On February 18, 2018, Defendants Bahaa and Imad intentionally caused the Fire on the Leased Premises.

72.     The entire text of the Grand Jury Indictment (Exhibit C) is hereby incorporated herein as if set forth in full.

73.     The entire text of the Government's Motions for Pretrial Detention (Exhibits D1 and D2) is hereby incorporated herein as if set forth in full.

74.     The entire text of the Court's Orders for Pretrial Detention (Exhibits E1 and E2) is hereby incorporated herein as if set forth in full.

75.     The setting of the Fire was a breach of the Lease by Defendant RCL, including but not limited to a violation of Paragraph 27 ("Compliance with Laws") of the Lease.

76.     The setting of the Fire was an intentional act by principals of Defendant RCL which pierced the corporate veil of Defendant RCL and removed the limited liability protection Defendant RCL may have previously provided to Defendants Bahaa and Imad. Accordingly, Defendants Bahaa and Imad are jointly and severally liable with Defendant RCL for all contract damages sustained by Plaintiff FSC.

77. Defendants Bahaa and Imad intentionally and maliciously caused Defendant RCL to breach the Lease as more fully set forth in Count I and engaged in fraudulent misconduct with utter disregard for corporate governance or Defendant RCL's contractual obligations.

78. The intentional setting of the Fire makes Defendants liable to Plaintiffs FSC and CSC for the entirety of damage to the Leased Units, without limitation of what would have been the insurance limit required under the Lease.

79. The *commercial* breaches of the Lease described in Count I (i.e., failure to provide adequate insurance coverage for the Leased Units and follow procedures, such as not committing arson and insurance fraud, that would have ensured Plaintiff FSC's recovery in case of damage to or destruction of the Leased Units) were also intentional and malicious acts by Defendants Bahaa and Imad which pierced the corporate veil of Defendant RCL and removed the limited liability protection Defendants Bahaa and Imad may have previously enjoyed as owners of Defendant RCL.

80. The minimum commercial damages under the Lease total $684,132, as more fully described in Count I above.

81. The damage to Leased Premises totals $2,270,000.

82. The past due rent as of the date of the Fire was at least $64,000.

83. The loss of ongoing rents from the Leased Premises totals $200,000 as of the date hereof.

84. The aggregate total of the amounts set forth in the foregoing three paragraphs is $2,534,000.

**WHEREFORE**, Plaintiffs pray that the Court enter judgment in their favor and against Defendants in the amount of $2,534,000 or, in the alternative, for $684,132, for damages arising out of the default under the Lease by nature of intentionally setting the Fire and intentionally,

Case ID: 191103370

fraudulently and maliciously committing commercial breaches of the Lease, or in another amount determined by the Court, plus attorney's fees and costs, and for such other relief as may be proper and just.

## COUNT III
### TRESPASS TO CHATTELS (INTENTIONAL DESTRUCTION OF PROPERTY)
### ALL PLAINTIFFS AGAINST DEFENDANTS

85.    The foregoing Paragraphs are incorporated herein by reference as though set forth at length.

86.    Defendants Bahaa and Imad intentionally set the Fire to injure the property of Plaintiffs.

87.    Units 239-C, 239-1, 239-2 and 239-4, the combined area of which was 12,000 sf, were completely destroyed by the Fire. As described, Plaintiffs' losses stemming from the destruction of Units in the 239 Building amount to approximately $380/sf. Accordingly, Plaintiffs' total losses relating to the four Units in the 239 Building total $4,560,000 ($380 x 12,000).

88.    Unit 241-B, the total area of which was 1,200 sf, was severely damaged by the Fire and directly related events, causing Plaintiffs an unrecovered loss of approximately $260/sf, for a total of $312,000 ($260 x 1,200).

89.    Unit 241-C, the total area of which was 2,050 sf, was severely damaged by the Fire and directly related events, causing Plaintiffs a pre-insurance loss of approximately $260/sf, for a total of $585,000 ($260 x 2,250). Plaintiffs received $105,000 in insurance proceeds (net of adjustor commissions of 5%) that partially covered the aforesaid damage to Unit 241-C. As a result, Plaintiffs have sustained an unrecovered loss of $480,000 ($585,000 minus $105,000).

90. Lost and past due rents from Leased Units amount to $264,000 as of the date hereof, as more fully described in Count II.

