UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHESTNUT STREET CONSOLIDATED, LLC,** | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 2:21-cv-03046-ER |
| | : | |
| v. | : | |
| | : | |
| **BAHAA DAWARA, et al.** | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## PLAINTIFF CSC'S MEMORANDUM OF LAW IN RESPONSE TO THE DAWARA ARSONISTS' MOTION TO DISMISS

Plaintiff Chestnut Street Consolidated, LLC ("CSC"), by and through undersigned counsel, Gellert Scali Busenkell & Brown LLC, hereby submits the following Memorandum of Law in Opposition to the Motion to Dismiss for lack of subject matter jurisdiction filed by Imad Dawara ("Imad"), Bahaa Dawara ("Bahaa") (collectively, "Dawara Arsonists") as supported by the attached Declaration.

## BACKGROUND

On February 18, 2018, the Dawara Arsonists intentionally set fire to two beautiful buildings in the vibrant heart of historic Old City Philadelphia, 239 Chestnut Street and 241-43 Chestnut, Street (the "Buildings"), causing a 4-alarm fire that decimated these buildings, threatened many lives and caused tens of millions of dollars in property damage (the "Fire"). The Dawara Arsonists admitted setting the Fire and were convicted of conspiracy to commit arson, among other criminal charges.

**The Claims of Plaintiff and the Risk of Further Misconduct by the Dawara Arsonists**

Plaintiff is the owner of claims against the Dawara Arsonists by purchase and assignment from several individual and corporate victims of the Dawara Arsonists' crimes. The assignors of these claims are the owners of multiple condominium units that were located in both Buildings on February 18, 2018. Prior to commencing suit, CSC acquired these interests under various terms and conditions. CSC's status as a creditor of the Dawara Arsonists was additionally established by the Dawara Arsonists' pre-suit admission of liability in Philadelphia court proceedings in relation to least some of these claims. This admission was followed by a judgment issued by the Philadelphia court several days after this suit was filed.

The criminal case against the Dawara Arsonists included descriptions of threats of violence and retaliatory misconduct by the Dawara Arsonists. As part of their guilty plea and sentencing proceedings, the Dawara Arsonists admitted, and the sentencing court has determined, that the arson was committed in part to retaliate against the landlord who had previously sued the Dawara Arsonists in state court and obtained an eviction order against them, as well as against owners and residents of the Chestnut Street buildings for complaining against the various violations occurring at the Dawara Arsonists' restaurant and hookah lounge on the ground floor. The residents' and owners' fear of the Dawara Arsonists were front and center during sentencing proceedings of both Dawara Arsonists in late June 2021. The 4-alarm Fire, set in the middle of the night, was one of the worst fires in Philadelphia's modern history. The lives of many dozens of residents were endangered, and the fact that there were no fatalities was deemed a miracle. This miracle happened only due to the heroic efforts of firefighters, who saved many of the sleeping residents of the buildings. Some of the firefighters were seriously injured in these efforts. Tens of millions of

dollars in property was destroyed, many of the residents' pets perished, and the tremendous mental trauma on all the residents and owners is lifelong.

The Dawara Arsonists are capable of heinous acts of violence, particularly against those who they believe wronged them. While they are in prison now, one day the Dawara Arsonists will return to society. More ominously, their family members have been clearly cooperating with them in additional tortious and potentially criminal acts occurring over the past 22 months, including at least as recently as this spring.

For these reasons, and because of the limited nature of the current discovery process which includes only the very narrow set of relevant factual issues affecting the jurisdiction question, CSC has not disclosed the identities of the physical persons and legal entities who are CSC's members and/or officers, nor the identities of the individual officers and owners of its corporate members. CSC has, however, provided clear information regarding their states of citizenship, which is the only relevant information for purposes of the Motion. To protect their identities, the following terms are used to refer to the individual persons and entities in question:

   i.   Initial Members: Members of CSC prior to June 30, 2021.
   ii.  Principals: individual Initial Members or individual owners of Initial Members.
   iii. Current Members: Members of CSC after July 1, 2021.

A Declaration was prepared and provided with numerous relevant documents in redacted form to conceal all identifying information of the Initial Members and Principals, including information that can lead to their identification, as well as their business-relationship information that is irrelevant to the narrow jurisdiction-related matter before the Court, but that may also help identify the CSC Principals. Unredacted versions of all Exhibits are available to the court for in camera inspection if necessary.

