**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHESTNUT STREET** | : | CIVIL ACTION |
| **CONSOLIDATED, LLC,** | : | |
| | : | |
| Plaintiff, | : | NO.  2:21-cv-03046-ER |
| | : | |
| v. | : | |
| | : | |
| **BAHAA DAWARA, et al.** | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**PLAINTIFF CSC'S SUPPLEMENTAL BRIEF IN RESPONSE TO**
**THE DAWARA ARSONISTS' MOTION TO DISMISS**

Plaintiff Chestnut Street Consolidated, LLC ("CSC"), by and through undersigned counsel, Gellert Scali Busenkell & Brown LLC, hereby submits the following Supplemental Brief in Opposition to the Motion to Dismiss for lack of subject matter jurisdiction filed by Imad Dawara ("Imad"), Bahaa Dawara ("Bahaa") (collectively, "Dawara Arsonists").

**CSC's SUPPLEMENTAL DISCOVERY RESPONSES**

Plaintiff Chestnut Street Consolidated, LLC ("CSC"), timely responded to the interrogatories set forth in the court's order dated August 17, 2021, with responses that were verified by a duly designated Discovery Compliance officer of CSC, as follows:

a. **How did converting Chestnut Street Consolidated, LLC ("CSC") to a Delaware limited liability company ("LLC") aid to minimize CSC's tax liability?**

RESPONSE:

The conversion included two steps: a conversion of membership interests in CSC to Delaware C-Corporations; and (b) a conversion of CSC to a Delaware LLC itself. Each

of these steps provided distinct tax advantages, which are summarized in the attached chart (marked as Exhibit 9), and discussed more fully below.

1. As CSC is an entity that elected to be treated as a partnership for federal tax purposes, its profits flow to its members via Schedules K-1 and the state analogues of Schedules K-1. In its prior form, all of CSC's profits propagated to its individual Principals. Without a change in corporate structure, profits generated in 2021 and onward, including profits from recovery of assigned claims, were anticipated to be taxed as follows:

   - At the LLC level: 6.25% for City of Philadelphia NPT tax and 0.1415% for City of Philadelphia Gross Receipts Tax; and

   - At the individual member or member-beneficiary level: federal income tax 37%, state income tax of 3.07% and with at least some or potentially all members, Philadelphia income/school tax of 3.84.

   - The combined effect of the above taxation was a 47.49% tax burden.

2. Federal tax considerations. As a first step, the Principals chose to defer the taxation of CSC profits by sheltering them inside C-Corporations, which would become the new members of the LLC by assignment of membership interests. C-Corporations pay a 21% federal income tax on K-1 income from CSC vis-a-vis the individuals' 37% federal tax bracket[1]. As long as the C-Corporations do not distribute their profits as dividends to the Principals, which the Principals do not intend to happen for a long time, the additional 15% qualified dividend tax and 3.8% Medicare tax is deferred. After the 15% and 3.8% taxes, the total

---

[1] The 37% tax bracket will apply to at least some and likely to all Principals of CSC in 2021.

federal income tax burden is very close to the individually owned option, but a significant part of it is deferred until much later.

3. <u>State tax considerations for members</u>. The next question was to choose the best domicile for the C-Corporations. Delaware was chosen since the anticipated Delaware state income tax on these C-Corporations' profits from would likely be 0% vs. 9.99% in Pennsylvania. Even to the extent this proves incorrect, Delaware's corporate income tax is 8.7%, which is lower than Pennsylvania's 9.99%. Delaware C-Corporations do not get taxed on their non-Delaware based business activities. To the extent the C-Corporations derive profits that become subject to Delaware's 8.7% corporate income tax, they may be further converted to Nevada C-Corporations, where they will be subject to 0% state tax.

4. <u>State and city tax considerations for the LLC</u>. The final question was whether CSC should also change its domicile to Delaware. The tax-related considerations were to legally avoid the 6.25% and 0.1415% taxes that would almost certainly be imposed on CSC by Philadelphia Revenue Department if CSC did not change its domicile. It also appeared more logical and simple to have CSC and its members to have the same state of domicile.

