IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Chestnut Street Consolidated, LLC, :    CIVIL ACTION
                                   :    NO. 21-03046
           Plaintiff,             :
                                     :
      v.                            :
                                     :
Bahaa Dawara, et al.
                                     :
           Defendants.          :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                       November 12, 2021

## I.    INTRODUCTION

Plaintiff Chestnut Street Consolidated, LLC ("Plaintiff" or "CSC") brought this case under the Pennsylvania Uniform Voidable Transactions Act in an effort to thwart an alleged fraudulent transfer of assets. Defendants Bahaa Dawara and Imad Dawara (collectively "Moving Defendants") moved to dismiss this action arguing that Plaintiff artificially manufactured diversity jurisdiction to gain access to the federal courts.

For the following reasons, the motion to dismiss will be denied.

II.   **FACTS**[1]

On February 18, 2018, Moving Defendants set fire to two buildings in Old City, Philadelphia, causing millions of dollars in damages. In February 2021 Moving Defendants pled guilty to arson and conspiracy to defraud the United States government. On June 24, 2021, Moving Defendants were each sentenced to nine years in prison and ordered to pay $22 million in restitution.

CSC was initially formed in 2018 as a Pennsylvania limited liability company (the "Pennsylvania LLC") for the purpose of pursuing rights against Moving Defendants. Those individuals' and entities' interests in the properties affected by the fire assigned their rights to CSC. See Pl.'s Supplemental Decl. ¶ 40, ECF No. 50 ("While it was also created to own real estate, the name 'Chestnut Street Consolidated' signified the consolidation of various parties' rights by CSC for further analysis and prosecution. It was not known the time which of these rights might bear fruit.").

On November 25, 2019, the Pennsylvania LLC brought suit against Moving Defendants in the Philadelphia Court to Common Pleas to recover damages for the uninsured and underinsured real estate destroyed by the fire. In March 2021, following Moving Defendants' conviction in the underlying criminal case, the

---

[1]   The Court makes the findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.

Pennsylvania LLC filed a motion for partial summary judgment in the Court of Common Pleas.[2] On July 9, 2021, the Court of Common Pleas granted the motion for partial summary judgment in favor of the Pennsylvania LLC.

As noted, CSC was originally established as the Pennsylvania LLC. The initial members of the Pennsylvania LLC, as well as the Pennsylvania LLC's officers and managers, were citizens of Pennsylvania. On June 30, 2021, the Pennsylvania LLC's initial members transferred their ownership interests to two Delaware corporations: Chestnut Street Connected, Inc. and Chestnut Street Combined, Inc. On July 1, 2021, Delaware accepted CSC as a converted foreign LLC, with Chestnut Street Connected and Chestnut Street Combined as its current members. The Pennsylvania LLC was then deregistered, and CSC formally became a Delaware LLC (the "Delaware LLC"). Since then, the Delaware LLC has opened a business office in Delaware.

On July 8, 2021, approximately one week after converting the Pennsylvania LLC into the Delaware LLC, Plaintiff filed the present action in this Court. Plaintiff alleges that Moving Defendants fraudulently transferred assets in their names to their relatives, the other defendants to this action, to prevent Plaintiff's ability to recover in violation of the Pennsylvania

---

[2]   Moving Defendants did not contest liability in the underlying civil action.

Uniform Voidable Transactions Act, 12 Pa. C.S.A. §§ 5101-5114. On July 16, 2021, Plaintiff filed a motion for preliminary injunction to prevent transfer of additional assets out of Moving Defendants' control. On July 19, 2021, the Court granted a temporary restraining order with respect to three properties, which, with the consent of the parties, was extended and is currently in effect.

On August 2, 2021 Moving Defendants filed a motion to dismiss for lack of subject matter jurisdiction. Moving Defendants argue that diversity jurisdiction, pursuant to 28 U.S.C. § 1332, is lacking because the Pennsylvania LLC was converted into the Delaware LLC to improperly create diversity jurisdiction in violation of 28 U.S.C. § 1359. On August 2, 2021, following a hearing, the Court ordered limited discovery on the issue of subject matter jurisdiction.

