## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHESTNUT STREET CONSOLIDATED, LLC,** | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 21-3046 |
| | : | |
| v. | : | |
| | : | NONJURY |
| **BAHAA DAWARA,** | : | |
| | : | |
| **IMAD DAWARA,** | : | TRIAL: |
| | : | January 18-19, 2022 |
| **FATAN DAWARA** | : | |
| **a/k/a FATEN DAWARA** | : | TRIAL DEPOSITIONS: |
| | : | March 29 & 31, 2022 |
| **MAISAA DAWARA,** | : | |
| | : | |
| **MIRVAT DAWARA,** | : | |
| | : | |
| **ABEER NAIM,** | : | |
| | : | |
| **HITHAM ALBAROUKI** | : | |
| **a/k/a HAITHAM ALBAROUKI,** | : | |
| | : | |
| and | : | |
| | : | |
| **DOE INDIVIDUALS (1-10),** | : | |
| | : | |
| **DOE ENTITIES (1-10),** | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF CHESTNUT STREET CONSOLIDATED, LLC'S
## <u>POST-TRIAL MEMORANDUM</u>

Plaintiff, Chestnut Street Consolidated, LLC ("CSC"), by and through Gellert Scali Busenkell & Brown, LLC, its undersigned counsel, hereby provides the following post trial memorandum setting forth legal and factual support for the proposed findings of fact and

conclusions of law pursuant to Rule 16.1(c) of the Eastern District of Pennsylvania's Local Rules of Civil Procedure and the court's scheduling order entered on May 17, 2022. CSC incorporates by reference the proposed findings of fact and proposed conclusions of law that provide in detail the reasons the court must find in favor of CSC.

## **TABLE OF CONTENTS**

A.  **Statement of the Case, Legal Issues and Basis for Jurisdiction** ........................................ **3**
    a.   Legal Theory ........................................................................................................ 4
    b.   Jurisdiction ........................................................................................................... 5
    c.   Venue .................................................................................................................... 6
B.  **Brief Statement of The Facts of The Case.** ..................................................................... **6**
C.  **Key Evidence from Trial** ................................................................................................... **9**
    a.   Judicial Admissions ............................................................................................ 9
    b.   Affidavits Admitted into Evidence .................................................................. 10
    c.   Selected Key Oral Testimony ........................................................................... 11
            Andrew Mogilyansky .............................................................................. 11
            Hitham Albarouki .................................................................................... 13
            Imad Dawara ........................................................................................... 14
            Bahaa Dawara ......................................................................................... 15
D.  **Legal Argument** .............................................................................................................. **15**
    a.   Actual Fraud...................................................................................................... 16
    b.   Constructive Fraud ........................................................................................... 19
    c.   Remedies .......................................................................................................... 20
            Claw Back and Transfer to Plaintiff (3 Properties) ............................... 20
            Money Judgment (7 Properties)............................................................. 21
            Punitive Damages ................................................................................... 21
    d.   Defenses ........................................................................................................... 22
      i.   Restitution is not a defense .......................................................................... 22
      ii.   The Lease Purchase Agreements Did Not Reflect Reasonably Equivalent Value 23
E.  **List Of Every Item of Damages Claimed** ..................................................................... **24**
F.  **Schedule Of Plaintiff CSC's Exhibits in Evidence**....................................................... **25**
G.  **Conclusion** ...................................................................................................................... **29**

### A.  Statement of the Case, Legal Issues and Basis for Jurisdiction

On February 18, 2018, Imad Dawara and Bahaa Dawara (the "Incarcerated Defendants") intentionally set fire to two buildings in the vibrant heart of historic Old City Philadelphia, 239 Chestnut Street and 241-43 Chestnut, Street (the "Buildings"), causing a 4-alarm fire that decimated these buildings, threatened many lives and caused tens of millions of dollars in property damage (the "Fire"). [P8G, p. 436]. The Incarcerated Defendants admitted setting the Fire and were convicted of conspiracy to commit arson, insurance fraud and tax fraud. [P8G, p. 436].

Plaintiff CSC is the owner of claims against the Incarcerated Defendants by purchase and assignment from the individual and corporate victims of the Incarcerated Defendants' crimes. [P9A through P9E] The assignors of these claims are the owners of multiple condominium units that were located in both Buildings on February 18, 2018, including all but one unit in the completely destroyed Building at 239 Chestnut Street, and three out of eight units in the Building at 241-43 Chestnut Street. [P9A through P9E] These destroyed, and severely damaged properties constitute all the uninsured real estate that was destroyed by the Fire in the Buildings, and much of the severely underinsured real estate. [P9A through P9E]

Shortly after the Incarcerated Defendants' arrest on October 16, 2019, Plaintiff and its predecessors in interest sued the Incarcerated Defendants in the Philadelphia Court of Common Pleas (the "Philadelphia Case"). [P1A] After their guilty plea before federal district court, the Incarcerated Defendants expressly admitted their liability to Plaintiff in the Philadelphia Case. [P1D]

As Plaintiff learned only on June 24, 2021, while the Incarcerated Defendants were claiming to have accepted responsibility for their crimes before this Court and purported to express remorse and apologies to their victims (including in open court during the sentencing proceedings

3

on June 22-24, 2021), behind the scenes they conspired to further harm their victims by fraudulently transferring their last remaining assets to their siblings in a brazen attempt to thwart their victims' ability to recover civil damages in the Philadelphia Case. [Ex. P2, p. 79; Mogilyansky TT Day 1 p. 23, l. 18 to p. 28, l. 15] This included clearly fraudulent transfers that took place within mere days of the Incarcerated Defendants' arrest in 2019, followed by the audacious fraudulent transfers made just weeks before their sentencing by the Court. [P7, p. 368]

Among these fraudulent transfers are transfers of ten (10) properties previously owned by the Incarcerated Defendants out of their names to joint ownership with relatives in November 2019 for $1 consideration, followed by further $1 transfers of at least some of these properties to Incarcerated Defendants' siblings' names in or about April 2021. [P7, p. 368]

### a. Legal Theory

In this action Plaintiff seeks to claw back some of these fraudulent transfers and obtain the value of others. 12 PA. CONST. STAT. § 5104(a)(l) ("PUVTA"). Principally, Plaintiff seeks to claw back the transfers of three properties valued at approximately $813,600 which the Incarcerated Defendants did not have to sell under their restitution agreement with the government in their criminal case (the "Subject Properties"). The equitable relief sought by CSC to make it whole for the transfers is to compel the transfer of title to these three properties from the transferees to CSC subject to any existing mortgage liens, with a corresponding credit to the Incarcerated Defendants' liability to Plaintiff. Plaintiff asks the Court to void the transfers or obligations to the extent necessary to satisfy the Plaintiff's claim. These transactions with respect to the three properties must be set aside so that the transferred property is turned over to the Plaintiff for which the value will to be applied to the substantial sums owed Plaintiff by the Incarcerated Defendants.