91. The total amount of Plaintiffs' damages set forth in the preceding three paragraphs is $5,616,000 ("Total Damages") not including lost rents from residential Units, summarized for ease of reference as follows:

| Unit / Category | Area SF | Loss per SF | Total Amount |
|---|---|---|---|
| | | | |
| Unit 239-C | 5,100 | $380 / sf | 1,938,000 |
| Unit 239-1 | 2,300 | $380 / sf | 874,000 |
| Unit 239-2 | 2,300 | $380 / sf | 874,000 |
| Unit 239-4 | 2,300 | $380 / sf | 874,000 |
| **239 Building – TOTAL:** | | | **4,560,000** |
| | | | |
| Unit 241-B | 1,200 | $260 / sf | 312,000 |
| Unit 241-C | 2,050 | $260 / sf | 585,000 |
| Unit 241-C (insurance recovery) | | | (105,000) |
| **241 Building – TOTAL:** | | | **792,000** |
| | | | |
| Leased Units Rent – past due | | | 64,000 |
| Leased Units Rent – ongoing | | | 200,000 |
| **Rent – TOTAL:** | | | **264,000** |
| | | | |
| **TOTAL DAMAGES:** | | | **5,616,000** |

92. The facts set forth above in this Complaint establish that arson has been committed by Defendants Bahaa and Imad. The evidence establishes (1) incendiary origin of the Fire and (2) a connection between the Defendants and the Fire.

93. The connection between the Defendants Bahaa and Imad and the Fire is established with evidence: (1) of these Defendants' motives to set the Fire, and (2) the opportunity of these Defendants to set the Fire.

94.     The setting of the Fire by Defendants Bahaa and Imad was a reckless and malicious act that caused severe financial harm to Plaintiffs in a combined amount totaling $5,616,000 with respect to all Units that are part of this Complaint.

95.     Plaintiffs are entitled to punitive damages due to the malicious actions of Defendants Bahaa and Imad.

**WHEREFORE**, Plaintiffs pray that the Court enter judgment in their favor and against Defendants RCL, Imad and Bahaa in the amount of $5,616,000 for damages arising out of the Fire, plus punitive damages in the discretion of the Court, or another amount determined just and fair by the Court, plus attorney's fees and costs, and for such other relief as may be proper and just.

## COUNT IV
## NEGLIGENT DESTRUCTION OF PROPERTY
### ALL PLAINTIFFS AGAINST DEFENDANTS

96.     The foregoing Paragraphs are incorporated herein by reference as though set forth at length.

97.     In the alternative, Defendants acted with negligence or gross negligence, which caused the Fire that injured the property of Plaintiffs.

98.     As more fully set forth above, Plaintiffs sustained total damages of $5,616,000 in the form of damage and destruction of the Units as a result of the Fire.

**WHEREFORE**, Plaintiffs pray that the Court enter judgment in their favor and against Defendants RCL, Imad and Bahaa in the amount of $5,616,000 for damages arising out of the Fire, or another amount determined just and fair by the Court, plus attorney's fees and costs, and for such other relief as may be proper and just.

## COUNT V

## STRICT LIABILITY FOR ULTRA HAZARDOUS ACTIVITY
### ALL PLAINTIFFS AGAINST DEFENDANTS

99.     The foregoing Paragraphs are incorporated herein by reference as though set forth at length.

100.    In the alternative, Defendants engaged in ultrahazardous activity that started the Fire that injured the property of Plaintiffs.

101.    As more fully set forth above, Plaintiffs sustained total damages of $5,616,000 in the form of damage and destruction of the Units as a result of the Fire.

102.    Defendants are strictly liable for all losses and damages flowing from their ultra-hazardous activity.

**WHEREFORE**, Plaintiffs pray that the Court enter judgment in their favor and against Defendants RCL, Imad and Bahaa in the amount of $5,616,000 for damages arising out of the Fire, or another amount determined just and fair by the Court, plus attorney's fees and costs, and for such other relief as may be proper and just.

## COUNT VI

## LIABILITY FOR CIVIL CONSPIRACY
### ALL PLAINTIFFS AGAINST DEFENDANTS RCL, BAHAA, IMAD,
### DOE INDIVIDUALS AND DOE ENTITIES

103.    The foregoing Paragraphs are incorporated herein by reference as though set forth at length.

104.    Defendants RCL, Bahaa, Imad and Doe Individuals and Doe Entities were each involved in an unlawful objective to intentionally set the Fire to injure the property of Plaintiffs.

105.    The Defendants set forth in this Count came to an agreement on the objective or means to achieve the objective of setting the Fire.