Despite the conviction of the Dawara Arsonists and the substantial restitution judgment, the plaintiff and its predecessors in interest have not obtained a single dime of recovery for their substantial losses that were incurred more than three years ago when the Dawara Arsonists lit the match that destroyed their lives. Several of the victims continued to fear for their safety. Other victims wished for closure to move on with their life but their opportunity for a fresh start was hindered by the delays to recovery caused by the Dawara Arsonists. In late June 2021, when it was discovered in public records that the Dawara Arsonists had transferred unencumbered real estate of substantial value to apparent family members and insiders, victims feared they would never recover. Victims also realized that the incarcerated Dawara Arsonists had multiple people "on the outside" who were willing to assist them in continuing their misconduct, and potentially even take new violent action against the victims.

## The Philadelphia Case

Shortly after the Dawara Arsonists' arrest on October 16, 2019, Plaintiff and its predecessors in interest sued the Dawara Arsonists in the Philadelphia Court of Common Pleas (the "Philadelphia Case")[1]. The complaint which sought recompense for all of the interests in uninsured real estate destroyed by the arson as well as some of the underinsured real estate has since resulted in a judgment. To further delay and threaten the victims of their crime, as part of their Answer with New Matter and Cross Claim, the Dawara Arsonists denied that they had set the Fire or had any knowledge about who did, counter-sued the plaintiff-victims with no less than eleven (11!) separate and bogus counterclaims. The Dawara Arsonists accused the victims of things like "Unjust Enrichment", "Fraudulent Misrepresentation", "Negligence", "Civil Conspiracy", "Tortuous Interference" and even "Bad Light". These blatantly false statements

---

[1] Court of Common Pleas of Philadelphia County, November Term 2019, Case No. 03370.

accusations were based on the fraudulently stated and perjuriously verified "facts". While the counterclaims were withdrawn in June 2021 just prior to their sentencing in the criminal case, as of this date, the Dawara Arsonists are still maintaining their perjuriously stated "facts" and denials in the Philadelphia case. This is happening despite this counsel's repeated demands during the past few months that these false and fraudulent statements be withdrawn, particularly in light of the Dawara Arsonists' guilty plea in the federal criminal case in February 2021.

As Plaintiff learned only on June 24, 2021, while the Dawara Arsonists were claiming to have accepted responsibility for their crimes before this Court and purported to express remorse and apologies to their victims (including in open court during the sentencing proceedings on June 22-24, 2021), behind the scenes they conspired to further harm their victims by fraudulently transferring their last remaining assets to their siblings in a brazen attempt to thwart their victims' ability to recover civil damages in the Philadelphia Case. This included clearly fraudulent transfers that took place within mere days of the Dawara Arsonists' arrest in 2019, followed by the audacious fraudulent transfers made in the weeks leading up to their sentencing by this Court. The delays and posturing of the Dawara Arsonists in the state court litigation was merely in aid of the conspiracy to transfer the assets of the Dawara Arsonists away from the reach of Plaintiff.

Various victims of the fire have transferred their claims, including but not limited to the Philadelphia court civil judgment claims against the Dawara Arsonists to CSC, for various reasons at various times in 2018, 2019, 2020 and 2021. All of these claims, including but not limited to all civil judgment claims that have since been awarded in the Philadelphia case, were transferred to CSC (1) before CSC learned that the Dawara Arsonists transferred assets to family members and (2) before CSC converted from a Pennsylvania limited liability company to a Delaware limited liability company.

As the Declaration and supporting documentation establish, CSC was formed as a Pennsylvania Limited Liability Company on November 7, 2018. Prior to June 30, 2021, CSC was a Pennsylvania limited liability company; its office was in Pennsylvania; and all of its Initial Members, Officers, Managers and Principals were citizens of Pennsylvania.

**Conversion of CSC to a Delaware LLC**

On June 30, 2021, the Initial Members transferred all of their various membership interests in CSC to two Delaware Corporations named Chestnut Street Connected, Inc. and Chestnut Street Combined, Inc. (the "Current Members"), which simultaneously with such transfer executed an Amended Operating Agreement of CSC. CSC was approved as a converted foreign limited liability company by the State of Delaware on July 1, 2021. A deregistration document was submitted by CSC in paper form to the Pennsylvania Department of State on the same day. Starting on July 1, 2021, CSC was a Delaware limited liability company, that its office was in Delaware, and all of its Members and Managers and Principals are citizens of Delaware.