5. <u>General tax law issues</u>. The following was generally considered prior to conversion, with substantial advice of counsel and through independent research by the Principals:

   - Businesses that are formed in Delaware but do not conduct business there do not need to pay any state corporate income tax. Additionally,

there is no tax on royalty payments or other "intangible assets".  Non-residents pay no Delaware state personal income tax on income derived and/or dividends received from Delaware entities. There is no sales tax in Delaware. There is no state corporate income tax on goods and services provided by Delaware corporations operating outside of Delaware. The state does not have a corporate tax on interest or other investment income that a Delaware holding company earns. If a holding corporation owns fixed-income investments or equity investments, it is not taxed on its gains at the state level. Delaware also does not have any personal property tax. The state has no value-added taxes (VATs), it does not tax business transactions, and it does not have use, inventory or unitary taxes. There is no inheritance tax in Delaware, and there are no capital shares or stock transfer taxes. The municipal taxation, even if it applies, is nominal. In sum, Delaware imposes lower taxes on the LLC and lower corporate taxes on members of the LLC. By moving its entire corporate structure to Delaware, CSC will be able to take advantage of this lower tax regime.

- By contrast, Pennsylvania requires payment of taxes based on all earned income, and taxes its residents on all income earned in all states and worldwide. In particular, Pennsylvania imposes a 9.99% tax on profits of Pennsylvania C-Corporations. Further, Philadelphia imposes a 6.25% tax on the income of all businesses that operate there. By moving CSC

and all its members to Delaware, these taxes were entirely and legally avoided.

- From the federal tax perspective, in some circumstances, the substitution of the 21% corporate tax and the 15%+3.8% dividend tax, if (a) individual owners are in the lower tax brackets and (b) they intend take their income from the C-Corporations right away, they are better off keeping their interests in the LLC directly in their names. However, in circumstances when the individual federal tax bracket is at 37% and/or tax deferral is desired, ownership through C-Corporations is unquestionably advantageous. These circumstances will apply to at least some and likely all individual Principals of CSC in tax year 2021.

**b. How did converting CSC to a Delaware LLC lower the business's operational costs?**

<u>RESPONSE:</u>

Besides substantial tax savings, CSC was able to secure physical office space in Wilmington, Delaware with an office address that includes access to meeting space to host business meetings including board, manager and member meetings. This office space has been provided to CSC and its Principals at no cost. No equivalent services were available in Pennsylvania for no cost. Contrary to the averments of opposing counsel, this is not a "mailbox" location, but a physical office with the aforementioned facilities.

**c. How did converting CSC to a Delaware LLC allow CSC a greater freedom of operations, anonymity of ownership, and control over the LLC?**

<u>RESPONSE:</u>

Delaware is a well-known "privacy and asset protection haven."

5

Unlike in Pennsylvania, Delaware law offers confidentiality by shielding the identities and personal information of privately held corporate business owners from public record. Even when business owners file incorporation papers, the state only requires filing the name of the entity and the name and address of the registered agent. Additionally, Delaware does not require the names and addresses of LLC members and managers to be made public. Delaware's Limited Liability Company Act, 6 Del.C. § 18-101, et seq. (the "DLLC Act") in Section 18-201 requires only one authorized person be named and Section 18-102 does not require that a manager or member of the LLC be named or disclosed.  By contrast, the Pennsylvania Uniform Limited Liability Company Act of 2016, 15 Pa. Uncons. Stat. § 8811, et seq. (PA LLC Act") provides in Section 8821 that the formation must be signed by each organizer and pursuant to 15 Pa. Uncons. Stat. §§ 134 and 135, applicable to all business entries filing any documents of record in Pennsylvania, docketing statements for each filing must be provided to the Department of State that specifically identify officers and managers.  The information contained in the docketing statements are made available other agencies and to the public.