Plaintiff asserts that because Chestnut Street Connected and Chestnut Street Consolidated, the Delaware LLC's current members, are Delaware corporations, true diversity exists. Plaintiff maintains that the Pennsylvania LLC was converted into the Delaware LLC for legitimate business and tax purposes, including to minimize tax liability, to allow for greater freedom of operations, to protect the identity of CSC's members, and to be subject "to the business-friendly Delaware law." Pl.'s Opp. to Mot. to Dismiss, ECF No. 28 at 6.

On August 16, 2021, after a hearing, the Court ordered supplemental briefing requesting that Plaintiff elaborate on the specific benefits Plaintiff sought to receive that led Plaintiff to convert the Pennsylvania LLC into the Delaware LLC on the eve of filing this action in federal court. Having reviewed the parties' supplemental briefings, and having given the parties an opportunity to be heard, Moving Defendants' motion is ripe before the Court.

## III. LEGAL STANDARD

Jurisdiction is conferred upon the District Courts of the United States under 28 U.S.C. §§ 1331, 1332. Pursuant to 28 U.S.C. 1332(a) "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and the controversy is between "citizens of different States." 28 U.S.C. § 1332(a)(1). In a case with multiple Plaintiff and defendants, "the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005).

Diversity is determined at the time the complaint is filed. Newman–Green, Inc. v. Alfonzo–Larrain, 490 U.S. 826, 830 (1989); Frett–Smith v. Vanterpool, 511 F.3d 396, 399 n.4 (3d Cir. 2008); see also Krasnov v. Dinan, 465 F.2d 1298, 1300 (3d

Cir. 1972) ("It is the citizenship of the parties at the time the action is commenced which is controlling."). The party asserting diversity jurisdiction bears the burden to prove diversity. McCann v. The George W. Newman Irrevocable Trust, 458 F.3d 281, 286 (3d Cir. 2006) (first citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936), then citing Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004)).

"[U]nlike corporations, unincorporated associations such as [LLCs or] partnerships 'are not considered "citizens" as that term is used in the diversity statute.'" Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 104-05 (3d Cir. 2015) (quoting Swiger v. Allegheny Energy, Inc., 540 F.3d 179, 182 (3d Cir. 2008)). "The state of organization and the principal place of business of an unincorporated association are legally irrelevant [for citizenship purposes]." Id. at 105 (citing Carden v. Arkoma Assocs., 494 U.S. 185, 193 (1990)). Instead, the citizenship of an unincorporated association is determined by the citizenship of its members. Id. "For complete diversity to exist, all of the [association's] members 'must be diverse from all parties on the opposing side.'" Id. (quoting Swiger, 540 F.3d at 185). However, "[a] court shall not have jurisdiction of a civil action in which any party, by assignment

or otherwise, has improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359.

"If the defendant . . . mounts a factual challenge [to diversity jurisdiction], the plaintiff is entitled to limited discovery for the purpose of establishing that complete diversity exists." Lincoln Benefit, 800 F.3d at 102. Here, Moving Defendants mounted a factual attack to diversity jurisdiction, arguing that the Pennsylvania LLC was converted into the Delaware entity for the purpose of creating diversity.

In reviewing Moving Defendants' factual attack, the Court must allow Plaintiff "to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence." McCann, 458 F.3d at 290 (citing Gould Elecs., Inc. v. United States, 220 F.3d 169, 177 (3d Cir. 2000)). Plaintiff must prove factual issues by a preponderance of the evidence. Lincoln Benefit, 800 F.3d at 105.

## IV.  DISCUSSION

Moving Defendants maintain that jurisdiction is improper because the Pennsylvania LLC was converted into the Delaware LLC for the purpose of manufacturing diversity in violation of section 1359.[3] For support, Moving Defendants rely on the Third

---

[3]     As noted, for diversity purposes, the citizenship of an unincorporated association is determined by the citizenship of

Circuit's decision in McSparran v. Weist, 402 F.2d 867 (3d Cir. 1968). In that case, the Third Circuit interpreted section 1359 and found that "a nominal party designated simply for the purpose of creating diversity of citizenship, who has no real or substantial interest in the dispute or controversy, is improperly or collusively named." McSparran, 402 F.2d at 873. The Third Circuit explained that:

> [I]t is difficult to see how motive can be entirely ignored in ascertaining the purpose for which the representative is selected in view of the language of § 1359. The statute outlaws the creation of jurisdiction where a party has been improperly or collusively made or joined to invoke the jurisdiction of the court.