4

As to the other seven properties, a money judgment under the PUVTA derives from a simple but hard calculation, being the value of the asset at the time it was transferred, adjusted by any equities. The creditor, CSC, obtained a judgment on its claim against the debtor Incarcerated Defendants in the Court of Common Pleas. The value of its losses exceeds $9 million. The total value of the seven properties ($1,983,400) is less than the sums that would be owed to CSC after crediting the value of the three properties transferred against the Incarcerated Defendants' total liability for losses they caused. Due to the joint collaboration of all defendants in the fraudulent transfers, CSC must be awarded joint and several money judgments against all defendants for the full extent of the value of the other seven properties transferred by the Incarcerated Defendants ($1,983,400).

Considering the history of the defendants' blatant disregard of the law, this case calls for severe penalties to punish the misconduct and deter others from helping criminals move, hide and "protect" their assets in a similar fashion. Section 7(a)(3)(iii) of PUVTA allows a court to award "any other relief the circumstances may require." The Court has previously interpreted the same clause in PUFTA, a predecessor law to PUVTA, to allow an award of punitive damages in especially egregious cases of fraudulent conveyance. The case of arsonists and their relatives conspiring to conceal property from the victims of arson in a manner described in this Complaint is at the upper end of the range of egregious violations of the PUVTA.

### b. Jurisdiction

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because this action involves a dispute between parties deemed citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs. To the extent permitted by law, this Court has supplemental jurisdiction over certain claims pursuant to 28 U.S.C. § 1367.

### c. Venue

Venue is properly laid in this judicial district pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims occurred in the Eastern District of Pennsylvania, and because as of the commencement of the case all of the Defendants resided in the Eastern District of Pennsylvania.

### B. Brief Statement of The Facts of The Case.

The detailed facts of the case with pinpoint cites to the record are set forth in CSC's proposed findings of fact (and conclusions of law) that are being filed contemporaneously with this memorandum. Here we summarize only a few key facts.

Since the arson on February 18, 2018, that gave rise to Plaintiff's claims, and particularly shortly after the arrest of the Incarcerated Defendants on October 16, 2019, the Dawara Conspiracy Group engaged in the following well-orchestrated fraudulent transfers of at least ten (10) real estate properties (the "Properties") with approximate market value of $2,797,000. Some Properties were transferred multiple times, diverting these valuable assets away from the Incarcerated Defendants' names to the names of others in the Dawara Conspiracy Group, in each instance for a nominal consideration of $1. A concise compilation of the known transfers are as follows:

| Ex[1] | Property / Parcel ID | Value | Transfers |
|---|---|---|---|
| 1 | 19 Ridgeway Ave Norwood, PA 19074 31-00-01187-00 | 350,600 | 11/2019: Bahaa Dawara => Bahaa Dawara & Faten Dawara *Bahaa Dawara and Faten (Fatan) Dawara are siblings |
| 2 | 305 Seminole St Essington, PA 19029 45-00-01849-00 | 240,800 | 11/2019: Imad Dawara => Imad Dawara & Maisaa Dawara 03/2021: Imad Dawara & Maisaa Dawara => Maisaa Dawara *Imad Dawara and Maisaa Dawara are siblings |
| 3 | 407 Seminole St Essington, PA 19029 45-00-01841-00 45-00-01841-01 | 222,200 | 11/2019: Imad Dawara => Imad Dawara & Mirvat Dawara 03/2021: Imad Dawara & Mirvat Dawara => Mirvat Dawara *Imad Dawara and Maisaa Dawara are siblings |
| 4 | 1524 McKean St Philadelphia, PA 19145 481103700 | 305,400 | 11/2019: Imad Dawara => Imad Dawara & Abeer Naim *Imad Dawara and Abeer Naim are husband and wife *Haitham (Hitham) Albarouki, who is Imad Dawara's brother-in-law and the husband of Faten Dawara, acted on behalf of Imad Dawara as his power of attorney in this transaction |
| 5 | 321 Massasiot St Essington, PA 19029 45-00-00900-00 | 258,600 | 11/2019: Imad Dawara => Imad Dawara & Abeer Naim *Imad Dawara and Abeer Naim are husband and wife |
| 6 | 224 Erickson Ave Essington, PA 19029 45-00-00378-00 | 203,000 | 11/2019: Imad Dawara => Imad Dawara & Abeer Naim *Imad Dawara and Abeer Naim are husband and wife |
| 7 | 312 Fern St Darby, PA 19023 14-00-00812-00 | 73,800 | 11/2019: Bahaa Dawara => Bahaa Dawara & Faten Dawara *Bahaa Dawara and Faten (Fatan) Dawara are siblings |
| 8 | 134 Garfield Ave Woodlyn, PA 19094 38-02-00911-00 | 324,900 | 11/2019: Bahaa Dawara => Bahaa Dawara & Faten Dawara *Bahaa Dawara and Faten (Fatan) Dawara are siblings *Property sold 02/08/21 to satisfy restitution |
| 9 | 140-142 Garfield Ave Woodlyn, PA 19094 38-02-00913-00 38-02-00912-00 | 289,000 | 11/2019: Bahaa Dawara => Bahaa Dawara & Faten Dawara *Bahaa Dawara and Faten (Fatan) Dawara are siblings *Property sold 02/24/21 to satisfy restitution |
| 10 | 1007 Milmont Avenue Swarthmore, PA 19081 38-05-00790-01 | 528,700 | 11/2019: Imad Dawara => Imad Dawara & Abeer Naim *Imad Dawara and Abeer Naim are husband and wife *Property sold 05/14/21 to satisfy restitution |

**Color Guide:**
Green: Subject Properties exempt from Incarcerated Defendants' restation agreement;
Yellow: Properties listed for sale as of the January 18-19, 2022 trial dates;

---

[1] The Exhibit number in the left column corresponds to the Exhibits 1 through 10 attached to the Complaint, which contain true copies of deeds available in the public records of Delaware and Philadelphia counties. At trial, they were marked as exhibits P6A through P6N inclusive.