106.    The Defendants set forth in this Count committed overt acts in furtherance of the conspiracy as set forth above.

107.    These Defendants' actions resulted in causing an injury to the property interests of Plaintiffs and the resulting damages to the Plaintiffs as set forth above.

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendants RCL, Bahaa, Imad, Doe Individuals and Doe Entities in the amount of $5,616,000 for damages arising out of the Fire, or another amount determined just and fair by the Court, plus attorney's fees and costs, and for such other relief as may be proper and just.

## COUNT VII
## <u>VICARIOUS LIABILITY</u>
### ALL PLAINTIFFS AGAINST DEFENDANT RCL

108.    The foregoing Paragraphs are incorporated herein by reference as though set forth at length.

109.    At all times relevant hereto, Defendants Bahaa and Imad were acting in the course and scope of his employment as agent, servant or employee of defendant RCL, and their acts as set forth herein caused the injuries and damages suffered by Plaintiffs.

110.    Defendant RCL is vicariously liable for the acts, commissions, or omissions of Bahaa and Imad, as fully as if it performed the acts or omissions itself.

111.    As a result of the intentional acts, negligence and breaches of Defendants Bahaa and Imad, Plaintiffs have suffered the injuries and losses set forth herein.

112.    The conduct of Defendants was outrageous and in willful and reckless disregard to Plaintiffs' property interests, thus entitling Plaintiffs to an award of punitive damages.

**WHEREFORE**, Plaintiffs pray that the Court enter judgment in their favor and against Defendants in an amount in excess of $50,000 for damages arising out of the Fire in an  amount determined just and fair by the Court, plus attorney's fees and costs, and for such other relief as may be proper and just.

## COUNT VIII
## <u>CONSTRUCTIVE TRUST</u>
## ALL PLAINTIFFS AGAINST DEFENDANTS

113.    The foregoing Paragraphs are incorporated herein by reference as though set forth at length.

114.    In the alternative, Plaintiffs have been wrongfully deprived of their rights due to Defendants obtaining or holding legal property rights to various assets which they should not possess due to unjust enrichment or property interference.

115.    As an additional claim and remedy, Plaintiffs seek the imposition of a constructive trust on all assets and things of value, of any kind or description which were improperly diverted from Defendant RCL to any of the other Defendants.

116.    In addition to damages, Plaintiffs seek payment and return of all profits, assets or benefits acquired by any of the defendants through use of the funds or assets on which a constructive trust has been imposed.

117.    Plaintiffs are extremely likely to prevail on Count I hereof, for damages sustained under a Lease Agreement for failure of the tenant to obtain the insurance agreed. Defendants' liability is established based on the plain text of the Lease and the undisputed fact that the Leased Premises have been destroyed by the Fire, without the need for any further fact-finding.

118.    The Government's Motions for Pretrial Detention (Exhibits D1 and D2) contain descriptions of Defendants Bahaa's and Imad's record of hiding, obfuscating and destroying their assets ("Detention Motion"). The entire text of the Detention Motion is incorporated herein by reference as if set forth in full.

119.    In particular, the Government's Motions for Pretrial Detention highlight the following facts pertinent to the present civil Complaint:

 a. Imad Dawara [Defendant Imad], and his brother, co-defendant Bahaa Dawara [Defendant Bahaa], intentionally set fire to their business, the Revolution Diner [Restaurant operated by Defendant RCL], located at 239-41 Chestnut Street in Philadelphia, during the early morning hours of February 18, 2018.

 b. The brothers conspired to commit the violent crime out of a dual motivation: financial desperation and retribution against the landlord [Plaintiffs FSC and Ciurlino] and other tenants of the building [Plaintiff Gelbart].

 c. The Dawara brothers were struggling in their business and had a history of fighting with their landlord.

 d. By October 2015, their landlord sent the Dawara brothers a Notice of Default and Breach of Lease, citing numerous violations which included 26 citations from the Pennsylvania State Police Bureau of Liquor Control Enforcement.

 e. In response, Imad Dawara threatened the landlord that he would destroy the place if the landlord attempted to evict them.

 f. In November 2015, the Court of Common Pleas of Philadelphia County prohibited the defendants from engaging the services of a disc jockey, providing

Case ID: 191103370

live entertainment, and allowing the use of tobacco products (including hookah) on the premises unless they had the proper permits.

g. In November 2015, their landlord sent the defendants a Notice of Intent to terminate their lease.

h. By October 2017, the Dawara brothers had ceased all business operations for RCL Management at 239-241 Chestnut Street.