The business decision to convert CSC to a Delaware LLC was based on business, legal and accounting advice and the consideration of many factors including minimization of tax liability, lower operational costs, greater freedom of operations, anonymity of ownership and control, being subject to the business-friendly Delaware law and the efficient Delaware courts, the flexibility to form "series" LLCs inside the same LLC, etc. These business benefits were separate and distinct from the jurisdiction issue before the court.

CSC converted from a Pennsylvania limited liability company to a Delaware limited liability company on July 1, 2021, as is permitted by the laws of both states. All members of CSC at the time of the conversion were Delaware corporations. The company's operating documents and corporation records establish that the succession and transfer were actual, not feigned or

merely colorable. The plaintiff in this case is a Delaware limited liability company with two member/managers that are Delaware corporations. At all times since July 1, 2021, all three Delaware entities operate from offices located in Wilmington, Delaware.

## Pertinent Rights Owned by CSC

CSC is the assignee and owner of rights of victims of the Fire, including claims under the judgment of the Philadelphia court that includes claims in excess of $9,000,000. This includes claims assigned by various victims of the Fire in 2018, 2019, 2020 and 2021. CSC owns other claims related to the Fire that are not part of the Philadelphia proceedings. The assignors of all these claims (the "Assignors") are multiple owners and residents of multiple condominium units that were located in both Buildings on February 18, 2018. These victims identified in the Philadelphia case submitted claims of loss in the criminal proceedings in the total amount exceeding $9,000,000 on behalf of at least some of the Assignors. The Dawara Arsonists apparently did not contest the content or the amount of these submissions in their criminal proceedings.

CSC is the judgment creditor of the Dawara Arsonists under the judgment issued by the Court of Common Pleas for the Philadelphia County. The exact amount of that judgment is expected to be determined in damage assessment proceedings scheduled for August 20, 2021. In addition to their actual damages, CSC also seeks punitive damages. The total amount of the judgment is expected to be in the many millions of dollars, if not tens of millions of dollars.

# ARGUMENT

## DIVERSITY JURISDICTION

'Diversity of citizenship subject matter jurisdiction falls within the original jurisdiction of the district court,' pursuant to § 1332(a) of Title 28 of the United States Code,..." *Johnson v. SmithKline Beecham Corp*. 724 F.3d 337 (3rd Cir. 2013). "Diversity of citizenship must have existed at the time the complaint was filed,..." *Johnson v. SmithKline Beecham Corp*. 724 F.3d 337 (3rd Cir. 2013).

The citizenship of an unincorporated association like a limited liability company is determined by looking to the citizenship of its members. Notably "the default rule under Delaware law is that 'the management of a limited liability company shall be vested in its members,' Del. Code Ann. tit. 6, § 18-402,..." *Johnson v. SmithKline Beecham Corp*. 724 F.3d 337 (3rd Cir. 2013).

CSC converted from a Pennsylvania limited liability company to a Delaware limited liability company on July 1, 2021, as is permitted by the laws of both states. The two members of CSC at the time of the conversion were Delaware corporations.

## THE PLAINTIFF HAS NOT BEEN "IMPROPERLY OR COLLUSIVELY MADE"

The Dawara Arsonists argue that 28 U.S.C. § 1359 prevents the exercise of jurisdiction. That statue simply provides: "A district court shall not have jurisdiction of a civil action in which a party, by assignment, or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

Here there is no collusion between plaintiff and anyone else in fraud of the court. CSC obtained title to the civil judgment claims over a three-year period of time and held title to all relevant claims at the time that it converted in domestications from Pennsylvania to Delaware. The

succession and transfer of such claims were actual, not feigned or merely colorable. The action was not "improperly" brought since there was no impropriety or irregularity involved in the perfectly valid conversion of a Pennsylvania limited liability company to a Delaware limited liability company. See, *Johnson v. SmithKline Beecham Corp*,. 724 F.3d 337 (3rd Cir. 2013). The succession of CSC from a Pennsylvania limited liability company to a Delaware company was and actual, not feigned or merely colorable business decsion.

## Motive is immaterial

The desire of CSC to seek justice in the federal court carries no stigma. Where actual diversity exists among the appropriate parties, the choice to resort to the federal courts rather than the state courts cannot be denied. Nor does a barrier grow simply because an increasing number of litigants prefer the federal to the state jurisdiction. Moreover, in judging whether diversity of citizenship exists the court must not inquire into the motive which led to the pre-suit formulation of a business entity or the selection of an authorized representative or fiduciary. For example, in *Jaffe v. Philadelphia and Western R. Co*., 180 F.2d 1010, 1013 (3 Cir. 1950), the Third Circuit relied heavily on *Mecom v. Fitzsimmons Drilling Co*., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931), for its holding that motive is irrelevant in the artificial creation of diversity jurisdiction.