In sum, unlike Pennsylvania, Delaware does not require the disclosure of the identities of the shareholders, officers or directors of a corporation (such as Combined and Connected), or members of a manager-managed LLC (such as CSC) in either the required initial corporate filings or annual reports. This amounts to multiple layers of privacy that the Principals of CSC achieved.

The prime manifestation of this protection actually working is opposing counsels' ease of discovering multiple bits and pieces of CSC's Principals' information in the public records in Pennsylvania, contrasted with his complete inability to discover any of the same information in Delaware post-conversion. While counsel for the defendants in this case claim that his clients know the identities of those behind CSC, this is, in fact, not so. First, while the "pool" of significant

victims is indeed limited to about two dozen known owners and residents, that is still a very large pool compared to knowing exactly which one of them are behind CSC. Second, additional individuals may or may not be participating in CSC's present activities, and their privacy and safety is of paramount concern to CSC.

Given the defendants' history of threatening the lives and livelihoods of those who had wronged them in prior court proceedings (namely, by RCL's landlord obtaining an order for eviction of RCL from its Chestnut Street location), privacy was a paramount concern for the Principals. Based on advice of counsel, they believed, and continue to believe, that they have achieved the most robust level of privacy. Had it not been for these unexpected jurisdiction-related proceedings, the identities of at least some individuals behind CSC would forever remain unknown to the defendants and their counsel, as these identities are completely irrelevant to the merits of CSC's claims of fraudulent conveyance.

An anonymous LLC structure is the desired choice for the Principals of CSC who wanted to conduct business privately, wished to prevent the aggressors who destroyed the real estate from which many of their rights are derived from uncovering their identity and easily looking them up, and who preferred a level of privacy and separation of their business from their personal lives. Delaware was geographically the closest state to Pennsylvania to permit such formations.

To the extent CSC's legal pursuit of the Dawara Arsonists and their relatives is being managed and/or co-managed by those who were not the original victims, any disclosure of the identity of such individuals would clearly expose them and their families to new dangers from defendants and their potential co-conspirators operating outside prison – an unnecessary danger at this stage of proceedings when the only thing at issue is jurisdiction.

Opposing counsel claims that his clients already know who the individuals behind CSC are. This is most certainly incorrect. They may *think* that they know who these individuals are – but in reality, they are mistaken. Indeed, if they did know this already, they would not be trying so hard to obtain this information from CSC. Specifically, while the identities of 20+ of the main victims of the fire are indeed known to the defendants (although not necessarily by their full names), they do not know the exact composition of victims who are behind CSC. They also do not know if any individuals other than some of the 20+ direct victims are involved in CSC's effort to recover on assigned claims. They do not know their respective roles and their business arrangements with each other. It is largely to protect all this information that CSC's conversion was effectuated with maximum attention to privacy, including the extra layer of privacy protection that corporate members provided. All this information is completely irrelevant to the fraudulent conveyance claims, as the liability has been established in the Philadelphia court. The individuals behind CSC regret that the present and unexpected jurisdiction-related endeavor is being used to try to discover their identities where the merits of their complaint would not require it and insist on attorney for defendants treating all information provided with extreme sensitivity, and not disclosing it directly or indirectly to any non-counsel parties. Even minimal indicia of tangential information may result in such discovery. Any harm that comes to the Principals from defendants as a result of inadvertent disclosure of clues by opposing counsel will be actionable.

Although not as important a consequence of privacy protections, Delaware law also better protects the personal assets of shareholders and LLC members from attack by corporate or LLC creditors or others due to the narrower disclosure limitations regarding owners and officers.