Id. at 874.

Whether a party manufactures diversity is a question of fact for the court to consider. Id. at 876. Also, a party may not be deemed to have manufactured diversity where there is a real transaction with "significance beyond establishment of diversity jurisdiction." Id. at 875.

Thus, under McSparren, the Court must determine two issues here: (1) Did Plaintiff convert the Pennsylvania LLC into the Delaware LLC "for the purpose of creating diversity of citizenship?"; (2) Did Plaintiff transfer the underlying

---

its members. Lincoln Benefit Life Co., 800 F.3d at 105. The Delaware LLC's current members are two Delaware corporations. Thus, if the Court determines that Plaintiff has not artificially manufactured diversity, Plaintiff will be deemed diverse from the Defendants.

interests of the Pennsylvania LLC into an entity (the Delaware LLC) with "no real or substantial interest" in the instant dispute? Id. at 873.

### A. Whether CSC was Converted into a Delaware LLC Simply for the Purpose of Manufacturing Diversity

Plaintiff asserts that CSC was converted to Delaware law for legitimate business purposes because it:

> [W]as based on business, legal and accounting advice and the consideration of many factors including minimization of tax liability, lower operational costs, greater freedom of operations, anonymity of ownership and control, being subject to the business-friendly Delaware law and the efficient Delaware courts, the flexibility to form 'series' LLCs inside the same LLC, etc.

Pl.'s Opp. to Mot. to Dismiss, ECF No. 28 at 6.

With respect to minimizing tax liability, Plaintiff argues that the Pennsylvania LLC previously experienced a combined 47.49% tax burden at the LLC and individual-member levels. Plaintiff explains that the Pennsylvania LLC's principals chose to defer taxation of profits "by sheltering them inside C-Corporations, which would become the new members of the LLC." Pl. Supp. Mot. at 6, ECF No. 39-1. Plaintiff argues that, based on the new structure of the entity, the Delaware LLC is able to defer the federal taxation of the Delaware LLC's profits. Additionally, Plaintiff anticipates that in Delaware, the entity's profits would be taxed at 0%, and "to the extent this proves incorrect, Delaware's corporate income tax is 8.7%, which

is lower than Pennsylvania's 9.99%." Pl. Supp. Mot at 4, ECF No. 39-1.[4]

With respect to lowering the cost of business operations, Plaintiff argues that the Delaware LLC was able to obtain access to a physical office space in Wilmington, Delaware with access to a meeting space at no cost to the principals of the Delaware LLC. Plaintiff asserts that it did not have the same opportunity in Pennsylvania.

Further, Plaintiff argues that Delaware law is better suited to protect the identities of those involved. Plaintiff explains that while Moving Defendants claim to know the identities of those behind CSC, the "pool of significant victims is [] limited to about two dozen known owners and residents" which "is still a very large pool compared to knowing exactly which one of them are behind CSC." Id. at 8. Plaintiff contends that given "defendants' history of threatening the lives and livelihoods of those who had wronged them in prior court proceedings . . . privacy was a paramount concern for [CSC's] Principals." Id. at 8.[5]

---

[4]   The Court need not consider whether Plaintiff's business judgement was sound. Instead, the Court must consider whether this was a legitimate business purpose for which Plaintiff sought to convert the Pennsylvania LLC into the Delaware LLC.

[5]   Plaintiff further contends that "[t]o the extent CSC's legal pursuit of the [Moving Defendants] and their relatives is being managed and/or co-managed by those who were not the

Finally, Plaintiff contends that the "large body of Delaware case law, court rulings, generated over many years provide both guidance and predictability to Delaware companies, lawyers, and judges." Id. at 11. Plaintiff also claims that Delaware courts are more favorable to corporations as the Court of Chancery sits in Delaware.[6]

Moving Defendants do not dispute the substance of Plaintiff's argument or the business benefits they may receive.