7

Blue: Properties sold between the filing of the Complaint and January 18-19, 2022
Pink: Properties sold prior to the filling of the Complaint in this case.

The transfers of Properties in which the Incarcerated Defendants had an interest to members of the Dawara Conspiracy Group were made after February 18, 2018. The Incarcerated Defendants received no or insufficient value in exchange for each of said transfers. As a creditor of the Incarcerated Defendants, Plaintiff was detrimentally affected.

At the time of each of the transfers, the Incarcerated Defendants were insolvent, or became insolvent, because of the transfers.

At the time of each of the transfers, the Incarcerated Defendants were engaged in a transaction, or were about to engage in a transaction, for which capital remaining with the transferor was unreasonably small.

At the time of each of the transfers, the Incarcerated Defendants intended to incur, or believed that they would incur, debts that would be beyond their ability to pay as such debts matured.

Therefore, these transfers constitute fraudulent transfers avoidable by Plaintiff.

To the extent an initial transferee of any of the above-listed transfers or conveyances subsequently transferred such interests to an immediate or mediate transferee(s), as alleged with regard to various transfers discussed herein, such transfers are recoverable from such subsequent transferee(s).

The scheme regarding these transfers of the Properties were performed in an outrageous fashion by the Dawara Conspiracy Group.

### C.  Key Evidence from Trial

The evidence presented in this case demonstrates that when faced with overwhelming financial obligations arising out of the arson fire they created, the Incarcerated Defendants with the assistance of their criminal defense counsel and the Non-Incarcerated Defendant family members transferred all their ten valuable parcels of real estate to family members.

 The evidence shows that there is no conceivable legitimate purpose for the transfers and that no defense has been established for any of these transfers.

The "purpose" of using a criminal's assets, doomed to collection from creditors and victims of the criminal's crimes, to secure the well-being of the criminal's family members instead of paying the criminal's debts, is not a legitimate purpose under the law, no matter the plight of the criminal's family members.

The testimony by the family members during trial that because they have lived in the Subject Properties and paid rent for a period of time, and because they have difficult personal financial situations, they should be allowed to get these properties without paying full consideration and keep them for free, is also not a legitimate "purpose" for the transfers.

Under the PUVTA, CSC is entitled to monetary recovery for seven of the parcels of real estate and equitable relief for three.

### a.  Judicial Admissions

A compilation of the judicial admissions of the defendants derived from their answers to the complaint and responses to requests for admission is set out in exhibit P8G, pp 435-446.   As a result, the following key facts are established, *Glick v. White Motor Company*, 458 F.2d 1287 (3rd Cir. 1972):

On February 18, 2018, Imad Dawara and Bahaa Dawara (the "Incarcerated Defendants") intentionally set fire to two buildings in Philadelphia, 239 Chestnut Street and 241-43 Chestnut, Street (the "Buildings"), causing a 4-alarm fire that decimated these buildings, threatened many lives and caused tens of millions of dollars in property damage (the "Fire"). The Incarcerated Defendants admitted setting the Fire and were convicted of conspiracy to commit arson and insurance fraud. Shortly after the Incarcerated Defendants' arrest on October 16, 2019, Plaintiff and its predecessors in interest sued the Incarcerated Defendants in the Philadelphia Case.

The transfers consist of ten (10) properties previously owned by the Incarcerated Defendants out of their names to joint ownership with relatives in November 2019 for $1 consideration, followed by further $1 transfers of least three of these properties to Incarcerated Defendants' siblings' names in or about April 2021.

### b. Affidavits Admitted into Evidence

Affidavits of David Ciurlino [Ex. P3 with attachments P3A-P3S], Steven Gelbart [Ex. P4 with attachments P4A-P4S], Robert Gassel [Ex. 3F/4G], Craig Schmitt [Ex. 3G/4H] and Richard Cohen [Ex. 3M/4N] were admitted into evidence. The affidavits were included in CSC's Rule 26(a)(3) disclosures. Knowing these affidavits would be offered by Plaintiff into evidence, the defendants failed to object to their introduction until introduced at trial. More important, once the affidavits were admitted, defendants chose not to call any of the affiants as witnesses for cross-examination, despite having ample time to request such opportunity due to the extended wait before the live trial in court in January 2022 and the trial deposition testimony of the Incarcerated Defendants in April 2022.

The Court admitted the affidavits with a reservation as to their evidentiary weight.

10

Arson victims David Ciurlino and Steven Gelbart set forth well-documented and uncontested factual basis for the nature and amount of claims assigned to CSC, including the ownership of damaged and destroyed properties by Messrs. Ciurlino and Gelbart, the amount of insurance proceeds they received, and calculations of how much their total losses were based on the experience of others who rebuilt similar condominium units in the same buildings, and the insurance company's estimate of how much it would cost to reconstruct the completely destroyed building shell at 239 Chestnut Street.

Arson victims Robert Gassel and Craig Schmitt set forth uncontested factual basis for the cost of repairing a damaged condominium unit in the 241-43 Chestnut Street Building [2].

Insurance adjustor Richard Cohen sets forth uncontested factual basis for the estimated cost of replacing the structure of the 239 Chestnut Street Building.

### c.   Selected Key Oral Testimony

The detailed trial and deposition testimony with pinpoint cites are set forth in CSC's proposed findings of fact that are being filed contemporaneously with this memorandum. Here we summarize a few key facts in support of CSC's case from some of the witnesses.