i. The brothers attempted to sell their business, but as they had failed to renew their lease or pay rent, no one would buy it.

j. On January 31, 2018, their landlord directed the defendants to vacate the premises by February 2, 2018 and advised the defendants that they owed over $64,000 in overdue payments.

k. On the very same day that the defendants were ordered to vacate the premises, despite no longer doing any business at that location, Imad Dawara contacted an insurance broker [a broker for Defendant Chubb] to inquire about purchasing insurance for 239-241 Chestnut Street.

l. In obtaining this new insurance policy, Imad Dawara asked the insurance broker repeatedly how he would be paid "if there was a fire."

m. Imad Dawara and his brother have significant ties to their native land of Syria and neighboring countries.

n. Upon arrest, Imad and Bahaa Dawara, both naturalized U.S. citizens, claim to have maintained their citizenship in Syria, although the United States government does not recognize this alleged dual citizenship.

o. In addition to their U.S. Passports, both defendants have Syrian passports.

p.  Travel records reveal that in June 2019, Imad Dawara traveled out of the United States to Qatar and Lebanon, returning in August 2019. During this trip, Imad Dawara celebrated Bahaa Dawara's marriage to a Syrian citizen with their respective families.

q.  Bahaa Dawara has traveled out of the United States eight times in the last five years, with the majority of those trips to the Middle East.

r.  A potential witness close to Imad Dawara reported that Imad Dawara is currently building a house in Syria.

s.  Both brothers have established familial and recent ties to Syria. They have also demonstrated a propensity to deceive and commit fraud to advance their own agenda in a variety of ways.

t.  Imad and Bahaa Dawara's many business entities are currently under investigation. Since opening their nightclub on Delaware Avenue, "B-Side," they directed two other individuals to use their names as the listed owners of the club and the liquor license that they need to operate the club. This fact is not in dispute; indeed, Imad Dawara admitted this deception during the "Examination Under Oath" related to his insurance claim related to the arson.

u.  The government's financial analysis revealed the possible existence of cash hoards deliberately kept from bank accounts to avoid detection by the government.

v.  Imad Dawara recently offered $500,000 – in cash – to his neighbor in Swarthmore, Pennsylvania, in order to buy the neighbor's home for Bahaa Dawara to live there.

120.     On October 22, 2019, the Motions for Pretrial Detention were granted after a hearing by the U.S. District Court for the Eastern District of Pennsylvania. During the hearing, facts relevant to the Motion were deemed proven either by preponderance of evidence or by clear and convincing evidence. The full texts of orders of U.S. Magistrate Judge Timothy R. Rice (Exhibits E1 and E2) are incorporated herein by reference as if set forth in full.

121.     Defendants Bahaa and Imad have a record of hiding and obfuscating their assets.

122.     Defendants Bahaa and Imad have a record of using petty cash to conduct business and personal affairs, such as buying and selling real estate.

123.     Defendants Bahaa and Imad have substantial overseas holdings, such as real estate in Syria.

124.     Plaintiffs' recovery of damages under Count I is likely to be hindered or impossible unless a constructive trust is imposed over the assets of Defendants.

**WHEREFORE**, Plaintiffs pray that the Court enter judgment imposing constructive trust over all assets of Defendants Bahaa, Imad and RCL, whether held in their names or the names of any third parties.

## COUNT IX
## <u>PIERCING THE CORPORATE VEIL</u>
### ALL PLAINTIFFS AGAINST DEFENDANTS JOHN DOE ENTITITES

125.     The foregoing Paragraphs are incorporated herein by reference as though set forth at length.

126.     The Government's investigation has revealed the following:

  a.    Defendants Imad's and Bahaa's many business entities are currently under investigation. Since opening their nightclub on Delaware Avenue, "B-Side," they

directed two other individuals to use their names as the listed owners of the club and the liquor license that they need to operate the club. This fact is not in dispute; indeed, Defendant Imad admitted this deception during the "Examination Under Oath" related to his insurance claim related to the arson. Defendant Chubb is believed to be in possession of the relevant transcript and documents.

b.   The Government's financial analysis revealed the possible existence of cash hoards deliberately kept from bank accounts to avoid detection by the Government.

c.   Defendant Imad recently offered $500,000 – in cash – to his neighbor in Swarthmore, Pennsylvania, in order to buy the neighbor's home for Defendant Bahaa to live there

127.   The evidence uncovered by the Government establishes that Defendants Bahaa and Imad dominated and controlled the Doe Entities to commit intentional torts, fraudulent, wrongful or unjust acts against the public including Plaintiffs.