In *Corabi v. Auto Racing, Inc.*, 264 F.2d 784 (3rd Cir. 1959) the Third Circuit pointed out that the motives which induced the creation of a business entity to become successor in interest to a grantor in another state and take a transfer of its property had no influence on the validity of the transactions which are the subject of the suit. The succession and transfer were actual, not feigned or merely colorable. In these circumstances, the court would not inquire into motives as to the transfers or creation of the entity when deciding subject matter jurisdiction, c*iting to McDonald v. Smalley*, 1 Pet. 620, 624, 7 L.Ed. 287. The court noted that "it is enough that respondent is the

real party in interest." *citing to Smith v. Kernochen*, 7 How. 198, 216, 12 L.Ed. 666. *Corabi v. Auto Racing, Inc*., 264 F.2d 784 (3rd Cir. 1959).

In this case, it is clear that pre-suit and prior to conversion from Pennsylvania to Delaware company, CSC obtained title to all the claims by purchase and assignment. CSC converted from a Pennsylvania limited liability company to ta Delaware limited liability company as is permitted by the laws of both states. The two members CSC at the time of the conversion were Delaware corporations. The corporation records establish that the succession and transfer were actual, not feigned or merely colorable. In these circumstances, the court need not inquire into motives when deciding subject matter jurisdiction.

## The Circumstances Cannot Be Said to Be Collusive

"The term "collusion" indicates "A secret agreement and cooperation for a fraudulent or deceitful purpose; deceit; fraud." Webster's New International Dictionary, 2 ed. The same authority quotes Spenser, "The foxe, maister of collusion," and citing Bouvier goes on to state the meaning of the term at law as "An agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law." To make use of state company law to obtain diversity jurisdiction no matter the object in federal court is not collusive within the ordinary meaning of that term. Moreover, the word "collusion" generally is employed to indicate an illegal agreement or understanding between opposing sides of a litigation rather than to an arrangement effected by one side of the sort at bar." *Corabi v. Auto Racing, Inc.*, 264 F.2d 784 (3rd Cir. 1959). No such circumstances have been alleged here.

### The Circumstances Cannot be Said to Be Improper

"The terms "improper" or "improperly", according to *Webster*, mean "Not suited to the circumstances, design, or end; not appropriate, fit, or congruous; as, an improper medicine; improper dress." *Webster* gives as synonyms: "Improper, indecent, unseemly, indecorous, unbecoming, indelicate." The word "improperly" clearly connotes impropriety." *Corabi v. Auto Racing, Inc.*, 264 F.2d 784 (3rd Cir. 1959). "Had Congress intended to prohibit the creation of federal diversity jurisdiction under such circumstances as those at bar it could have done so simply by omitting the words "improperly or collusively". *Corabi v. Auto Racing, Inc.*, 264 F.2d 784, 75 A.L.R.2d 711 (3rd Cir. 1959).

In a case very similar to the case before this court, in *Johnson v. SmithKline Beecham Corp.* (3rd Cir. 2013), the court determined that where one party did not simply dissolve - it "domesticated itself under the laws of another jurisdiction," becoming a Delaware corporation and then converting to a Delaware limited liability company to obtain the tax benefits and thus facilitate the formation of a joint entity with another company, there was no "collusion" or "impropriety" or irregularity because it involved in the perfectly valid conversion of a Pennsylvania limited liability company to a Delaware limited liability company. *Johnson v. SmithKline Beecham Corp.* (3rd Cir. 2013).

**WHEREFORE**, Plaintiff prays that the Court deny the motion to dismiss and direct the Defendants to answer the Complaint in ten days.

Dated: August 9, 2021         **GELLERT, SCALI, BUSENKELL & BROWN, LLC**

                                           */s/ Gary F Seitz*
                                           By: Gary Seitz
                                           Attorney I.D. No.: 52865
                                           1628 John F. Kennedy Boulevard, Suite 1901
                                           Philadelphia, Pennsylvania 19103
                                           Ph: (215) 238-0011
                                           Fx: (215) 238-0016
                                           gseitz@gsbblaw.com

                                           Attorneys for Plaintiff