Further, also not as important as privacy, as set forth in "§ 18-106..." Del. Code Tit. 6 Sec. 18-106 [Effective 8/1/2021] (the "DLLC Act"), limited liability companies organized in Delaware

can operate freely pursuant to the doctrine of freedom of contract.  On the other hand, companies organized in Pennsylvania are restricted in many respects as set forth in § 8847 of the PA LLC Act.  For example, under Pennsylvania law "an act outside the ordinary course of the activities and affairs of the company (like buying or selling real estate) may be undertaken only with the affirmative vote or consent of all members." 15 Pa. Uncons. Stat. &sect; 8847 Management of limited liability company (Pennsylvania Unconsolidated Statutes (2021 Edition)).   Under Delaware law, the LLC members can agree how such decisions may be made without the requirement of unanimous consent.  The long-term plan of CSC's members is to reinvest profits and recoveries obtained through CSC and as such they desire the greatest flexibility in engaging in such future transactions.

### d. What benefits did CSC obtain under Delaware law by converting its status to a Delaware LLC?

RESPONSE:

Besides the tax savings, freedom of management and anonymity, CSC sought to operate under what the Principals, on advice of counsel and based on their own general knowledge and research, considered to be generally more modern laws that clearly spell out what can and cannot be done. The large body of Delaware case law, court rulings, generated over many years provide both guidance and predictability to Delaware companies, lawyers, and judges. The business-friendly limited liability company law of Delaware is the model for law students at every law school in the United States who study the Delaware limited liability law, the corporation statute and the decisions of Delaware courts interpreting that law.

The quality of Delaware courts and judges is another reason. Delaware has a special court, the Court of Chancery, to rule on corporate law disputes without juries. Corporate cases do not get stuck on dockets behind the multitude of non-corporate cases. Instead, Delaware corporations can

expect their legal disputes to be addressed promptly and expertly by judges who specialize in corporate law. Its appointed judges are highly experienced in business cases, and effectively solve corporate disputes in weeks or months instead of years as in Pennsylvania.

Judges in Delaware are appointed by the governor, with the consent of the Senate. In Pennsylvania, all judges are elected. Delaware's Supreme Court and Court of Chancery each have 5 jurists that have statewide jurisdiction over all of Delaware's three counties. Pennsylvania's 67 counties each have their own trial court of general jurisdiction. Pennsylvania has an intermediate appellate court. Delaware does not.  As a result, ultimate determinations are more speedily obtained in Delaware. Even when judges change in Delaware, it is not a favoritism or political system. Judges in Delaware make reasoned, non-political decisions.

Delaware updates its corporate statutes virtually every year. Pennsylvania does not revise its business laws very often. (One reason for the difference may be that it is easier to have the relatively small number of bar leaders and legislative leaders agree each year on the amendments to the Delaware corporate statute because there are fewer people that need to "sign off" on a new law).

The long-term plan of CSC's members is to reinvest profits and recoveries obtained through CSC. The savings provided by having such profits remain undistributed in C-corporations for an extended period of time are extremely high. The advantage of being able to make Delaware's Courts of Chancery the forum for resolving future business disputes, particularly with third parties, is an important addition to this long-term plan.

e.  **What, if any other, benefits did CSC's initial members seek to obtain by assigning their interests to the Delaware corporations Chestnut Street Connected and Chestnut Street Combined?**

RESPONSE:

By converting from a Pennsylvania LLC to a Delaware LLC, CSC safeguarded its assets by building a stronger shield between CSC's assets and its members' and their owners' business liabilities. This means that, if some of CSC's members and/or the Principals behind them cannot pay their creditor(s), this shield makes it difficult for creditors to penetrate into the assets of the LLC.   This is because unlike in Pennsylvania, Delaware law explicitly makes the limited "Charging Order" the sole and exclusive remedy for creditors of LLC members. This prevents creditors of business partners from taking over control of the company. Creditors of a member can only get an economic interest in the LLC's distributions to that member, not a control interest or a right to liquidate the LLC. By contrast, Pennsylvania permits charging orders to attach to any transferable interest of the member, and theoretically permit a creditor to reach the debtor's share of LLC's assets. See 15 Pa.C.S. § 8454. The right of a transferee to participate in the management of the business may be transferred only if the operating agreement so provides, or with the consent of the other members.