---

original victims, any disclosure of the identity of such individuals would clearly expose them and their families to new dangers from defendants . . . ." Pl. Supp. Mot. at 9, ECF No. 39-1. However, Plaintiff supplies no evidence that such individuals will be subject to additional threats if their identities are disclosed.

[6]   Plaintiff additionally cites to Johnson v. SmithKline Beecham Corp., a case where the Defendant had been converted from a Pennsylvania corporation to a Delaware LLC in order to obtain tax benefits and facilitate the formation of a joint entity with another pharmaceutical company. 724 F.3d 337, 340-41 (3d Cir. 2013). The Third Circuit found that the Defendant, SmithKline Beecham Corp., "domesticated itself under the laws of another jurisdiction, becoming a Delaware corporation and then converting to a Delaware LLC." Id. at 359 (internal quotation marks and citation omitted). As a result, the new company, GlaxoSmithKline LLC ("GSK LLC"), had "stepped into SmithKline Beecham' shoes, and, under Delaware law, all of SmithKline Beecham's debts, liabilities and duties now lie with GSK LLC." Id. (internal quotation marks and citation omitted). As a result, the Third Circuit found that "SmithKline Beecham thus has no actual interest in the outcome of the litigation, making it a 'nominal party.'" Id. Thus, for diversity purposes, GSK LLC was the true entity at issue. Id.
   This case is inapposite to the current situation. Unlike the present case, the defendant in SmithKline Beecham Corp. had been converted to a Delaware LLC over two years prior the plaintiff filing the underlying action. Id. at 340-41.

Instead, Moving Defendants argue that Plaintiff's decision to file this action in federal court approximately a week after converting the Pennsylvania LLC into the Delaware LLC gives rise to an inference that Plaintiff sought to manufacture diversity jurisdiction. In response, Plaintiff maintains that prior to June 24, 2021, Plaintiff did not anticipate that CSC, as the Pennsylvania LLC, would substantially recover in the underlying suit and deemed collection to be improbable.

On June 24, 2021, shortly after Moving Defendants were sentenced in the underlying criminal action, Plaintiff ran a title search of several properties that were subject of Moving Defendants' restitution agreement with the government in the underlying criminal case. Plaintiff discovered that several of these properties had been transferred to Moving Defendants' non-incarcerated relatives for nominal amounts. Plaintiff maintains that once it became aware of the fraudulent conveyances at issue in this case, it was "clear that a substantial recovery would likely finally be forthcoming in favor of CSC with these previously unknown assets of the defendants found." Pl. Supp. Mot. at 15, ECF No. 39-1. According to Plaintiff, once recovery became feasible, the "identities of the Principals [of the Pennsylvania LLC] were suddenly in urgent need of maximum protection, and tax optimization became suddenly important." Id.

Faced with this new reality, Plaintiff contends that it began to consider the potential business advantages of converting the Pennsylvania LLC into the Delaware LLC in February 2021, but it was not until June 2021 that Plaintiff recognized an actual need to do so. Plaintiff avers that in the week between June 24, 2021 and June 30, 2021, it accelerated a business reorganization plan it had "contemplated" for months. Id.

While it is true that many of the business opportunities cited by Plaintiff existed long before June 2021, the Court credits Plaintiff's contention that it had contemplated converting the Pennsylvania LLC into a Delaware LLC prior to June 2021. The Court also credits Plaintiff's argument that Plaintiff was further inclined to convert the Pennsylvania LLC into a Delaware LLC once Moving Defendants were sentenced in the underlying criminal action and a recovery was deemed feasible. Based on this evidence, the Court concludes that by converting the Pennsylvania LLC into the Delaware LLC, Plaintiff sought to optimize tax benefits, to protect the privacy interests of those with membership interests in CSC, to lower its operational costs, and to obtain the benefits of Delaware law. Under these circumstances, the Court finds that the Pennsylvania LLC was not converted into the Delaware LLC "simply for the purpose of creating diversity of citizenship" and that the conversion was a

13

real transaction with "significance beyond establishment of diversity jurisdiction." McSparren, 402 F.2d at 873, 875.