#### Andrew Mogilyansky

CSC's representative, Andrew Mogilyansky testified CSC is a Delaware entity. All members of CSC are Delaware corporations. [Mogilyansky TT Day 1 p. 37, l. 15 to p. 22]

Mr. Mogilyansky testified in detail about the unrecovered losses sustained by CSC's predecessors in interest as a result of the arson fire. No evidence has been submitted to refute or

---

[2] These arson victims did not assign their claims to CSC for purposes of prosecution in this Court, but provided their affidavits to support the pursuit of their fellow building neighbors' claims, as well as for purposes of Messrs. Ciurlino and Gelbart's submission of restitution claims in the criminal case. Messrs. Gassell and Schmitt have no pending litigation against any of the defendants in this case.

contest the Plaintiff's proof of damages. Mr. Mogilyansky summarized the damages sustained by CSC and its claim assignors in a chart that is compiled from written and documentary evidence submitted by CSC. The chart is in evidence as Exhibit P2 and provides total unreimbursed losses of $9,044,254.

Mr. Mogilyansky testified that he learned only on June 24, 2021, while the Incarcerated Defendants were claiming to have accepted responsibility for their arson and fraud and purported to express remorse and apologies to their victims (including in open court during the sentencing proceedings in the criminal case on June 22-24, 2021), behind the scenes they had conspired to further harm their victims by fraudulently transferring their last remaining assets to their siblings in a brazen attempt to thwart their victims' ability to recover civil damages in the Philadelphia Case. [Ex. P2, p. 79; Mogilyansky TT Day 1 p. 23, l. 18 to p. 28, l. 15][3]

Mr. Mogilyansky identified no fewer than the transfers of ten (10) properties previously owned by the Incarcerated Defendants out of their names to joint ownership with relatives in November-December 2019[4] for $1 consideration, followed by further $1 transfers of at least two of these properties to Incarcerated Defendants' siblings' names in or about April 2021. [Mogilyansky TT Day 1 p. 23, l. 18 to p. 28, l. 15]

Mr. Mogilyansky testified that, sensitive to the Government's restitution agreement with the Incarcerated Defendants, CSC seeks to equitably claw back only three of these fraudulent transfers. [Mogilyansky TT Day 1 p. 52, l. 15 to 24] Specifically, Plaintiff seeks to claw back the

---

[3] Non-Incarcerated Defendants' counsel Mr. Sobel requested during Mr. Mogilyansky's live testimony that he be provided with email confirmations evidencing payments to the Recorder of Deeds of Delaware County during the upcoming lunch break in the trial. Following the lunch break, Mr. Sobel did not revisit the issue of timing of Mr. Mogilyansky's discovery of the deeds being June 24, 2021.

[4] Incarcerated Defendants were arrested on October 14, 2019.

transfers of three Subject Properties valued at approximately $813,600 which the Incarcerated Defendants do not have to sell under their restitution agreement with the government in their criminal case: 19 Ridgeway, 407 Seminole and 305 Seminole. [Mogilyansky TT Day 1 p. 52, l. 15 to 24]

He testified that CSC also seeks a judgment against all defendants for the value of the properties that are subject to the restitution agreement but does not seek to avoid the transfer since these properties have either already been sold, or are in the process of being sold, to third parties, for the eventual benefit of all victims in proportion to their restitution claims in the criminal case. [Mogilyansky TT Day 1 p. 71, l. 7 to 22, p. 72, l. 19 to p. 74, l. 21, p. 123, l. 6-13] He testified that CSC asks the Court to avoid the transfers or obligations to the extent necessary to satisfy CSC's claim. Ex. [Mogilyansky TT Day 1 p. 71, l. 7 to 22, p. 72, l. 19 to p. 74, l. 21]

### Hitham Albarouki

Mr. Albarouki testified all the defendants sought to protect the ten properties of the Incarcerated Defendants from CSC. Mr. Albarouki testified about protecting the "family" interests several times. [Albarouki TT p. 53, 55, 57, 58] The Incarcerated Defendants' attorneys guided and aided Mr. Albarouki and his wife in transferring the properties by providing powers of attorney. [Albarouki TT p. 62, l. 2 6to p. 63, 1. 23, 65, l. 1-19] 69.    The attorneys engaged to prepare the transfers and powers of attorney were paid for by the "family". [Albarouki TT Day 1 p. 65, l. 1-19]

Although seven properties originally owned by the Incarcerated Defendants had been transferred in part to other family members, those were later dedicated to satisfying the one-million-dollar restitution obligation of the Incarcerated Defendants. [Albarouki TT p. 55, l.4-12]. The other three properties were transferred to family members not to avoid the restitution from

13

which they were effectively exempt, but to avoid the creditors of the Incarcerated Defendants –
CSC and Messrs. Ciurlino and Gelbart – who had just prior to these transfers filed their motion for
summary judgment in the Philadelphia Case. [Albarouki TT p. 55, l.4-12].

He also testified that he intentionally co-mingled the Incarcerated Defendants assets with
those of the other Defendants including proceeds of rents from the real estate. [Albarouki TT p.
45, l. 23 to p. 47, l. 1, p. 58].

Mr. Albarouki testified that although the exercise of the purchase option in the purported
lease purchase agreements required written notice, no written notice was ever provided. [Albarouki
TT p. 48, l. 3-13] He also testified that no sum was paid under the purchase option – the only
payments made were rental installments made under the lease portion of the agreement. [Albarouki
TT p. 49, l. 3-15]

### Imad Dawara

Imad Dawara testified that on February 18, 2018, his only significant assets were six of the
ten properties which are subject of this litigation. [Imad Dawara DT, p. 17, l. 16-24] He and his
brother also owned a nightclub on Delaware Avenue, "B-Side," where they directed two other
individuals to use their names as the listed owners of the club and the liquor license that they need
to operate the club. [Imad Dawara DT, p. 13, l. 3 1. 10, p. 15, l. 5-13, p. 21 l. 6- l. 20, p. 92 l. 9 to
l. 24] Upon the Incarcerated Defendants' arrest, the club was taken back by the landlord because
of unpaid rent. [Imad Dawara DT, p. 13, l. 20-23] Since the arrest, the Incarcerated Defendants no
longer owned the club. [Imad Dawara DT, p. 14, l. 2-4]. The club's assets as of October 2019
included only some furniture and restaurant equipment. [Imad Dawara DT, p. 94, l. 4-7] There was
also a liquor license the cost of which Imad Dawara did not remember and the value of which he
did not know. [Imad Dawara DT, p. 95, l. 2-9]. The club owed money to food distributors. [Imad

Dawara DT, p. 95, l. 10-15] Imad Dawara also "did not remember" if there were any tax liabilities, lawsuits, unpaid wages, claims of employees against the business, and even what happened to the liquor license, except that it was neither sold to anyone nor any longer owned by the Incarcerated Defendants. [Imad Dawara DT, p. 95-97]. In all, Imad Dawara "did not remember" over 125 times during the 2-3 hour trial deposition.