128.   Defendants Bahaa and Imad utilized the Doe Entities to hide or obscure their wealth, ownership and control to hinder and delay their creditors.

129.   Plaintiffs were or may be harmed as a result of the intentional, fraudulent, wrongful or unjust acts of Defendants Bahaa and Imad.

130.   Defendants Bahaa and Imad purposefully directed and controlled the operations of the Doe Entities.

131.   Defendants Bahaa and Imad failed to provide Defendant RCL with capital sufficient to carry on any business other than for their own needs, while maliciously causing Defendant RCL to incur liabilities to Plaintiffs.

132.    Defendant RCL was insufficiently capitalized, resulting in its inability to pay its debts as they became due despite the creation of RCL for the sole benefit of Defendants Bahaa and Imad.

133.    Bahaa and Imad Defendants knew or should have known that Defendant RCL was inadequately capitalized.

134.    Defendants Bahaa and Imad commingled their personal assets, RCL assets and the asset of the John Doe Entities.

135.    Corporate formalities were not generally observed with respect to Defendant RCL and the Doe Entities.

136.    Defendants Bahaa and Imad and Doe Entities are believed to be all involved in the same line of business.

137.    Creditors of Defendant RCL, including Plaintiff FSC, relied on Defendants Bahaa's and Imad's representations that the Doe Entities were divisions of Defendant RCL and an integral component of the overall enterprise and not separate corporate entities. They had no reason to believe that they were dealing with a separate entity due to the representations and control exhibited by Defendants.

138.    In all aspects of their business, the Defendants functioned with Doe Entities as a single entity and should be treated as such.

**WHEREFORE**, Plaintiffs pray this Honorable Court for judgment against Defendants RCL, Bahaa, Imad and Doe Entities, jointly and severally, and an Order directing (1) that the corporate forms of the Defendant RCL and all entities owned or controlled by the Defendants Doe Entities be disregarded to the full extent of claims in this Complaint; (2) that the corporate veil of Defendant RCL and Defendants Doe Entities be pierced such that the assets of all entities are

considered assets of Defendants RCL, Bahaa and Imad for all intents and purposes; and, (3) that the assets of Defendants Doe Entities be considered assets of Defendants RCL, Imad and Bahaa for all intents and purposes.

## COUNT X
## INJUNCTIVE RELIEF – ASSET FREEZE
## ALL PLAINTIFFS AGAINST DEFENDANTS

139.    The foregoing Paragraphs are incorporated herein by reference as though set forth at length.

140.    The unusual circumstances in this case warrant a preliminary injunction preventing Defendants RCL, Imad and Bahaa from dissipating or destroying their assets.

141.    The six factors relevant to the granting of preliminary injunctive relief are: (1) immediate and irreparable harm that cannot be adequately compensated by money damages; (2) greater injury would result from refusing the injunction than from granting it; (3) the preliminary injunction restores the parties to their status as it existed before the alleged wrongful conduct; (4) the movant is likely to prevail on the merits; (5) the preliminary injunction is reasonably suited to abate the offending activity; and (6) the preliminary injunction will not adversely affect the public interest.

142.    Plaintiffs are facing immediate and irreparable harm resulting from the defendants ongoing scheme to render themselves judgment–proof from any verdict. The reason why this immediate and irreparable harm could not be adequately compensated by money damages is that defendants' specific scheme consists of making money damages uncollectible.

143.    To prevent undue harm to the Defendants flowing from the injunction, the preliminary injunction sought in this case is narrowly tailored to the harm presented. The

injunction seeks to that protect Plaintiffs' right to collect a judgment if they prevail at trial, while protecting Defendants' right to run their businesses and reinvest or otherwise use the proceeds of any property sales subject to court review.

144. Although it will likely be impossible to run the businesses from the Philadelphia Detention Center where Defendants Bahaa and Imad are being held, Plaintiffs seek a preliminary injunction that is reasonably suited to prohibit the offending activity but does not prevent the Defendants from engaging in the lawful conduct of running their business.

145. The preliminary injunction sought relates the value of the assets encumbered to the likely value of the expected judgment.

146. Plaintiffs are extremely likely to prevail on Count I for reasons set forth above.

147. Plaintiffs are likely to prevail on Counts II and III after further proceedings.

148. Plaintiffs are likely to prevail on Count IV either immediately or after further proceedings.

149. As proven by the Government by a preponderance of the evidence, Defendants have a record of hiding and obfuscating their assets.