These considerations were particularly important since at least one of the Principals was recently contemplating bankruptcy, and he/she/it is still not completely "out of the woods" yet financially. The finances of this Principal were destabilized as a result of the Fire and were in a downhill slide for several years since then. There are potential and/or actual creditors with large liquidated and/or unliquidated claims against this Principal and/or his/her/its business interests. In these circumstances, both this Principal and other Principals wanted to protect CSC from

interference by these potential and/or actual creditors. The conversion to a Delaware LLC provided this greater level of protection.

This said, the federal jurisdiction afforded to a fraudulent transfer lawsuit was also considered by the Principals as a factor in the Delaware conversion. Principals believe in federal courts being more efficient in their administration of justice, and knew that their counsel mainly practiced in federal courts. This was an important additional benefit of the conversion, but not its main reason. Even if federal jurisdiction was not at issue, the conversion would have still been implemented for all the other reasons described above.

CSC feels the need to address the claim by opposing counsel that the Philadelphia court had allegedly denied an identical injunction in 2019-2020, and CSC "forum-shopped" to this court because of this, artificially creating federal jurisdiction by re-registering in Delaware. Nothing could be further from the truth. First, as described above, the conversion was being considered as a non-urgent item long before the possibility of filing the present lawsuit arose, which switched into turbo mode when the protection became acutely necessary. Second, it is a fallacy that the circumstances in which the prior injunction was denied were anywhere near similar to the present situation. Specifically, the Philadelphia injunction was sought in late 2019 (and denied in 2020) – at the outset of the civil complaint, long before any liability under it was established, and when fraudulent transfers were a mere hypothesis. In other words, this was (a) prior to the Dawara Arsonists' guilty plea and conviction, (b) prior to the issuance of a civil judgment against them, and (c) prior to the discovery of actual and incontestable fraudulent transfers by them and their relatives, which were performed repeatedly and with the clear intent of avoiding collection by CSC. While CSC is presently before the federal court with its fraudulent transfer complaint and an injunction request, it is confident that any state court, or any other court for that matter, would

grant it the same relief it seeks here. The outrage of what the defendants have done, fully documented by public record, would doubtless impress any court into ensuring it does not happen again.

      **f.   Why was CSC converted to a Delaware LLC one week before filing the present action in federal court?**

      <u>RESPONSE:</u>

Prior to June 24, 2021, CSC did not anticipate a substantial recover from its claims against the defendants. While the judgment in the Philadelphia court was inevitable, its collection was deemed virtually impossible. The Principals of CSC had been considering reorganizing in a jurisdiction that would better protect their anonymity and give them tax advantages, but this was not an item of priority or urgency.

On June 24, 2021, CSC uncovered the fraudulent conveyances that form the basis of the present case. It became suddenly clear that a substantial recovery would likely finally be forthcoming in favor of CSC with these previously unknown assets of the defendants found. The identities of the Principals were suddenly in urgent need of maximum protection, and tax optimization became suddenly important in light of significant revenue from the recovery in these proceedings that was all but inevitable.

In the week between June 24, 2021 and June 30, 2021, the Principals of CSC accelerated and performed the business reorganization steps that had been contemplated for months to anonymize all CSC-related information to the greatest extent possible, and shield the forthcoming recovery through newly created business structures, defer and reduce tax liabilities on income payable in both instant and future periods, and better insulate assets and proceeds from potential future claims and creditors in a legal manner (such claims and creditors potentially both existing

against some of the Principals and potentially appearing against CSC and its members in the context of their future business activities).

CSC obtained its business assets including the assigned rights from 2018 through 2021. Most of the rights were assigned in 2018-2019. At that time, the Dawara Arsonists were not yet known to be the real arsonists, and had not yet been arrested. Due to the preliminary business activity of CSC, the state of formation was not a significant consideration. In fact, at the time, the prosecution of any claims against the Dawara Arsonists was deemed very unlikely. This changed when the Dawara Arsonists were arrested in October 2019. A lawsuit was filed in November 2019, but still, CSC was not optimistic about any recovery.