## B. Whether the Underlying Interests of the Pennsylvania LLC Were Transferred to an Entity with no Real or Substantial Interest in the Dispute

Moving Defendants also contest the manner in which the underlying property interests, which were originally held by the Pennsylvania LLC, were assigned to the Delaware LLC. Moving Defendants argue that in an underlying state court proceeding regarding damages, an individual (Steven Gelbart), who owned property destroyed in the fire, testified and admitted to having assigned his legal rights in the property to Chestnut Street Connected, one of the Delaware LLC's current members, without consideration. Plaintiff maintains that this makes it more likely that the Delaware LLC is merely a "bill collector" for Mr. Gelbart and others similarly situated.

For support, Moving Defendants point to Kramer v. Caribbean Mills, Inc., 394 U.S. 823 (1969). In that case, an entity assigned its interest in a contract to an individual, Mr. Kramer, for $1 prior to Mr. Kramer filing a breach of contract action against the defendant. Id. at 824. Mr. Kramer was to pay the entity 95% of any obtained from the cause of action. Id. The Supreme Court affirmed the lower court's finding that the entity assigned its contractual interest to Mr. Kramer for the purposes of manufacturing jurisdiction in violation of section 1359. Id.

at 825. The Court explained that "when the assignment to Kramer is considered together with his total lack of previous connection with the matter and his simultaneous reassignment of a 95% interest back to [the entity], there can be little doubt that the assignment was for purposes of collection" and so diversity was artificially created. Id. at 827.

Moving Defendants argue that like in Kramer, Mr. Gelbart's interests, and presumably the interests of those similarly situated, were assigned to the Delaware LLC's underlying corporations so the Delaware LLC could recover on Mr. Gelbart's, and the other victims', behalf.

The Court finds that Kramer is distinguishable from the present case. Here, the record shows that Mr. Gelbart, who is currently the president of Chestnut Street Connected, originally had an interest in certain properties affected by the fire. When CSC was first created as the Pennsylvania LLC, Mr. Gelbart received a 50% share in the Pennsylvania LLC.[7] Once the Pennsylvania LLC was converted into the Delaware LLC, Mr.

---

[7]    Regardless, the manner in which the Pennsylvania LLC was established is not relevant here. Moving Defendants have not argued that it was improper for CSC's principals to assign their rights to the Pennsylvania LLC for the purposes of bringing the underlying state action against Moving Defendants. At issue is only whether Plaintiff manufactured diversity by converting the Pennsylvania LLC into the Delaware LLC.

Gelbart's rights and interests were assigned to Chestnut Street Connected, one of the Delaware LLC's current members.

Unlike in <u>Kramer</u>, where the assignee had no prior connection with the assignor, the Delaware LLC is seeking to enforce the rights and interests previously held by the Pennsylvania LLC, and which existed prior to the conversion. Thus, the Delaware LLC is not a mere "bill collector," but instead has a "real or substantial interest in the dispute or controversy" in this case. <u>McSparren</u>, 402 F.2d at 873.

**V.   CONCLUSION**

In considering Moving Defendants' factual attack on subject matter jurisdiction, the Court is permitted to "decide[]the jurisdictional issue by weighing the evidence." <u>Lincoln Benefit Life Co.</u>, 800 F.3d at 104-05. After multiple rounds of briefing and two hearings on the issue, the Court finds that: (1) Plaintiff did not convert CSC into a Delaware LLC "simply for the purpose of creating diversity jurisdiction," and (2) Plaintiff did not transfer the underlying interests of the Pennsylvania LLC into an entity (the Delaware LLC) with "no real or substantial interest" in the present action. <u>McSparren</u>, 402 F.2d at 873.

For the foregoing reasons, Moving Defendants' motion will be denied. An appropriate order will issue.