Imad Dawara also bluntly refused to answer Plaintiff's counsel's questions multiple times, variously citing lack of comfort and "no reason" even though his counsel did not object to the question in most such situations. He did not invoke the Fifth Amendment in any of these instances.

### Bahaa Dawara

Bahaa Dawara testified that the facts set out in the Government's Indictment, [Ex. P5B, pp. 193-202], are true. [Bahaa Dawara DP, p. 7, l. 8-16] He testified that on February 18, 2018, his only significant assets were four of the ten properties which are subject of this litigation.

He testified that he and his brother's business entities included a nightclub on Delaware Avenue, "B-Side," where they directed two other individuals to use their names as the listed owners of the club and the liquor license that they need to operate the club. [Bahaa Dawara DT, p. 9, l. 24 to p. 10, l. 23, p. 11, l. 3-23, p. 16, l. 12-18].

Bahaa Dawara, like his brother, refused to answer some of Plaintiff's counsel's questions.

### D.  Legal Argument

The detailed legal support and arguments in support of CSC's case are set forth in CSC's proposed conclusions of law that are being filed contemporaneously with this memorandum. Here we summarize a few key legal points in support of CSC's case.

CSC brings this action under the Pennsylvania Uniform Voidable Transfer Act (the PUVTA[5]), 12 P.S. § 5101, et seq. The claims are based, alternatively, on the actual fraud provision of the Act, 12 P.S. § 5104(a)(1), and the constructive fraud provision, § 5104 (a)(2). CSC bears the burden of proof on this claim and may meet that burden by a preponderance of the evidence. *Id.* § 5104(c).

### a.  Actual Fraud

The claim that the transfers constitute actual fraud on the part of the Incarcerated Defendants is based on the provisions set forth in § 5104 of the Act which states, in pertinent part:

> *(a)*     *General rule.-- A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:*
>
> *(1)*     *with actual intent to hinder, delay or defraud any creditor of the debtor; 12 P.S. § 5104(a)(1).*

Because there is no dispute over whether the transfers were made, the Court proceeds directly to the evidence bearing on the state of mind of the Incarcerated Defendants. Since "individuals are rarely willing to admit intent, actual fraud is rarely proven by direct evidence." *In re Pennsylvania Gear Corp.*, 2008 WL 2370169, at *9 (Bankr.E.D.Pa. April 22, 2008).

In this case, the clear import of the testimony of Mr. Albarouki, who acted at the center of the non-incarcerated part of the "family", establishes actual intent of the entire family of defendants. He and his wife acted with powers of attorney to protect the three properties carved

---

[5] The statute was amended in 2017 to change the title from the Pennsylvania Uniform Fraudulent Transfer Act to the Pennsylvania Uniform Voidable Transfer Act. The substance of the statute did not change.

out from the sale requirement of the Restitution Agreement from falling into the hands of the Incarcerated Defendants' creditors. This is where all of the Non-Incarcerated Defendants resided. As agent for the Incarcerated Defendants, the testimony and acts of Mr. Albarouki and his wife establish the actual intent of the Incarcerated Defendants to prevent the real estate from being an asset from which CSC may recover its losses and claims.

Besides this proof of actual intent, there are factors, commonly referred to as "badges of fraud," which courts consider in determining whether fraud has been proven by circumstantial evidence. *Holber v. Dolchin Slotkin & Todd, P.C.* (*In re American Rehab & Physical Therapy, Inc.*), 2006 WL 1997431, at *15 (Bankr.E.D.Pa. May 18, 2006).

The PUVTA provides a non-exhaustive list of such factors for use in determining whether "actual intent" exists (badges of fraud). In determining actual intent under subsection (a)(1), consideration may be given, among other factors, to whether:

(1)     *the transfer or obligation was to an insider;*

(2)     *the debtor retained possession or control of the property transferred after the transfer;*

(3)     *the transfer or obligation was disclosed or concealed;*

(4)     *before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;*

(5)     *the transfer was of substantially all the debtor's assets;*

(6)     *the debtor absconded;*

(7)     *the debtor removed or concealed assets;*

(8)     *the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;*

(9)     *the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;*

17

      *(10)    the transfer occurred shortly before or shortly after a substantial debt was incurred; and*

      *(11)    the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. 12 P.S. § 5104(b).*

"'Although the presence of a single . . . badge of fraud may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud.' *In re AgFeed USA, LLC*, 546 B.R. 318, 337 (Bankr. D. Del. 2016)."

The evidence in this case establishes two direct indications of fraudulent intent (1) that the Incarcerated Defendants retained control of the property even after having transferred it and (2) that some of the transfers were concealed by intentionally misspelling the names of the transferees to make tracing the transfers in public records more difficult.

Two additional badges of fraud exist in the evidence of record under the implicit suggestion of fraudulent intent category: (3) that the transfer was to an insider, and (4) that in exchange for what was transferred, reasonably equivalent value was not paid.

Four additional badges of fraud are established by the evidence that focuses on the probative value based on the circumstances: (5) the transfers are each tied tightly in time to key events that heightened the awareness of the Incarcerated Defendants that their assets were in jeopardy of attachment for a civil judgment, (6) the transfers, done in stages for three properties, left the Incarcerated Defendants with unreasonably small assets to sustain them, (7) the Incarcerated Defendants' financial condition when they made the transfers and the effect that the transfers had on their financial situation, and (8) the timing of the transfers relative to the Incarcerated Defendants awareness that they had been caught and faced substantial liability.

The evidence of actual intent is overwhelming in that a full nine of eleven badges of fraud are established in this case in addition to Mr. Albarouki's affirmative statement of intent.