150. As proven by the Government by clear and convincing evidence, Defendants present a danger to the community, which danger includes the possibility of Defendants' destroying their own assets.

151. Defendants have a record of using petty cash to conduct business and personal affairs, such as buying and selling real estate.

152. Defendants have substantial overseas holdings, such as real estate in Syria.

153. Defendants have no lawful right under Pennsylvania law to dissipate assets for the purpose of becoming judgment proof.

154.    The preliminary injunction does not negatively affect the public interest in any respect.

155.    Unless an immediate asset freeze is imposed on all assets of Defendants, a collection of a judgment resulting from Count I and other Counts of this Complaint is unlikely to be possible.

**WHEREFORE**, Plaintiffs pray that the Court enter a preliminary injunction freezing all the assets of Defendants and monitoring the assets pending the outcome of this case.

## COUNT XI
### <u>INSURANCE CONTRACT</u>
### PLAINTIFFS FSC AND CSC AGAINST DEFENDANT CHUBB

156.    The foregoing Paragraphs are incorporated herein by reference as though set forth at length.

157.    Plaintiff FSC is a beneficiary of an insurance policy and endorsement issued by Chubb covering the Leased Premises, as evidenced by Exhibits B1 and B2, with relevant portions highlighted ("Policy").

158.    The Policy provides for $100,000 in coverage for "Damage to Premises Rented to [RCL]."

159.    The Policy names Plaintiff FSC as "Additional Insureds – Managers or Lessors of Premises."

160.    The Leased Units are the subject premises covered by the Policy.

161.    The Leased Units sustained damage in excess of $100,000.

162.    Chubb has not paid $100,000 to Plaintiff FSC.

163.     Plaintiff CSC currently owns the only physically surviving real property that remains of Leased Units.

**WHEREFORE**, Plaintiffs FSC and CSC pray that the Court enter judgment in their favor and against Defendant Chubb in the amount of $100,000, plus attorney's fees and costs, and for such other relief as may be proper and just.

**COUNT XII**

**<u>BAD FAITH</u>**

**PLAINTIFF FSC AGAINST DEFENDANT CHUBB**

164.     The foregoing Paragraphs are incorporated herein by reference as though set forth at length.

165.     Plaintiff FSC is a first party beneficiary of the Policy issued by Chubb covering the Leased Units.

166.     The Policy provides for $100,000 in coverage for "Damage to Premises Rented to [RCL]."

167.     The Policy names Plaintiff FSC as "Additional Insureds – Managers or Lessors of Premises."

168.     The Leased Units are the subject premises covered by the Policy.

169.     The Leased Units sustained damage in excess of $100,000.

170.     Chubb has not paid $100,000 to Plaintiff FSC.

171.     Chubb's failure to pay Plaintiff FSC is without justification.

172.     Chubb's conduct amounts to unfair claim settlement practices involving clear first-party insurance coverage.

173.    Plaintiffs have an implied, private cause of action under an Unfair Trade Practices Act against Chubb that includes an unfair claim settlement practice.

174.    Plaintiffs have sustained damages including prejudgment interest and legal expenses, consequential, and incidental, damages for economic loss and mental distress.

**WHEREFORE**, Plaintiffs pray that the Court enter judgment in their favor and against Defendant Chubb in the amount of $100,000, plus prejudgment interest and legal expenses, consequential, and incidental, damages for economic loss and mental distress, punitive damages and for such other relief as may be proper and just.

## JURY DEMAND

Plaintiff demands jury by trial of all matters triable thereby.

Respectfully submitted,

**GELLERT, SCALI, BUSENKELL & BROWN, LLC**

Date:  11/25/2019          By:      /s/ Gary Seitz
                                        Gary Seitz
                                        *Attorney for Plaintiffs*
                                        *Fresher Start, Inc.*
                                        *David Ciurlino*
                                        *Chestnut Street Consolidated, LLC*
                                        *Steven Gelbart*

Case ID: 191103370

*VERIFICATION*

*The undersigned hereby verifies that the factual statements made in the foregoing Complaint are true and correct to the best of my knowledge and belief. I understand that false statements made herein are subject to penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.*

*Fresher Start, Inc. by its duly authorized Representative, David Ciurlino*

*David Ciurlino*

*Chestnut Street Consolidated, LLC by its duly authorized Representative, Steven Gelbart*

*Steven Gelbart*

Date:  11/25/2019