When the Dawara Arsonists plead guilty in February of 2021, CSC began to consider tax optimization and anonymity issues in connection with any potential recovery. This was because CSC identified a possible fraudulently transferred asset that was different from the real estate that was discovered on June 24, 2021. Still, prior to June 24, 2021, CSC did not expect to realize significant short-term income from its holdings. A judgment was still required and even then, it was expected to be difficult to enforce against the asset in question.

However, on June 24, 2021, CSC learned that the Dawara Arsonists had transferred easily disposable real estate assets of significant value to family members. The fraudulent transfer rights of CSC needed to be promptly acted upon and pushed CSC to quickly consider its alternatives for tax minimization, freedom and ease of management and operation, anonymity, asset protection, and an overall friendly business environment related to the future operations of the company.

## FURTHER DISCOVERY

The foregoing responses were timely provided under oath to counsel for the moving defendants on August 23. No deposition was requested or sought by Defendants. Despite four emails having been sent since August 20, counsel for defendants has not communicated with counsel for CSC since that date.

## LEGAL ARGUMENTS

### (1) The Court Has Diversity Jurisdiction Over this Fraudulent Transfer Action

For diversity jurisdiction to lie, the amount in controversy must exceed $75,000 and there must be "complete diversity" amongst the parties. See J*ohnson v. SmithKline Beecham Corp*., 724 F.3d 337, 346 (3d Cir. 2013). "Complete diversity," which must exist at the time the complaint is filed, means that the plaintiff cannot be a citizen of the same state as any of the defendants. See *id.* "The citizenship of a natural person is the state where that person is domiciled," while "a limited liability company is a citizen of all the states of its members." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018).

It is undisputed that CSC is a Delaware limited liability company whose two members are Delaware corporations with principal places of business in Delaware. The defendants are all Pennsylvania citizens.

Two of the seven defendants filed a motion to dismiss for lack of subject-matter jurisdiction. Their argument is that CSC has failed to establish diversity jurisdiction.

"The principal federal statute governing diversity jurisdiction, 28 U.S.C. § 1332, gives federal district courts original jurisdiction of all civil actions 'between ... citizens of different States' where the amount in controversy exceeds $75,000." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99 (3rd Cir. 2015).  Although there is no good reason to treat LLCs differently from

corporations for diversity-of-citizenship purposes, see concurring opinion in *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99 (3rd Cir. 2015), "the citizenship of partnerships and other unincorporated associations is determined by the citizenship of [their] partners or members."..." citing *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir.2010).

Here, CSC's members are both Delaware corporations with principal places of business in Delaware. "For jurisdictional purposes, "a corporation is a citizen of both its state of incorporation and the state 'where it has its principal place of business.' " *Johnson v. SmithKline Beecham Corp*., 724 F.3d 337, 347 (3d Cir. 2013) (quoting 28 U.S.C. § 1332(c)(1) ).

CSC has established that the parties here are completely diverse: CSC is a Delaware limited liability company whose two members are Delaware corporations with principal places of business in Delaware. The defendants are all Pennsylvania citizens.

There is also no dispute that the second requirement for federal jurisdiction under the diversity statute is present here, i.e. that the "matter in controversy exceeds the sum or value of $75,000 ...." 28 U.S.C. § 1332(a), ." *Auto-Owners Ins. Co. v. Stevens &amp; Ricci Inc*., 835 F.3d 388 (3rd Cir. 2016). CSC seeks to avoid, pursuant to the Pennsylvania Voidable Transfers Act, the transfer of at least three parcels of real estate each with value far in excess of the $75,000 jurisdictional amount.

The complete-diversity requirement has been satisfied in this case. Accordingly, and because the amount in controversy here exceeded $75,000, this case falls within the exercise of this court's diversity jurisdiction.