18

### b. Constructive Fraud

Alternatively, CSC seeks to avoid and recover the transfers of the Incarcerated Defendants' real estate as instances of constructive fraud. In that regard, the PUVTA provides:

> (a)    *General rule.-- A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:*
>
> ...
>
> (2)    *without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:*
>
> > (i)    *was engaged or about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or*
> >
> > (ii)    *intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due. 12 P.S. § 5104(a)(2).*

The Third Circuit has set forth a two-pronged analysis for determining if a transferee furnished reasonably equivalent value: first, the transferee must have given some "value;" and second, if value was given, it must be reasonably equivalent to what the debtor gave up. *See In re R.M.L., Inc.*, 92 F.3d 139, 149 (3d Cir. 1996).

Despite their judicial admission that the transfers were each for one dollar, the Non-Incarcerated Defendants maintain that value has been furnished for three of the properties by installment payments paid to the Incarcerated Defendants over a period of time (which

19

also constituted below-market rent for the properties, and even in total would amount to much less than the market value of the properties). Even assuming this is true, what matters is the timing of exchange of that purported value. Reasonably equivalent value must be exchanged at the same time that the Incarcerated Defendants transferred the property. *See*, *Klein v. Weidner*, 2010 WL 27910 (E.D.Pa. Jan. 6, 2010) *aff'd.* 729 F.3d 280 (3d Cir. 2013). The evidence is overwhelming that the exchanges here were not supported by reasonably equivalent value exchanged at the same time.

The record also establishes that the transaction had a detrimental financial effect on the Incarcerated Defendants. 12 P.S. § 5104(c). CSC has carried its burden of proof in two ways: the transfers left the Incarcerated Defendants with unreasonably small assets as compared to what was transferred (§ 5104(a)(2)(i)), or the Incarcerated Defendants intentionally incurred, or should have believed that they would incur, debts beyond their ability to pay (§ 5104(a)(2)(ii)).

### c.   Remedies

CSC seeks relief as to ten properties that were transferred by the Incarcerated Defendants to family member Defendants as fraudulent transfers. 12 PA. CONST. STAT. § 5104(a)(l) ("PUVTA").

### Claw Back and Transfer to Plaintiff (3 Properties)

First, Plaintiff seeks to specifically claw back the transfers of three properties ("Subject Properties") valued at approximately $813,600 which the Incarcerated Defendants do not have to sell under their restitution agreement with the government in their criminal case. The lead remedy in PUVTA is avoidance of the transfer accompanied by other remedies that are designed to recover the asset by attachment or appointment of a receiver to "take charge" of the asset. 12 Pa. C.S.

§5109. CSC is entitled to equitable relief to make it whole for the fraudulent transfers it found including compelling the transfer of title to these three properties from the transferees to CSC subject to any existing mortgage liens. that existed at the time of the transfer (and still exist). The transfers to these three properties are voided as necessary to satisfy the Plaintiff's claim. These three entire transactions are set aside so that the transferred property is transferred to the ownership of CSC subject to existing mortgage liens.

### Money Judgment (7 Properties)

Second, as to the other seven properties, a money judgment under the PUVTA derives from a simple but hard calculation, being the value of the asset at the time it was transferred, adjusted by any equities. The creditor, Plaintiff CSC, obtained a judgment on its claim against the debtor Incarcerated Defendants in the Court of Common Pleas. The value of its losses exceeds $9 million.

The unrefuted total value of the seven properties ($1,983,400) is far less than the sums owed to CSC even after crediting the value of the three properties transferred by the clawback award. Therefore, CSC should be awarded joint and several money judgments against all defendants for the full extent of the value of the other seven properties transferred by the Incarcerated Defendants ($1,983,400).

### Punitive Damages

Under the PUVTA (akin to its predecessor PUFTA) the Court may award a creditor "any other relief the circumstances may require." Creditors may be awarded damages in the amount of the underlying judgment – and a multiple of that sum in punitive damages and reimbursement of attorney fees and litigation costs. For example, one court awarded nearly six times the underlying judgment in combined punitive damages and attorney's fees. *Renbolt v. Kern*, 2013 Ohio 1359, 2013 WL 1390607 (April 5, 2013). In another case, the third-party transferee was obligated to

reimburse the creditor for conspiracy damages including interest on the judgment, punitive damages – and more than a decade's worth of litigation bills. *Kekona v. Bornemann*, 305 P.3d 474 (Haw.App., May 31, 2013). The Third Circuit Court of Appeals predicted that the Pennsylvania Supreme Court would allow a creditor to recover punitive damages for violations of the Pennsylvania Uniform Fraudulent Transfer Act (PUFTA). *Klein v. Weidner*, 729 F.3d 280 (3d Cir. 2013).

### d. Defenses

#### i. Restitution is not a defense

Defendants seem to believe that because seven of the ten transfers were of properties that were ultimately sold or will be sold to partially satisfy the obligations of the Incarcerated Defendants under a restitution agreement with the government, and in exchange for this the *government* agreed not to lay on the Subject Properties, that the transfers of the three Subject Properties from the Incarcerated Defendants to the Non-Incarcerated Defendants are somehow insulated from avoidance. They cite no authority for their position, and none exists.

Defendants also seem to believe that because the Incarcerated Defendants were ordered to pay $22 million in restitution to the arson victims, which still does not cover all victims' losses, the victims can are no longer entitled to recover in a civil case. No authority for this exists, and in fact the law is clear in the opposite: civil judgments are often awarded to victims in parallel to criminal proceedings and restitution awarded. Indeed, the Incarcerated Defendants have expressly admitted liability in the Philadelphia case notwithstanding their restitution obligations[6].

---

[6] While the amount of the judgment in the Philadelphia Case is still being finalized, the Incarcerated Defendants have asked the Philadelphia Court to award CSC a judgment "equal the amount of restitution ordered to be paid to Plaintiffs by Chief United States District Judge for the Eastern District of Pennsylvania, Juan R. Sánchez in Case No. 2:19-cr-

### ii. The Lease Purchase Agreements Did Not Reflect Reasonably Equivalent Value

Despite their judicial admission that the transfers were each for one dollar, the Non-Incarcerated Defendants maintain that value has been furnished by installment payments paid to the Incarcerated Defendants over a period of time. As such, they explain that they provided value for the property over a period of time. The evidence submitted on this point is unreliable. The terms of the lease purchase agreements, the amount of money paid, and the rental values of the properties compared to the amounts paid monthly all suggest that Imad Dawara entered into below market leases with his sisters and that reasonable value for purchase has not been provided.