### (2)  CSC Is the Real Party in Interest - Jurisdiction Was Not Artificially Manufactured in Contravention of Section 1359

Defendants' factual challenge to diversity jurisdiction is simply that complete diversity was lacking when the lawsuit was filed because the plaintiff's conversion from a Pennsylvania limited liability company to a Delaware limited liability company pre-suit demonstrates a 'naked' purpose to create diversity jurisdiction prohibited by section 1359 of title 28 US Code. The movants argue that CSC was converted from a Pennsylvania limited liability company to a Delaware limited liability company as a sham to manufacture diversity jurisdiction.

The foregoing responses to the court's inquiries establish that the conversion and restructuring of CS was for several valid business reasons and was not a shame.  Moreover, the Supreme Court does not agree with defendants' assertion. For example, having all assets of one corporation transferred to another corporation by action of a board of directors and stockholders fails to demonstrate a 'naked' purpose to create diversity; the Supreme Court held in *Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co.*, 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed.2d 681 (1928) that Section 37 of the Judicial Code of 1911, the precursor of Section 1359, was not applicable in a case where a Tennessee corporation had been purposely created and a cause of action assigned to it along with other assets by a Kentucky corporation, for the express purpose of creating diversity jurisdiction. The Court pointed out that Section 37 was inapplicable because "The succession and transfer were actual, not feigned or merely colorable. In these circumstances, courts will not inquire into motives when deciding their jurisdiction." *supra* 276 U.S. at 524, 48 S.Ct. at 405 (*citations omitted*). It is enough that respondent is the real party in interest.  The court

added that "[t]he motives which induced the creation of respondent to become successor to its Kentucky grantor and take a transfer of its property have no influence on the validity of the transactions which are the subject of the suit." *supra* 276 U.S. 518 at 524.

Under the Supreme Court's analysis, neither the conversion of a Pennsylvania limited liability company to a Delaware limited liability company nor the transfer of membership interests in the Delaware limited liability company from individuals to Delaware corporate ownership demonstrate a 'naked' purpose to create diversity.  CSC's business justifications for these developments including tax avoidance, tax deferral, freedom of operations, certainty of corporate law and anonymity overshadow the defendants' argument.

This is not the case where the non-diverse plaintiff assigned its rights to a straw party for one dollar and by a separate agreement dated the same day, the straw party promised to pay back the non-diverse plaintiff 95% of any net recovery on the assigned cause of action. See, *Kramer v. Caribbean Mills, Inc*, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969).  Nor is this the case where non-diverse bond holder plaintiffs "cut the coupons from their bonds and transferred them to a citizen of Massachusetts, who gave in return a non-negotiable two-year note for $500 and a promise to pay back 50% of the net amount recovered above $500." *Farmington Village Corp. v. Pillsbury*, 114 U.S. 138, 5 S.Ct. 807, 29 L.Ed. 114 (1885).  No straw party assignee is involved in this case.  These were valid corporate transactions for substantial business reasons.

The facts here are undisputed but that CSC is the real party in interest. The evidence establishes beyond doubt that CSC's conversion from a Pennsylvania limited liability company to a Delaware limited liability company was real, actual, not feigned and not merely colorable. Even the motive of CSC's conversion establishes the important business justifications for the conversion including cost savings, tax optimization and anonymity.

In a case very similar to the case before this court, SmithKline Beecham, a Pennsylvania corporation, was sued, along with several related entities over allegations that it manufactured an injurious defective pharmaceutical drug. Before the case was filed, the business entity had dissolved as a Pennsylvania corporation, domesticated as a Delaware corporation, and converted to a limited liability company called GSK LLC. When the plaintiffs, one of whom was a Pennsylvania citizen, subsequently brought the action in state court and defendants removed it to the district court, the plaintiffs claimed that the case should be remanded because SmithKline Beecham and one of the plaintiffs were Pennsylvania citizens and thus diversity of citizenship was absent. Plaintiffs claimed that the former SmithKline Beecham should be considered in the jurisdiction analysis as it was still a real party in interest because Pennsylvania statutory law preserved a dissolved corporation's interest in litigation against it. The Third Circuit emphasized that SmithKline Beecham did not merely dissolve. Rather, it domesticated as a new entity in Delaware which has "has stepped into SmithKline Beecham's shoes" because "under Delaware law, all of SmithKline Beecham's debts, liabilities and duties now lie with GSK LLC." Id. at 359 (internal citations and quotation marks omitted). In these circumstances, the court concluded that SmithKline Beecham had become a nominal party and the court disregarded its citizenship for purposes of diversity jurisdiction. See also, *Walsh v. Defenders, Inc.*, 894 F.3d 583 (3rd Cir. 2018). The court held that in determining citizenship of an LLC, whose sole member was a corporation, the state of incorporation and principal place of business of the corporation determined citizenship of the LLC.