Assuming that the defendants were able to convince the court that the terms of the lease purchase agreements were somehow fulfilled by the tenants such that a full rental *and purchase* values of the Seminole Street properties were conferred to the Incarcerated Defendants under the 30-year lease agreements by the tenants merely paying rent for five years, even this fulfillment would still not amount to a defense. What matters for purposes of the defense is the timing of exchange of that purported value. Reasonably equivalent value must be exchanged <u>at the same time that the Incarcerated Defendants transferred the property</u>. *See, Klein v. Weidner*, 2010 WL 27910 (E.D.Pa. Jan. 6, 2010) aff'd.729 F.3d 280 (3d Cir. 2013). The evidence is unrefuted because, undisputedly, nothing was paid at the time of these transfers.

---

00414-JS." This amount is approximately $4.75 million. CSC is asking the Philadelphia Court to award the entire $9+ million in losses plus punitive damages. Under either scenario or anywhere in between, the Philadelphia Case judgment will dwarf the value of all of Incarcerated Defendants assets at the time of their arrest, and at the time of any of the transfers.

### E.  List Of Every Item of Damages Claimed

CSC has laid out in detail in its proposed findings of fact and conclusions of law a detailed explanation for every item of damages claimed. The list is as follows:

1. The underlying debt owed to CSC by the Incarcerated Defendants for the loss resulting from the arson fire totals in excess of $9,000,000. This is the core principal sum owed to CSC by the Incarcerated Defendants.

2. Compensatory damages representing the transfer/forfeiture of 7 properties totaling their unrefuted value of $1,983,400. This sum is sought from the Non-Incarcerated Defendants under the PUVTA.

3. Equitable relief transferring the 3 non-forfeited properties with a value of $813,600, with a corresponding credit to the Incarcerated Defendants' liability to CSC for the same amount, less the value of outstanding tax assessments and mortgage balances. This equitable relief is sought from the respective title-holding defendants under the PUVTA, with all other defendants (including the power-of-attorney holding Hitham Albarouki and Faten Dawara) being ordered to cooperate in the execution of applicable deeds, and to vacate the properties unless they negotiate leases on terms acceptable to CSC.

4. Punitive damages against all defendants for their roles in these fraudulent transfers.

5. Pre-judgment interest on the compensatory damages awarded against the Non-Incarcerated Defendants at the Pennsylvania statutory rate starting from November 14, 2019 (the date on or before which deeds for the ten properties were executed).

6. Post-judgment interest on any unpaid balance of the judgment at the Pennsylvania statutory rate from the date of the order.

**F.  Schedule Of Plaintiff CSC's Exhibits in Evidence**

| PLAINTIFF'S EXHIBIT NO. | EXHIBIT DESCRIPTION |
|---|---|
| **(GROUP) 1** | **Documents from Philadelphia CCP Case** |
| 1A | Complaint by CSC and its Co-Plaintiffs against the Arsonist Defendants filed in the Philadelphia CCP Case |
| 1B | Arsonist Defendants' verified Answer and New Matter filed in the Philadelphia CCP Case |
| 1C | Court Judgment entered July 12, 2021 |
| 1D | CSC and its Co-Plaintiffs' stipulation to enter the entirety of the Judgment in favor of CSC |
| 2 | Compilation Summary of Losses Chart |
| **(GROUP) 3** | **Sworn Claim Affidavit of David Ciurlino and Fresher Start Inc. with all attachments.** |
| 3A | Condominium Documents 239 |
| 3B | Condominium Documents 241 |
| 3C | Insurance 239 Building |
| 3D | Insurance 241 Building |
| 3E | Insurance Unit C |
| 3F | Declaration of Robert Gassel |
| 3G | Declaration of Craig Schmitt |
| 3H | Pictures of Unit C |
| 3I | Demolition Settlement Agreement |
| 3J | Statement of Loss |
| 3K | Declaration of Steven Gelbart |
| 3L | Declaration of Andrew Mogilyansky |

| 3M | Declaration of Richard Cohen |
|---|---|
| 3N | Insurance 239 Building |
| 3O | Statement of Loss 239 Building |
| 3P | Checks Totaling $1,681,000 |
| 3Q | Demolition Agreement |
| 3S | Check $25,000 |
| (GROUP) 4 | Sworn Claim Affidavit of Steven Gelbart with all attachments. |
| 4A | Condominium Documents 239 |
| 4B | Condominium Documents 241 |
| 4C | Insurance 239 Building |
| 4D | Insurance 241 Building |
| 4E | Insurance Unit G |
| 4F | Insurance Claim Payments |
| 4G | Declaration of Robert Gassel |
| 4H | Declaration of Craig Schmitt |
| 4I | Pictures of Unit G |
| 4J | Statement of Loss |
| 4K | Declaration of Steven Gelbart |
| 4L | Easement Agreement New Deck |
| 4M | Deck Value Assessment |
| 4N | Declaration of Richard Cohen |
| 4O | Insurance 239 Building |
| 4P | Statement of Loss 239 Building |
| 4Q | Checks Totaling $1,681,000 |
| 4R | Demolition Agreement |
| 4S | Check $25,000 |
| (GROUP) 5 | Documents from USDC Criminal Case |
| 5A | Criminal docket in case USA v. Imad and Bahaa Dawara |