A nearly identical process was completed by CSC in this case before suit was filed. Under Delaware law, all of CSC's debts, liabilities and duties now lie with CSC as a converted LLC.

Generally, courts consider a number of factors to determine whether parties have colluded to manufacture jurisdiction, including: the assignee's lack of a previous connection with the claim assigned; the remittance by the assignee to the assignor of any recovery; whether the assignor actually controls the conduct of the litigation; the timing of the assignment; the lack of any meaningful consideration for the assignment; and the underlying purpose of the assignment. *Federal Realty Inv. Trust v. Juniper Props. Group*, 2000 WL 424287, at *4 (E.D.Pa. Apr. 18, 2000). None of those factors suggest any improper collusion here. CSC and its members in good faith and for valid business reasons converted to a Delaware limited liability company owned by Delaware corporations. CSC has been long involved with the rights against the Dawara Arsonists in the underlying matters.  The individual and business victims fully assigned their interests to Delaware corporations they created for legitimate business purposes. The assignments at issue here are full and complete. These are not straw parties but rather real parties in interest.

The Third Circuit also interprets § 1359 with a focus on straw or sham entities to outlaw the creation of jurisdiction where a party has been improperly or collusively made or joined to invoke the jurisdiction of the court. The focus is, for example, the artificial selection of a nonresident straw representative who has no duty or function except to offer the use of his citizenship to create diversity in contemplated litigation.  *McSparran v. Weist*, 402 F.2d 867 (3rd Cir. 1968) *cert. den.* 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed. 2d 217.  In other words, the device must be so lacking in substance as to be improper and collusive under Section 1359. *McSparran v. Weist*, *supra,* 402 F.2d at 876.  The transactions here, to the contrary, are legally valid business changes supported by substantial business justification.

As the facts set forth above establish, CSC and its members properly complied with the laws of Pennsylvania and Delaware in connection with the transfer and conversion of the pertinent

rights of CSC based on valid business reasons resulting in an actual, binding, not feigned and not merely colorable real party in interest in the form of a Delaware limited liability company with two members that are both Delaware corporations with principal places of business in Delaware. Diversity is absolute.

      **WHEREFORE**, Plaintiff prays that the Court deny the motion to dismiss, direct the Defendants Imad and Bahaa Dawara to answer the Complaint in ten days and to enter default judgment against the remaining defendants.

September 7, 2021

                    **GELLERT, SCALI, BUSENKELL & BROWN, LLC**

                             **/s/ Gary F Seitz**

By:    Gary Seitz
          Attorney I.D. No.: 52865
1628 John F. Kennedy Boulevard, Suite 1901
Philadelphia, Pennsylvania 19103
Ph: (215) 238-0011
Fx: (215) 238-0016
gseitz@gsbblaw.com
Attorneys for Plaintiff

<u>**CERTIFICATE OF SERVICE**</u>

Gary F. Seitz, Esquire, counsel to Chestnut Street Consolidated, LLC ("Plaintiff"),

certifies that the foregoing Supplemental Brief was served on  September 7, 2021 on counsel of

record by CM/ECF and on unrepresented parties by First Class U.S. Mail.


*/s/ Gary F. Seitz*
By: Gary F. Seitz
Attorney I.D. No.: 52865

22