| 5B | Indictment in case USA v. Imad and Bahaa Dawara |
|----|---|
| **5C** | Plea Document as to Imad Dawara |
| **5D** | Plea Document as to Bahaa Dawara |
| **5E1** | Restitution Agreement |
| **5E2** | Restitution Order |
| **5F** | Imad Sentencing Memo |
| **5G** | Bahaa Change of Plea Memo |
| **5H** | Imad Criminal Judgment |
| **5I** | Bahaa Criminal Judgment |
| **5J** | Order Judge Sanchez 1/13/2020 |
| **(GROUP) 6** | **Deeds transferring title to real estate attached to the Complaint:** |
| **6A** | 2019-11-14 deed 19 Ridgeway Ave, Norwood PA |
| **6B** | 2019-11-11 deed 305 Seminole Street, Lester, PA |
| **6C** | 2021-03-25 deed 305 Seminole Street, Lester, PA |
| **6D** | 2019-11-11 deed 407 Seminole Street, Lester, PA |
| **6E** | 2019-11-11 corrected deed 407 Seminole Street, Lester, PA |
| **6F** | 2021-03-25 deed 407 Seminole Street, Lester, PA |
| **6G** | 2019-11-18 deed 1524 McKean Street, Philadelphia, PA |
| **6H** | 2019-11-14 deed 321 Massasoit Street, Lester, PA |
| **6I** | 2019-11-11 deed 224 Erickson Street, Essington, PA |
| **6J** | 2019-11-11 deed 312 Fern Street, Darby, PA |
| **6K** | 2019-11-14 deed 134 Garfield Ave., Woodlyn, PA |
| **6L** | 2019-11-11 deed 142 Garfield Ave., Woodlyn, PA |
| **6M** | 2019-11-11 deed 1007 Milmont Avenue, Swarthmore, PA |
| **6N** | 2020-03-02 deed 132 South Scott Avenue, Glenolden, PA |
| 7 | Compilation Chart extracting data from deeds transferring title to real estate with publicly available data including parcel / tax id numbers and values determined by Zillow |
| **(GROUP) 8** | **Documents filed in this case** |

| 8A | Plaintiff's Complaint with Exhibits |
|---|---|
| 8B | Order and decision regarding jurisdiction |
| 8C | Proposed Answer of Defendants Fatan Dawara, Maisaa Dawara, Mirvat Dawara, Abeer Naim, Hitham Albarouki ("Dawara Conspiracy Group") (5) |
| 8D | Answer of Defendants Imad Dawara and Bahaa Dawara (the "Incarcerated Defendants") (2) |
| 8E | Defendants' Dawara Conspiracy Group (5) Discovery Responses |
| 8F | Defendants' Incarcerated Defendants (2) Discovery Responses |
| 8G | Stipulated facts extracted from Answers to the Complaint, Requests for Admission and Pre-Trial Submissions (Judicial Admissions) |
| **(GROUP) 9** | **Assignments of Rights to CSC** |
| 9A | 2018-12-31 FSC to CSC per 241-B AOS – Units 239-COMM, 239-RU1, 239-RU2, 241-B |
| 9B | 2018-12-31 FSC to CSC per 241-B AOS – Units 239-COMM, 241-B |
| 9C | 2019-01-09 DC to AM per 241-C AOS – Unit 241-C |
| 9D | 2020-01-01 SG, LSS, AM to CSC per CSC OA – Omnibus |
| 9E | 2021-08-17 DC, SG, FSC to CSC in Philadelphia CCP – Omnibus |
| **(GROUP) 10** | **HUD Fair Market Reports** |
| 10A | HUD FMR Report Delaware county PA 2015 |
| 10B | HUD FMR Report Delaware county PA 2016 |
| 10C | HUD FMR Report Delaware county PA 2017 |
| 10D | HUD FMR Report Delaware county PA 2018 |
| 10E | HUD FMR Report Delaware county PA 2019 |
| 10F | HUD FMR Report Delaware county PA 2020 |
| 10G | HUD FMR Report Delaware county PA 2021 |
| 10H | HUD FMR Report Delaware county PA 2022 |
| 10I | HUD FMR Report Delaware county PA Location Setup |
| 10J | HUD FMR Report Delaware county PA Year Setup |
| 10K | HUD FMR Overview |

| 11 | Withdrawn |
| 12 | Graphical Representation of Familial Relationships, Asset Ownership and Asset Transfer Chronology |

### G. Conclusion

Since the fire, the Incarcerated Defendants have been indebted to CSC in excess of $9,000,000. They audaciously transferred ten properties worth several million dollars to their families in step-by-step fashion as their liability became more and more certain in an attempt to place the value of their properties out of the reach of their civil tort judgment creditor. The PUVTA was designed "to protect creditors from debtors who might try to shelter assets by sham transactions, thereby depriving the creditor of his ability to collect from the debtor." *Bell v. Wyatt*, Civ. A. No. 03-3225, 2005 WL 1522015, at *1 (Pa. Com. Pl. 2005), *aff'd*, 903 A.2d 39 (Pa. Super. 2006). The PUVTA permits the Court to void ***actual*** fraudulent transfers – i.e., a transfer of assets made "with actual intent to hinder, delay or defraud any creditor from inferences derived from all facts and circumstances surrounding the conveyances and a consideration of "badges of fraud". In this case, besides the strong inference that must be drawn from Mr. Albarouki's testimony about "the family" trying to protect these assets, no less that nine of eleven badges of fraud have been established.

Alternatively, under PUVTA, transfers are ***constructively*** fraudulent when made "without receiving a reasonably equivalent value in exchange for the transfer or obligation" and the debtor was then left in a position where he knew he would not be able to pay existing or future obligations as they came due. Whether the purported lease purchase agreements are valid or enforceable as the defendants believe or wish them to be, in any event, they do not constitute reasonably equivalent value for the transfers made here. Moreover, the Non-Incarcerated Defendants cannot

and have not established that they are "good faith" transferees – an affirmative defense for which they bear the burden of proof under the PUVTA.

Judgment must be awarded in favor of CSC for all the damages and relief sought.

Dated: June 6, 2022          GELLERT SCALI BUSENKELL & BROWN LLC

By:      /s/ Gary F. Seitz
Gary F. Seitz
8 Penn Center
1628 JFK Blvd, Suite 1901
Philadelphia, PA 19103
Counsel for the Plaintiff
Chestnut Street Consolidated, LLC

## <u>CERTIFICATE OF SERVICE</u>

I, Gary F. Seitz, hereby certify that on June 6, 2022, I caused a true and correct copy of the foregoing **Post-Trial Memorandum of CSC** to be served on all parties of record by email and ECF transmission.

/s/ Gary F. Seitz_____
Gary F. Seitz

31