IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHESTNUT STREET CONSOLIDATED, LLC, :   CIVIL ACTION
:   NO. 21-03046
       Plaintiff,   :
:
   v.   :
:
BAHAA DAWARA, et al.,   :
:
       Defendants.   :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.            August 3, 2022

## I.    INTRODUCTION

Plaintiff Chestnut Street Consolidated, LLC ("Plaintiff" or "CSC") brought this case under the Pennsylvania Uniform Voidable Transactions Act ("PUVTA") in an effort to thwart an alleged fraudulent transfer of assets against Bahaa Dawara and Imad Dawara (the "Incarcerated Defendants"), as well as their relatives, Faten Dawara (a/k/a/ Fatan Dawara), Maisaa Dawara, Mirvat Dawara, Abeer Naim, and Haitham Albarouki (a/k/a Hitham Albarouki) (the "Non-incarcerated Defendants") (collectively, "Defendants").[1]

---

[1]   Plaintiff brought this action on July 8, 2021. On September 8, 2021, Plaintiff requested an entry of default be filed against the Non-Incarcerated Defendants. The Non-Incarcerated Defendants did not retain counsel until October 7, 2021. On or around September 7, 2021, the Clerk of Court entered a default against the Non-Incarcerated Defendants. On October 7, 2021, counsel for the Non-Incarcerated Defendants entered an

Faten Dawara, Maisaa Dawara, and Mirvat Dawara are the sisters of the Incarcerated Defendants. Abeer Naim is the wife of Imad Dawara. Haitham Albarouki is the husband of Faten Dawara and the brother-in-law of the Incarcerated Defendants.[2]

Plaintiff brings two counts under the PUVTA, 12 Pa. Stat. §§ 5101-5114, alleging that the Incarcerated Defendants fraudulently transferred ten properties to the Non-Incarcerated Defendants (Count I), and that the Incarcerated Defendants fraudulently transferred other unidentified assets to the Non-

---

appearance, and on October 17, 2021, the Non-Incarcerated Defendants filed a motion to set aside the entry of default. The Court took the motion under advisement. See Ord., ECF No. 61.

Pursuant to Federal Rule of Civil Procedure 55(c), an entry of default may be set aside for good cause. Fed. R. Civ. P. 55(c). There is generally "a distinction between a default standing alone and a default judgment." Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 656 (1982). "Less substantial grounds may be adequate for setting aside a default than would be required opening a judgment." Id. "District courts have discretion in evaluating whether good cause exists to set aside an entry of default." Handel v. Postmaster Gen., U.S. Postal Serv., 806 F. App'x 95, 100 (3d Cir. 2020); see id. at 99-100 (explaining that "[a]n entry of default, however, is not necessarily everlasting" because "[a]s an operation performed by the Clerk of Courts, and not a judge, entry of default requires only a showing of good cause to be set aside.").

As the Non-Incarcerated Defendants have actively participated in this litigation since their counsel entered an appearance, there is good cause to set aside the entry of default. The motion to set aside default will be granted, and the Court will consider the Non-Incarcerated Defendants' substantive arguments herein.

[2]    Plaintiff has also brought this suit against several John Doe entities. These defendants were not pursued by Plaintiff in this case.

Incarcerated Defendants (Count II). Plaintiff additionally requests an imposition of an accounting against all Defendants (Count III), an imposition of a constructive trust against all Defendants (Count IV), and injunctive relief against all Defendants (Count V).

Plaintiff requests that the Court find Defendants violated the PUVTA with respect to ten properties that are identified herein. Plaintiff also requests that the Court void transfers with respect to three of the ten properties and that the Court award a money judgment under the PUVTA with respect to the remaining seven properties.

The Court held a bench trial at which all parties were heard. This memorandum constitutes the Court's findings of fact and conclusions of law. For the following reasons, the Court will enter judgment in favor of Plaintiff on Count I because the Incarcerated Defendants fraudulently transferred certain properties in violation of the PUVTA. The Court will enjoin the Incarcerated Defendants from further transferring their interests in certain properties. Because Plaintiff has provided no arguments or evidence that would allow the Court to enter judgment in favor of Plaintiff on Counts II, III, IV, and V, these counts will be dismissed.[3]

---

[3]    Count V requests that the Court enter a permanent injunction against Defendants. Because this is a request for

## II.  FINDINGS OF FACT

### A. The Arson

The Incarcerated Defendants previously owned and operated a business known as RCL Management. To operate the business, the Incarcerated Defendants leased property located at 239 Chestnut Street, Philadelphia, Pennsylvania 19106. See Imad Dawara Dep. 19:10-11, 23-24, ECF No. 136; Pl. Ex. 5B at ¶ 7, ECF No. 117 at 198. Several months prior to February 2018, the Incarcerated Defendants stopped operating RCL Management. See Imad Dawara Dep. 20:3-5. On February 18, 2018, in an effort to obtain insurance proceeds, the Incarcerated Defendants intentionally set fire to the buildings located at 239 Chestnut Street, where they had operated the business, and the neighboring property at 241-43 Chestnut Street causing millions of dollars in property damages.

Plaintiff is the owner of the claims against the Incarcerated Defendants by purchase and assignment from the individual owners of condominium units affected by the fire. See, e.g., Trial Tr. 8:23-25; 9:1-14, ECF No. 94. Plaintiff's claims relate to all but one unit at 239 Chestnut Street and

---

relief rather than a claim, and because a permanent injunction will be entered as part of the relief requested under Count I, Count V will be dismissed.

three out of the eight units located at 241-43 Chestnut Street. The units at issue are either uninsured or underinsured.

## B. The Incarcerated Defendants' Conviction and the Restitution Agreement

On July 18, 2019, a grand jury returned an indictment charging the Incarcerated Defendants with one count of conspiracy to commit arson in violation of 18 U.S.C. § 844(n), one count of conspiracy to use fire to commit a federal felony in violation of 18 U.S.C. § 844(m), one count of malicious damage by means of fire of a building used in interstate commerce in violation of 18 U.S.C. 844(i), four counts of wire fraud in violation of 18 U.S.C. § 1343, two counts of mail fraud in violation of 18 U.S.C. § 1341, and one count of use of fire to commit a federal felony in violation of 18 U.S.C. 844(h). See Pl. Tr. Ex. 5B, ECF No. 117 at 197; United States v. Dawara, No. 19-414 (E.D. Pa.).

On October 17, 2019, an arrest warrant was executed against the Incarcerated Defendants. In October 2020, the Incarcerated Defendants entered into a plea agreement with the United States Attorneys' office, and on February 25, 2021, the Incarcerated Defendants pled guilty before the Honorable Juan R. Sánchez of the Eastern District of Pennsylvania to the arson conspiracy as well as the related crimes of fraud.

On October 27, 2020, the Incarcerated Defendants
memorialized a restitution agreement with the Government (the
"Restitution Agreement"). The Restitution Agreement provided
that the Incarcerated Defendants would pay restitution to the
victims of the arson in an amount not less than $22,000,00.00.[4]
In June 2022, the Incarcerated Defendants were each sentenced to
a term of 108 months' imprisonment. On June 28, 2021, the
Incarcerated Defendants were ordered to pay restitution in the
amount of $22,000,000.00. See Pl. Ex. 5E2.

Pursuant to the Restitution Agreement, the Incarcerated
Defendants agreed to liquidate seven properties which they owned
and remit the proceeds from the sale of the properties to the
Government. See Pl. Ex. P5E1, ECF No. 117 at 250-254. The seven
properties are located at:

1. 134 Garfield Avenue, Woodlyn, Pennsylvania 19094;

2. 140-142 Garfield Avenue, Woodlyn, Pennsylvania 19094;

3. 312 Fern Street, Darby, Pennsylvania 19023;

4. 1524 McKean Street, Philadelphia, Pennsylvania 19145;

5. 321 Massasoit Street, Essington, Pennsylvania 19029;

---

[4]     Imad Dawara was also responsible for harm sustained in
another case in the amount of $199,808.00 and Bahaa Dawara was
responsible for restitution in the amount of $209,727.00 in
connection with a related case. United States v. Dawara, No. 20-
104 (E.D. Pa.). Imad Dawara also agreed to pay $15,137.52 based
on material misstatements he made in which he unlawfully
received Medicaid benefits.

6. 224 Erickson Avenue, Essington, Pennsylvania 19029; and

7. 1007 Milmont Avenue, Swarthmore, Pennsylvania 19081.

The Restitution Agreement provides that the Incarcerated Defendants "shall sell these properties in a commercially reasonable manner, to a disinterested buyer, and at fair market value. The defendants also shall disclose to the government the terms of the proposed sale and provide copies of all documents relating to the sale." See Pl. Ex. P5E1 at ¶ 9e, ECF No. 117 at 252. The Incarcerated Defendants are also required "to remit the net proceeds of the sale, after payment of reasonable, ordinary costs of sale and commission, as partial payment for the restitution." Id. at ¶ 9(f), ECF No. 117 at 252. Pursuant to Restitution Agreement, the Incarcerated Defendants are required to remit an initial payment of $1,000,000.00 to the Clerk of Court. Id. at ¶ 9(a), (d) (f).

The Restitution Agreement provides that if the Incarcerated Defendants "remit all payments due under [the restitution] agreement within the time period prescribed [in the agreement], the government's right to collect restitution shall not extend to the" three remaining properties located at:

1. 19 Ridgeway Avenue Norwood, Pennsylvania, 19074;

2. 305 Seminole Street Essington, Pennsylvania, 19029; and

3. 407 Seminole Street Essington, Pennsylvania, 19029.

Id at ¶ 9(g). The Restitution Agreement also provides that "[i]n the event either defendant defaults with the payments set forth above [pursuant to the Restitution Agreement], the defendants understand and agree that the government reserves its right to initiate an action against [the remaining three] properties to collect restitution as provided under applicable federal and state law." See id. at ¶ 9(g).

The parties agree that five of the seven[5] properties subject to the Restitution Agreement have been sold, the proceeds of which have been remitted to the Government, and the value of the remaining unsold properties, when sold, will fulfill the $1,000,000.00 obligation. The parties also agree that the Incarcerated Defendants have thus far complied with the terms of the Restitution Agreement and the Government has not sought to collect from the remaining three properties. However, to the best of the Court's knowledge, because the initial $1,000,0000.00 restitution threshold has not yet been satisfied, the Government has not formally waived its rights with respect to the remaining three properties.

---

[5]   At the time Plaintiff filed its Complaint, only three properties had been sold. Public records reveal that two more properties that are subject to the Restitution Agreement have since been sold.

**C. The Related State Court Case**

On November 25, 2019, following the Incarcerated
Defendants' arrest, Plaintiff's predecessors in interest sued
the Incarcerated Defendants in the Philadelphia Court of Common
Pleas for trespass to chattels, alleging that the Incarcerated
Defendants intentionally destroyed Plaintiff's property. See
Fresher Start Inc. v. Dawara, No. 3370 (Ct. Comm. Pl.); Pl. Ex.
1A, ECF No. 117 at 5-80.[6] On July 9, 2021, after the Incarcerated
Defendants pled guilty in the federal criminal case, the
Honorable Nina W. Padilla of the Court of Common Pleas entered
judgment as to liability on Plaintiff's trespass to chattels
claim. See Pl. Ex. 1C, ECF No. 117 at 81-82. Plaintiff's
predecessors in interest have since assigned their rights to
Plaintiff in the state court action, such that CSC is now the
named plaintiff in state court.

On April 22, 2022, the Court of Common Pleas held a hearing
to determine the amount of damages Plaintiff is entitled to with
respect to the trespass to chattels claim. On July 1, 2022, the
Court of Common Pleas found that Plaintiff's damages amount to
$9,044,255.00. See Pl. Exs. P13, P1C, ECF Nos. 129-1, 129-2. The

---

[6]     In the state court action, Plaintiff also brought claims
for breach of the lease agreement, negligent destruction of
property, strict liability for ultra-hazardous activity, and
liability for civil conspiracy. See Pl. Ex. 1A, ECF No. 117 at
5-80.

Court of Common Pleas found that Plaintiff is entitled to this
amount less $470,000.00, which Plaintiff expects to receive
under the Restitution Agreement.[7] Id. Plaintiff's damages award
will be offset by any additional restitution received as well.
Id. Accordingly, pursuant to the judgment entered in the Court
of Common Pleas, Plaintiff is entitled to compensatory damages
in the amount of $8,574,255.00 against the Incarcerated
Defendants, jointly and severally, plus post-judgment interest
that shall accrue. Id. The Court of Common Pleas also awarded
punitive damages in the amount of $1,000,000.00 jointly and
severally. See id.[8]

### D. The Federal Court Case and the Temporary Restraining Order

On July 8, 2021, Plaintiff filed the present action in this
Court. Plaintiff alleges that the Incarcerated Defendants

---

[7]  The Court of Common Pleas did not specify how it determined
that Plaintiff is expected to receive $470,000.00 in
restitution.

[8]  At the bench trial, for support of the amount of damages
Plaintiff suffered, Plaintiff submitted the sworn affidavits of
David Ciurlino and Steven Gelbert. The affidavits also included
declarations of other individuals, including Robert Gassel and
Craig Schmitt. The affidavits and declarations offer evidence of
the damages Plaintiff suffered. See Pl. Exs. 3-4. The Court
accepted these affidavits as exhibits at trial, subject to the
qualification that they should be given little weight because
these individuals did not testify at the bench trial. Trial Tr.
7:5-7, ECF No. 94. Because the Court of Common Pleas has already
made a determination regarding the amount of damages suffered,
the Court need not determine the amount of loss suffered here or
otherwise consider these affidavits.

violated the PUVTA by fraudulently transferring assets in their names to their relatives, the Non-Incarcerated Defendants, to thwart Plaintiff's ability to recover the losses it sustained. Plaintiff alleges that the Incarcerated Defendants fraudulently transferred title to the seven properties that are subject to the Restitution Agreement to the Non-Incarcerated Defendants as well as the three properties that are not currently subject to the Restitution Agreement. Plaintiff requests that the Court void the transfers of the three properties not subject to the Restitution Agreement and order the Non-Incarcerated Defendants to return the titles to the three properties to the Incarcerated Defendants so Plaintiff may execute on the properties to satisfy the state court judgment. Because the remaining seven properties are subject to the Government's Restitution Agreement, and are therefore exempt from execution, Plaintiff requests a money judgment for the value of those seven properties as well as punitive damages.

On July 16, 2021, Plaintiff filed a motion for preliminary injunction in this Court to prevent Defendants from further transferring their interests in the properties at issue. On July 19, 2021, the Court entered a temporary restraining order with respect to the three properties not subject to the Restitution Agreement. With the consent of the parties, the Court extended the temporary restraining order during the pendency of this

litigation and it remains in effect. Pursuant to Federal Rule of
Civil Procedure 65(a)(2), and with the consent of the parties,
the Court advanced a bench trial on the merits of the case and
consolidated it with a final hearing on Plaintiff's request for
relief. See Fed. R. Civ. P. 65(a)(2).

**E. Incarcerated Defendants' Interests in the Properties**

On October 26, 2019, after his arrest, Imad Dawara granted
his brother-in-law, Haitham Albarouki, power of attorney. See
Def. Ex. D11, ECF No. 118 at 126-131. On October 30, 2019, Bahaa
Dawara, following his arrest, granted his sister, Faten Dawara,
power of attorney[9] to "lease, demise, sell, assign, transfer, set
over and convey property." See Def. Ex. D12, ECF No. 118 at 133-
139; see also Bahaa Dawara Dep. 39:7-13, ECF No. 134.[10]

Between November 11, 2019 and November 18, 2019, the
Incarcerated Defendants' powers of attorney, with the assistance
of counsel, began preparing documents to transfer the
Incarcerated Defendants' interests in the properties. Between
December 2019 and February 2020, the transfers were recorded,
and, as a result, the Incarcerated Defendants, through their
powers of attorney, each transferred half of their interests in

---

[9]    The individuals who were granted power of attorney are
hereinafter jointly referred to as "powers of attorney."

[10]    Bahaa Dawara later executed a second power of attorney for
Faten Dawara on January 12, 2020 to correct a typographical
error. See Def. Ex. 13.

the ten properties to a Non-Incarcerated relative. The relevant
dates of transfer are the dates which the deeds were recorded
with the requisite counties. See, e.g., In re Cowden, 337 B.R.
512, 523-24 (W.D. Pa. 2006) (finding that the relevant date of
transfer under the PUVTA is the date when the deed at issue was
recorded). The circumstances of these transfers are described
herein.

### 1. Properties Subject to Restitution Agreement

As noted, seven properties are subject to the Government's
Restitution Agreement. These properties were initially owned by
either Bahaa or Imad Dawara. See Trial Tr. 32:23-25; 33:1-3, ECF
No. 94. Though the Incarcerated Defendants transferred half of
their interests in the properties to their Non-Incarcerated
relatives, the Non-Incarcerated Defendants knew at the time of
transfer that these properties truly belonged to the
Incarcerated Defendants and not to them. See Trial Tr. 54:1-7,
ECF No. 96 (Haitham Albarouki testified that the properties
always belonged to the Incarcerated Defendants rather than other
members of the Dawara family).

**a. 134 Garfield Avenue, Woodlyn, Pennsylvania 19094**

Prior to December 2019, Bahaa Dawara held the title to the
property at 134 Garfield Avenue. On December 31, 2019,[11] Bahaa

---

[11]    The deed was prepared on November 14, 2019 and recorded on
December 31, 2019.

Dawara's power of attorney transferred 50% of Bahaa's interest
in the property to Faten Dawara for $1.00. See Pl. Ex. 6K. ECF
No. 117 at 368-378. The property is valued at approximately
$324,900.00. See Pl. Prop. Findings of Facts ¶ 52.[12] This
property has already been sold in accordance with the
Restitution Agreement.

### b. 140-142 Garfield Avenue, Woodlyn, Pennsylvania 19094

Prior to December 2019, Bahaa Dawara held the title to the
property at 140-142 Garfield Avenue. On December 31, 2019,[13]
Bahaa Dawara's power of attorney transferred 50% of Bahaa's
interest in the property to Faten Dawara for $1.00. See Pl. Ex.
6L, ECF No. 117 at 380-390. This property is valued at
approximately $289,000.00. See Pl. Prop. Findings of Facts ¶ 52.
This property has already been sold in accordance with the
Restitution Agreement.

### c. 312 Fern Street, Darby, Pennsylvania 19023

Prior to December 2019, Bahaa Dawara held the title to the
property at 312 Fern Street. On December 31, 2019,[14] Bahaa

---

[12]   Plaintiff has provided a list of the estimated value of the
properties. These values are not contested so the Court has
relied on them here.

[13]   The deed was prepared on November 11, 2019 and recorded on
December 31, 2019.

[14]   The deed was prepared on November 11, 2019 and recorded on
December 31, 2019.

Dawara's power of attorney transferred 50% of Bahaa's interest in the property to Faten Dawara for $1.00. <u>See</u> Pl. Ex. 6J, ECF No. 117 at 356-366. This property is valued at approximately $73,800.00. <u>See</u> Pl. Prop. Findings of Facts ¶ 52. This property has already been sold in accordance with the Restitution Agreement.

### d. 1524 McKean Street, Philadelphia, Pennsylvania 19145

In 2004, Haitham Albaourki purchased the property at 1524 McKean Street with Imad Dawara. Trial Tr. 24:7-11, ECF No. 96. Haitham Albarouki, transferred his interest in the property to Imad Dawara for $1.00. in February 2014. <u>Id.</u> 25:4-15; Def. Ex. D3, ECF No. 118 at 51-62. Imad Dawara then held the title to the property at 1524 McKean Street. On February 4, 2020,[15] Imad Dawara's power of attorney transferred 50% of Imad's interest in the property to Imad Dawara's wife, Abeer Naim, for $1.00. <u>See</u> Pl. Ex. 6G, ECF No. 117 at 341-344. This property is valued at approximately $305,400.00. <u>See</u> Pl. Prop. Findings of Facts ¶ 52. The property is listed for sale but has not yet been sold.

---

[15]   The deed was prepared on November 18, 2019 and recorded on February 4, 2020.

### e. 321 Massasoit Street, Essington, Pennsylvania 19029

Prior to December 2019, Imad Dawara held the title to the property at 321 Massasoit Street. Imad Dawara rented the property to unrelated tenants. Trial Tr. 27:10-18, ECF No. 95.[16] On December 31, 2019,[17] Imad Dawara's power of attorney transferred 50% of Imad's interest in the property to Imad Dawara's wife, Abeer Naim, for $1.00. See Pl. Ex. 6H, ECF No. 117 at 345-349; see also Imad Dawara Dep. 53:17-20. See Trial Tr. 28:17-20, ECF No. 95. This property is valued at approximately $258,600.00. See Pl. Prop. Findings of Facts ¶ 52. The property is listed for sale but has not yet been sold. There is currently a mortgage on the property.

### f. 224 Erickson Avenue, Essington, Pennsylvania 19029

Prior to December 2019, Imad Dawara held the title to the property at 224 Erickson. On December 31, 2019,[18] Imad Dawara's power of attorney transferred 50% of Imad's interest in the

---

[16]   During the bench trial, Haitham Albarouki testified that the current tenants have not paid rent in over a year and the family is in the process of evicting the tenants. See Trial Tr. 28:16-1, ECF No. 95.

[17]   The deed was prepared on November 14, 2019 and recorded on December 31, 2019.

[18]   The deed was prepared on November 11, 2019 and recorded on December 31, 2019.

property to Imad Dawara's wife, Abeer Naim, for $1.00. See Pl. Ex. 6I, ECF No. 117 at 350-354. This property is valued at approximately $203,000.00. See Pl. Prop. Findings of Facts ¶ 52. This property has already been sold in accordance with the Restitution Agreement.

### g. 1007 Milmont Avenue, Swarthmore, Pennsylvania 19081

Prior to December 2019, Imad Dawara held the title to the property at 1007 Milmont. Imad Dawara lived in that property with his wife until he was arrested. Imad Dep. 58:16-24. On December 31, 2019,[19] Imad Dawara's power of attorney transferred 50% of Imad's interest in the property to Imad Dawara's wife, Abeer Naim, for $1.00. See Pl. Ex. 6M, ECF No. 117 at 392-395. This property is valued at approximately $528,700.00. See Pl. Prop. Findings of Facts ¶ 52. This property has already been sold in accordance with the Restitution Agreement.

### 2. The Three Properties Not Subject to the Restitution Agreement

As noted, three properties were not subject to the Restitution Agreement. These properties were each owned by either Bahaa or Imad Dawara. See Trial Tr. 32:23-25; 33:1-3, ECF No. 94. In November 2019, the Incarcerated Defendants, through their powers of attorney, each transferred at least half of

---

[19]    The deed was prepared on November 11, 2019 and recorded on December 31, 2019.

their interests in the remaining three properties to a Non-Incarcerated relative. As Haitham Albarouki testified, the Incarcerated Defendants transferred their interests in these properties because they had the potential to save the properties "for the family," Trial Tr. 55:4-7, ECF No. 96, because "the family was afraid that these properties were going to be taken away from the family." Id. 52:22-24.

### a. 19 Ridgewood Avenue, Norwood, Pennsylvania 19074

Prior to November 2019, Bahaa Dawara held the title to the property at 19 Ridgewood Avenue. On December 31, 2019,[20] Bahaa Dawara's power of attorney transferred 50% of Bahaa's interest in the property to Faten Dawara for $1.00. See Pl. Ex. 6A, ECF No. 117 at 303-313. Bahaa Dawara still holds 50% of the interest in the property. Faten Dawara, Abeer Naim, Imad Dawara's children, and the Incarcerated Defendants' parents currently reside at the property. See Imad Dawara Dep. 44:1-10.[21] This property is valued at approximately $350,600.00. See Pl. Prop.

---

[20]   The deed was prepared on November 14, 2019 and recorded on December 31, 2019.

[21]   Since August 2017, the Incarcerated Defendants' father, Shaher Dawara, has resided at the property. On August 1, 2017, Shaher Dawara entered a month-to-month lease agreement with Bahaa Dawara which provided that Shaher Dawara would pay $850 per month to Bahaa Dawara. The agreement did not provide Shaher Dawara would be entitled to an interest in the property. See Def. Ex. D2(c), ECF No. 118 at 49.

Findings of Facts ¶ 52. There is currently a mortgage on the property.[22]

### b. 305 Seminole Street, Essington, Pennsylvania 19029

Prior to November 2019, Imad Dawara held the title to the property at 305 Seminole Street. The Incarcerated Defendants' sister, Maisaa Dawara, testified that she began living at the property with her husband and their two children in 2015 shortly after they immigrated from Syria. Trial Tr. 10:15-18; 11:9-11, ECF No. 97. Though the home was in Imad Dawara's name, Maisaa Dawara entered into an agreement with Imad Dawara which she believed provided that if she paid $1,100.00 every month to Imad Dawara for five years (until 2020), she would own the home. Id. at 15:19.

The record shows that on August 31, 2015, Maisaa Dawara and her husband, as the tenants, signed a lease agreement with Imad Dawara, as the landlord, which provided that Maisaa Dawara and her husband would pay Imad Dawara $1,100.00 each month. See Def. Ex. 2A, ECF No. 118 at 43-44. The terms of the lease agreement commenced on September 1, 2015 and was set to expire in 2045. See id. The parties do not contest that Maisaa Dawara and her husband paid the requisite monthly amount under the lease

---

[22]    The parties have not specified the amount owed on the mortgage. See Bahaa Dawara Dep. 29:3-6 (claiming he does not remember the amount of money owed on the mortgage).

agreement. They continued to make payments to Imad Dawara's power of attorney after Imad Dawara was incarcerated. They stopped making payments in 2020 because Masiaa Dawara believed she owned the home. Trial Tr.45:17-25, ECF No. 95. However, there is nothing in the lease agreement that provides that the title to the property would be transferred to Maisaa Dawara and her husband if they made monthly rental payments for five years.

The lease agreement did include an "option to purchase" by which Maisaa Dawara and her husband were granted "the exclusive right, option and privilege of purchasing [the] property . . . during the term of the" lease agreement. See Def. Ex. 2A, ECF No. 118 at 43-44. To exercise the option, Maisaa Dawara and her husband were required to notify Imad Dawara "in writing of the exercise of this option at least ten (10) days prior to the expiration of the initial term" of the lease agreement. Id. The document is silent as to the purchase price of the property. There is no evidence in the record that Maisaa Dawara and/or her husband provided written notice to exercise the option to purchase the property. Again, the record shows that the only payments Maisaa Dawara and her husband made to Imad Dawara were the monthly rental payments provided for by the lease agreement.

Although Maisaa Dawara did not exercise her option to purchase the property, on December 31, 2019,[23] Imad Dawara's power of attorney transferred 50% of Imad's interest in the property to Maisaa Dawara for $1.00. See Pl. Ex. 6B, ECF No. 117 at 315-319. On April 13, 2021,[24] over one month after the Incarcerated Defendants pled guilty in the federal criminal action, Imad Dawara's remaining interest in the property was transferred to Maisaa Dawara for $1.00. See Pl. Ex. 6C, ECF No. 117 at 320-323; see also Imad Dawara Dep. 37:36:21-24; 37:1-10 (noting that the property at 305 Seminole Street is currently in Maisaa Dawara's name).

Maisaa Dawara testified that she had an agreement with Imad Dawara that provided that they would complete repairs on the property and pay for all expenses and, after paying the lease for five years, they would then own the property. Trial Tr. 19:5-13, 27:1-8, ECF No. 97. Haitham Albarouki testified that this property belongs to Maisaa Dawara, Trial Tr. 55:17-18, ECF No. 95, and Imad Dawara similarly testified that he transferred the property to Maisaa Dawara because, pursuant to the lease agreement, "she owns it." Imad Dawara Dep. 37:22-24; 38:1-7.

---

[23]   The deed was prepared on November 11, 2019 and recorded on December 31, 2019.

[24]   The transfer was notarized on March 25, 2021, but the deed was recorded on April 13, 2021.

However, after considering the circumstances surrounding the transfer, the Court does not find this testimony credible.

This property is valued at approximately $248,800.00. See Pl. Prop. Findings of Facts ¶ 52.

### c. 407 Seminole Street, Essington, Pennsylvania, 19029

Prior to November 2019, Imad Dawara held the title to the property at 407 Seminole Street. Mirvat Dawara testified that she began living at the property with her husband and their two children in 2015. Trial Tr. 33:3-18, ECF No. 97. Mirvat Dawara testified that Imad Dawara purchased the property for her, id. at 34:1-77, and she believed that if she paid Imad Dawara $1,200.00 per month for five years (until 2020), she would own the home. Id. 36:9-13.

The record shows that on August 31, 2015, Mirvat Dawara and her husband, as the tenants, entered into a lease agreement with Imad Dawara, as the landlord, which provided that Mirvat Dawara and her husband would pay Imad Dawara $1,200.00 each month. See Def. Ex. 2B, ECF No. 118 at 46-47. The term of the lease commenced on September 1, 2015 and was set to expire in 2045. See id. The parties do not contest that Mirvat Dawara and her husband paid the requisite monthly amount under the lease agreement until 2020. They continued to make payments to Imad Dawara's power of attorney after Imad Dawara was incarcerated

22

and stopped making payments in 2020. Trial Tr. 45:17-25; 37:15-
20, ECF No. 95. However, there is nothing in the lease agreement
that provides that the title to the property would be
transferred to Mirvat Dawara and her husband if they made
monthly rental payments for five years.

The lease did include an "option to purchase" by which
Mirvat Dawara and her husband were granted "the exclusive right,
option and privilege of purchasing [the] property . . . during
the term of the" lease agreement. See Def. Ex. 2B, ECF No. 118
at 46-47. To exercise the option, Mirvat Dawara and her husband
were required to notify Imad Dawara "in writing of the exercise
of this option at least ten (10) days prior to the expiration of
the initial term" of the lease agreement. Id. The document is
silent as to the purchase price of the property. There is no
evidence in the record that shows that Mirvat Dawara and/or her
husband provided written notice to Imad Dawara to exercise the
option to purchase the property. Again, the record shows that
the only payments Mirvat Dawara and her husband made to Imad
Dawara were the rental installments provided for in the lease
agreement. Trial Tr. 51:3-11, ECF No. 96.

Although Mirvat Dawara did not exercise her option to
purchase the property, on December 31, 2019,[25] Imad Dawara's

---

[25]    The document was prepared on November 11, 2019, but was
recorded with Delaware County on December 31, 2019. A corrected

power of attorney transferred 50% of Imad's interest in the
property to Mirvat Dawara for $1.00. See Pl. Ex. 6D, ECF No. 117
at 324-328. The only additional fees Mirvat Dawara paid to Imad
Dawara were the closing costs on the property. Trial Tr. 51:25;
52:1-8, ECF No. 96; see also Imad Dawara Dep. 38:15-24; 39-14
(noting that Imad Dawara's interest in the property at 407
Seminole Street had been transferred to Mirvat Dawara). On April
13, 2021,[26] over one month after the Incarcerated Defendants pled
guilty in the federal criminal action, Imad Dawara's remaining
interest in the property was transferred to Mirvat Dawara for
$1.00. See Pl. Ex. 6F, ECF No. 117 at 335-340; see also Imad
Dawara Dep. 38:15-23 (Imad Dawara testified that his remaining
interest in the property was transferred to Mirvat Dawara).

    Haitham Albarouki testified that this property truly
belongs to Mirvat Dawara, Trial Tr. 55:17-18, ECF No. 95, and
Imad Dawara similarly testified that he transferred the property
to Mirvat Dawara because, pursuant to the lease agreement, "she
was paying for the ownership," Imad Dawara Dep. 39:13-18.
However, after considering the circumstances surrounding the
transfer, the Court does not find this testimony credible.

---

deed was later prepared but it was not recorded until September
1, 2020.

[26]    The deed was prepared on March 25, 2021, but was recorded
on April 13, 2021.

This property is valued at approximately $222,200.00. See Pl. Prop. Findings of Facts ¶ 52.

### 3. Other Assets Owned by the Incarcerated Defendants

Imad Dawara and Bahaa Dawara both testified that the only properties they had an interest in at the time of their arrest were the ten properties at issue here. Imad Dawara Dep. 17:19-24, 21:24; 22:1-9; Bahaa Dawara Dep. 12:3-13. Prior to their arrest, the Incarcerated Defendants also operated a nightclub on Delaware Avenue in Philadelphia known as "B Side." However, at the time of their arrest, the nightclub's assets included only a liquor license, some restaurant equipment, and some furniture. Imad Dawara Dep. 14:11-15. The Incarcerated Defendants leased the property, but the property was ultimately repossessed by the landlord because the Incarcerated Defendants defaulted on their rental agreement. Id. 14:22-23. Plaintiff has not provided evidence of any other assets belonging to the Incarcerated Defendants.

## III. CONCLUSIONS OF LAW AND DISCUSSION

### A. Liability Under the PUVTA

Plaintiff contends that the Incarcerated Defendants acted with intent to defraud their creditors when they transferred the ten properties into the names of their relatives or, alternatively, that the Incarcerated Defendants constructively

defrauded their creditors in violation of the PUVTA. These arguments will be addressed herein.

### 1. Actual Fraud

Under section 5401(a)(1) of the PUVTA, "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation" with "actual intent to hinder, delay or defraud any creditor of the debtor." 12 Pa. C.S. § 5104(a)(1)); see also Klein v. Weidner, No. 08-3798, 2010 WL 27910, at *1 (E.D. Pa. Feb. 17, 2010) (quoting section 5104(a)(1) and noting the same). Section 5104(a)(1) considers only "the debtor's intent in making the transfer, not [the] transferee's intent, which is irrelevant." Trizechahn Gateway LLC, v. Schander Harrison Segal & Lewis LLP, No. 1472-WDA-2018, 2019 WL 5858227, at *5 (Super. Ct. Pa. Nov. 8, 2019) (citing 12 Pa. C.S. § 5104(a)(1)); see also In re Atomica Design Grp., Inc., 556 B.R. 125, 161 (E.D. Pa. 2016) (citing 12 Pa. C.S. § 5104(a)); In re Rite Way Electric, Inc., 510 B.R. 471, 480-81 (Bankr. E.D. Pa. 2014) (citing 12 Pa. C.S. § 5104(a)).

Because "individuals are rarely willing to admit intent, actual fraud is rarely proven by direct evidence." In re Carbone, 615 B.R. 76, 80 (Bankr. E.D. Pa. 2020) (quoting In re Pennsylvania Gear Corp., No. 02-36436, 2008 WL 2370169, at *9

26

(Bankr. E.D. Pa. April 22, 2008)). Instead, the PUVTA provides that the Court may consider certain factors, frequently referred to as the "badges of fraud," to assist the Court in "determining whether fraud has been proven by circumstantial evidence." Id. (internal quotation marks and citation omitted). The badges of fraud include:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

27

12 Pa. C.S. § 5104(b).

The creditor[27] has the burden of proving actual fraud by a preponderance of the evidence. Id. at § 5104(c).[28] "Although the presence of a single . . . badge of fraud may cast suspicion on a transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud." In re Roman Catholic Diocese of Harrisburg, 640 B.R. 59, 74 (M.D. Pa. 2022) (relying on the PUVTA and quoting In re AgFeed USA, LLC, 546 B.R. 318, 337 (Bankr. D. Del. 2016)). "No particular badge is necessary, nor is any combination sufficient; finding intent is always fact specific." Eddystone Rail Co., LLC v. Bridger Logistics, LLC, No. 17-495, 2022 WL 1768853, at *3 (E.D. Pa. Mar. 21, 2022) (citing 12 Pa. C.S. § 5104(a)). Here, the evidence on the record allows the Court to find that at least five badges of fraud are present and that the Plaintiff has met its burden.

The evidence shows that the first badge of fraud, which involves whether the transfer or obligation was made to an

---

[27]   Plaintiff here is a judgment creditor pursuant to a judgment it received against the Incarcerated Defendants in the Court of Common Pleas. See Pl. Exs. P13, P1C, ECF Nos. 129-1, 129-2.

[28]   Although fraud is generally required to be proven by clear and convincing evidence, the PUVTA was amended to include that "[a] creditor making a claim for relief under [section 5104(a)] has the burden of proving the elements of the claim for relief by the preponderance of the evidence." 12 Pa. C.S. § 5104(c).

insider, is present here. Pa. C.S. § 5104(b)(1). The
Incarcerated Defendants were arrested on October 17, 2019.
Within two weeks of their arrest, the Incarcerated Defendants
appointed their relatives as their powers of attorney. Imad
Dawara appointed Haitham Albarouki on October 26, 2019, and
Bahaa Dawara appointed Faten Dawara on October 30, 2019. By
November 11, 2019, the Incarcerated Defendants' powers of
attorney began preparing documents to transfer at least 50% of
the Incarcerated Defendants' interests in the ten properties to
Faten Dawara, Abeer Naim, Maisaa Dawara, and Mirvat Dawara.

Specifically, on December 31, 2019, Bahaa Dawara
transferred 50% of his interests in 134 Garfield Avenue, 140-142
Garfield Avenue, 312 Fern Street, and 19 Ridgewood Avenue to his
sister, Faten Dawara. Imad Dawara transferred 50% of his
interests in 1524 McKean Street, 321 Massasoit Street, 224
Erickson Avenue, and 1007 Milmont Avenue to his wife, Abeer
Naim.[29] Additionally, on December 31, 2019, Imad Dawara

---

[29]    It is of no moment that Imad Dawara transferred his
interests in these properties to his wife. Defendants do not
argue that Imad Dawara and Abeer Naim previously held the
properties as tenants by the entireties. Under the PUVTA, an
asset does not include "an interest in property held in tenancy
by the entireties to the extent it is not subject to process by
a creditor holding a claim against only one tenant." 12 Pa. C.S.
§ 5101(b). Generally, "[e]ntireties properties cannot be used to
satisfy the claims of creditors of only one spouse." Clinton
Plumbing and Heating of Trenton, Inc. v. Ciaccio, No. 09-2751,
2011 WL 6088611, at *6 (E.D. Pa. Dec. 7, 2011) (citing In re
Brannon, 476 F.3d 170, 173 (3d Cir. 2007)); United States v.

transferred 50% of his interest in 305 Seminole Street to Maisaa
Dawara and 50% of his interest in 407 Seminole Street to Mirvat
Dawara. On April 13, 2021, just over one month after the
Incarcerated Defendants pled guilty in the federal criminal
action, Imad Dawara transferred the remainder of his interests
in 305 Seminole Street and 407 Seminole Street to Maisaa Dawara
and Mirvat Dawara, respectively. Thus, the first badge of fraud
is present in this case.

The evidence shows that the fourth badge of fraud,
regarding whether the debtor had been sued or threatened with
suit, and the tenth badge of fraud, regarding whether the
transfer occurred shortly before or shortly after a substantial
debt occurred, are also present here. 12 Pa. C.S. § 5104(b)(4),
(10). By the time the transfers occurred, the Incarcerated
Defendants were aware that they had been sued and would be

_____

Green, 201 F.3d 251, 253 (3d Cir. 2000)). However, the
conversion of property owned by one debtor-spouse to the other
spouse does not immunize the property from the PUVTA. Id.; see
Knoll v. Uku, 154 A.3d 329, 330, 333, 334, 336 (Pa. Super. Ct.
2017) (finding evidence of fraud existed under the PUVTA in a
circumstance where a debtor transferred property into his wife's
name). Because the evidence shows that Imad Dawara and Abeer
Naim did not hold the properties as tenants by the entireties
before Imad Dawara transferred his interests in the properties
to himself and Abeer Naim, any argument that the assets are
excluded under section 5101(b) is without merit. See Clinton
Plumbing, 2011 WL 6088611, at *6 (finding that because a debtor
sought to insulate property by transferring it to himself and
his wife, the transfer was still subject to avoidance under the
PUVTA).

indebted to those with interests in the two buildings located at
239 Chestnut Street and 241-43 Chestnut Street. As noted, the
Incarcerated Defendants, through their powers of attorney and
counsel, began preparing documents to transfer the properties
within weeks of the Incarcerated Defendants' arrest. Haitham
Albarouki even testified that, "the family was afraid that these
properties were going to be taken away from the family," and
Trial Tr. 52:22-24, ECF No. 96. As it was feared, Plaintiff's
predecessors in interest filed the related state court civil
suit on November 25, 2019. The initial transfers were finalized
between December 31, 2019 and February 4, 2020, after the
Incarcerated Defendants had been sued. Thus, the Incarcerated
Defendants were clearly aware that would face substantial
liability as a result of their actions. Accordingly, the fourth
and tenth badges of fraud are present here.

The fifth badge of fraud is present here as well. The fifth
badge of fraud involves whether the transfer was of
substantially all of the debtor's assets. 12 Pa. C.S. §
5104(b)(5). Imad Dawara testified that his primary assets were
in real estate, and that the only real estate he had an interest
in were the properties at issue here. Imad Dawara Dep. 17:19-24,
21:24; 22:1-9. Bahaa Dawara similarly testified that the only
properties he owned at the time of his arrest are the properties
at issue here. Bahaa Dawara Dep. 12:3-13. Though the

Incarcerated Defendants operated a nightclub on Delaware Avenue in Philadelphia known as "B Side," at the time of their arrest, the nightclub's assets only included a liquor license, some restaurant equipment, and some furniture. Imad Dawara Dep. 14:11-15. The Incarcerated Defendants leased the property, and it was ultimately repossessed by the landlord due to their failure to pay rent. Id. 14:22-23. Thus, the evidence shows that the properties at issue here encompassed substantially all of the Incarcerated Defendants' assets, an assertion which the Incarcerated Defendants have not disputed. Accordingly, the Court finds that the fifth badge of fraud is present here.

The eighth badge of fraud requires the Court to consider "the value of the consideration received by the debtor relative to the value of the transferred asset." Mid Penn Bank v. Farhat, 74 A.3d 149, 155 (Pa. Super. Ct. 2013). Courts generally find that this badge of fraud is present if the debtor "did not receive reasonably equivalent value for the property." Id. Here, the Incarcerated Defendants' interests in the properties were transferred to their relatives for $1.00. The market values of the ten properties range from $73,800.00 to $528,700.00. See Pl. Prop Findings of Fact ¶ 52, ECF No. 115. Defendants aver that it is not uncommon for family members to transfer assets to each other for a nominal amount. Under the circumstances of this case, including the timing of the transfers, the Court finds

that regardless of whether the transfers were to family members, the Incarcerated Defendants did not receive reasonably equivalent value for the property. Thus, this badge of fraud is present here. Overall, the Court finds that five badges of fraud are present here.[30]

In response, Defendants fail to point to any evidence disputing the existence of the badges of fraud with respect to the seven properties subject to the Restitution Agreement or the property at 19 Ridgeway Avenue. In fact, Haitham Albarouki even testified that those properties truly belonged to the Incarcerated Defendants. Trial Tr. 54:1-7, ECF No. 96. Instead, Defendants focus on the properties at 305 Seminole Street and 407 Seminole Street. Defendants argue that the Incarcerated Defendants' sisters, Maisaa Dawara and Mirvat Dawara, were contractually entitled to own the properties, so the Incarcerated Defendants could not have fraudulently transferred these properties. However, the Court finds no merit to this argument.

---

[30]   The Court finds that there is insufficient evidence for the Court to find that the second, third, seventh, and ninth badges of fraud exist here. Additionally, the sixth and eleventh badges of fraud are not relevant here. Regardless, for the reasons stated herein, the Court has found that sufficient evidence exists to find that the Incarcerated Defendants acted with actual fraud in transferring their interests in the properties at issue.

With respect to the property at 305 Seminole Street, Defendants argue that Maisaa Dawara and her husband signed an agreement with Imad Dawara that provided that if Maisaa Dawara paid Imad Dawara $1,100.00 per month from 2015 until 2020, Maisaa Dawara would own the property. Though it is uncontested that Maisaa Dawara and her husband paid $1,100.00 to Imad Dawara each month, the lease agreement between them did not provide that Maisaa Dawara would automatically own the property after five years. As noted, the lease agreement included an "option to purchase" which required the tenants to provide written notice of their option to purchase the property. However, there is no evidence that Maisaa Dawara and/or her husband provided written notice to Imad Dawara to exercise this option. The evidence shows that Maisaa Dawara paid monthly installments to rent, rather than own, the property. Because nothing on the record would allow the Court to infer that this was anything but a standard lease agreement, the Court cannot find that Maisaa Dawara was the true owner of the property. Thus, the argument that Imad Dawara transferred the property at 305 Seminole Street to Maisaa Dawara for $1.00 in December 2019 because, pursuant to the lease agreement, Maisaa Dawara owned the property, fails.

The same is true for the property at 407 Seminole Street. Defendants similarly argue that Mirvat Dawara and her husband signed an agreement with Imad Dawara that provided that if

34

Mirvat Dawara paid Imad Dawara $1,200.00 per month from 2015 until 2020, she would own the property. Again, nothing in the record would allow the Court to find that Mirvat Dawara was the true owner of this property. Thus, the argument that Imad Dawara transferred the property at 407 Seminole Street to Mirvat Dawara for $1.00 in December 2019 because, pursuant to the lease agreement, Mirvat Dawara owned the property fails.

Additionally, Maisaa Dawara's and Mirvat Dawara's apparent personal beliefs that they owned the properties do not shield the Incarcerated Defendants from liability here. As noted, the Court must only consider the intent of the transferor; the intent of the transferee is irrelevant. Trizechahn Gateway LLC, 2019 WL 5858227, at *5 (citing 12 Pa. C.S. § 5104(a)(1)). Thus, it is of no relevance that Maisaa Dawara and Mirvat Dawara may truly believe that they are the rightful owners of these properties.

In a final effort to contest liability, Defendants argue that they should be immune from liability because the Incarcerated Defendants were following the advice of counsel. Defendants maintain that the Incarcerated Defendants sought advice from Imad Dawara's criminal defense attorney and were informed by counsel that they should transfer the properties to their Non-Incarcerated relatives. See Trial Tr. 12:13-14, ECF No. 96 (Hitham Albarouki testified that the Incarcerated

Defendants were advised to change the deeds); Bahaa Dawara Dep. 17:13-14 (Bahaa Dawara testified he was advised to transfer properties into his sister's names). Some courts have found good faith reliance on the advice of counsel can, under certain circumstances, be a complete defense to claims that a debtor violated the Bankruptcy Code's fraudulent transfer provision, 11 U.S.C. § 548(A)(1). See, e.g., In re Global Outreach, S.A., No. 09-15985/09-1415, 2014 WL 4948184, at *4, *7 (D.N.J. Oct. 2, 2014); In re Colish, 289 B.R. 523, 541 (Bankr. E.D.N.Y. 2002); Jones v. Gertz, 121 F.2d 782, 784 (10th Cir. 1941).[31] This defense is unavailable here.

Initially, Defendants fail to cite to any authority, and the Court finds none, that advice of counsel is a recognized defense under the PUVTA.[32] Moreover, even if following the advice of counsel were a viable defense under the PUVTA, the Incarcerated Defendants have failed to point to any evidence

---

[31]   Even in the context of bankruptcy proceedings, "[r]eliance on advice of counsel is not an impenetrable shield that will preclude a finding that debtor acted with fraudulent intent . . . ." 4 Bankr. Serv. L. Ed. § 39:126.

[32]   Section 5108 of the PUVTA provides that "[a] transfer or obligation is not voidable under section 5104(a)(1) . . . against a person that took in good faith and for a reasonably equivalent value given the debtor or against any subsequent transferee or oblige." 12 Pa. C.S. § 5108(a). Section 5108 does not provide that a transfer may be voided because the transferor or transferee relied on the advice of counsel.

that would allow the Court to find that the defense is applicable here.

An advice of counsel defense generally requires the defendant-debtor to show that (1) counsel gave the advice, (2) the advice was "legal" advice, (3) the debtor relied upon the advice of counsel, and (4) the debtor acted in good faith when relying on the advice. In re Gotwald, 488 B.R. 854, 873 (E.D. Pa. 2013) (citing In re Adeeb,787 F.2d 1339, 1343 (9th Cir. 1986)); see also In re Colish, 289 B.R. at 652 ("reliance must be in good faith and any protection based on reliance on debtor's counsel will only act as a protection to the extent the reliance was reasonable.").[33]

First, the Incarcerated Defendants have provided no evidence, either by way of testimony by counsel or by written documents, that shows advice was given. Second, even if some general advice was given, the Incarcerated Defendants have failed to point to evidence demonstrating that such advice was "legal advice," including whether counsel was provided with accurate facts upon which to base his advice, that counsel relied on applicable law, that counsel rendered an opinion which proposed the course of action that the Incarcerated Defendants

---

[33]   This is consistent with the standard bankruptcy courts apply when considering whether advice of counsel is a defense to claims that a debtor violated the Bankruptcy Code's fraudulent transfer provision. See 4 Bankr. Service L. Ed. § 39:428.

followed, and that the proposed course of action was legally permissible. And, in any event, the Incarcerated Defendants have failed to show that they relied on such advice in good faith. Thus, the Court is unable to conclude that the Incarcerated Defendants are entitled to the advice of counsel defense here.

Overall, the Court finds that the existence of several badges of fraud is sufficient to find that the Incarcerated Defendants acted with intent in fraudulently transferring the properties at 134 Garfield Avenue, 140-142 Garfield Avenue, 312 Fern Street, 1524 McKean Street, 321 Massasoit Street, 224 Erickson Avenue, 1007 Milmont Avenue, 19 Ridgeway Avenue, 305 Seminole Street, and 407 Seminole Street to the Non-Incarcerated Defendants under 42 Pa. C.S. § 5104 (a)(1).[34]

### 2. Constructive Fraud

Plaintiff also brings, in the alternative, a claim for constructive fraudulent transfer. "A transfer made or obligation incurred by a debtor is [also] voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation—"

---

[34]   As noted, the Plaintiff had the burden of proving its PUVTA claim by a preponderance of the evidence. See supra note 28. However, the Court finds that Plaintiff would have met its burden even if the applicable standard were clear and convincing evidence.

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

      (i)    was engaged or about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

      (ii)   intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

12 Pa. Con. Stat. § 5104(a)(2). Plaintiff avers that the Incarcerated Defendants believed, or should have believed, that they would incur debts following their arrest, so the transactions are fraudulent under section 5104(a)(2)(ii).

Under the circumstances of this case and the facts as stated, the Court finds that the transfers are fraudulent under section 5104(a)(2)(ii) as well. Here, the Incarcerated Defendants did not receive a reasonably equivalent value for the properties at issue. Additionally, in light of the suspicious timing of the transfers and the testimony that "the family was afraid that these properties were going to be taken away from the family," Trial Tr. 52:22-24, ECF No. 96, the Court finds that the Incarcerated Defendants believed, or reasonably should have believed, that they would incur debts that would be beyond their ability to pay.

**B. Remedies Under the PUVTA**

Plaintiff requests (1) that the transfers of the three properties that are not subject to the Restitution Agreement be voided and for the titles to these properties to be returned to the Incarcerated Defendants, (2) a money judgment for the value of the seven properties that are subject to the Restitution Agreement, (3) punitive damages, (4) pre and post-judgment interest, and (5) attorneys' fees.

1. Transfers Voided

Plaintiff requests that the Court void the transfers with respect to the three properties that are not subject to the Restitution Agreement and order the title to these properties to be transferred back to the Incarcerated Defendants. "Section 5104(a)(1) nullifies a transfer committed with actual fraud." Knoll v. Uku, 154 A.3d 329, 332 (Pa. Super. Ct. 2017). Section 5107 of the PUVTA provides a list of the following remedies:

> (a) Available remedies.--In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in sections 5108 (relating to defenses, liability and protection of transferee or obligee) and 5109 (relating to extinguishment of claim for relief), may obtain:
>
> (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.
>
> (2) An attachment or other provisional remedy against the asset transferred or other property of the transferee if available under applicable law.

(3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

    (i) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

    (ii) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

    (iii) any other relief the circumstances may require.

(b) Execution.--If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, subject to the limitations of sections 5108 and 5109, may levy execution on the asset transferred or its proceeds.

Pa. C.S. § 5107(a)-(b). Here, pursuant to section 5017(a)(1), the transfers with respect to the three properties at 19 Ridgeway Avenue, 305 Seminole Street, and 405 Seminole Street will be voided.

Title to these properties will be transferred back to the Incarcerated Defendants and therefore will be available for execution of the civil judgment Plaintiff obtained in the Court of Common Pleas against the Incarcerated Defendants. However, the Court recognizes that, pursuant to the Restitution Agreement, in the event the Incarcerated Defendants default on the payments set forth under the Restitution Agreement, the Government has "reserve[d] its right to initiate an action against [the remaining three] properties to collect restitution as provided under applicable federal and state law." See Pl. Ex.

41

P5E1 at ¶ 9(g), ECF No. 117. Because the Government has not yet affirmatively waived its rights with respect to these three properties, consistent with section 5107(a)(3)(i) of the PUVTA, the Court will enjoin the Incarcerated Defendants from transferring their title to these properties until further order of the Court. See 12 Pa. 5107(a)(3)(i) (noting that "subject to applicable principles of equity and in accordance with applicable rules of civil procedure" the Court may issue "an injunction against further disposition by the debtor . . . of the asset transferred or of other property.").

The Court notes that there is a mortgage on the property at 19 Ridgeway Avenue. Generally, an asset is not property of a debtor if it is "encumbered by a valid lien." 12 Pa. C.S. § 5101. If an asset is partially encumbered by a lien, only the unencumbered portion will be considered an asset of the debtor. See, e.g., In re Island View Crossing II, L.P., Nos. 17-14454, 1709292, 18-02800, 2021 WL 3745433, at *5 (E.D. Pa. Aug. 24, 2021) (noting that "if a debtor owns property that is completely encumbered by liens, that property is not considered an asset of the debtor under § 5101, or if that property is only partially encumbered, then § 5101 dictates that only the unencumbered portion of the property will be considered an asset of the debtor") (citing 12 Pa. C.S. § 5101 comm. comment #2). Thus, if the Government ultimately waives its right

to this property, Plaintiff will be entitled to execute on its state court judgment against this property, see 12 Pa. C.S. § 5107(c), but Plaintiff's recovery will be limited to the value of this property less the amount due on the outstanding mortgage and any other valid liens.[35]

### 2. Judgment for the Value of the Remaining Seven Properties

Plaintiff acknowledges that the seven properties subject to the Restitution Agreement have already been sold, or will soon be sold, and thus the transfers with respect to these properties cannot be voided. Here, Plaintiff seeks a "money judgment" in an amount equivalent to the value of the seven properties.

Pursuant to section 5108 of the PUVTA, a "creditor may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim" as long as the judgment is "for an amount equal to the value of the asset at the time of the transfer, subject to any adjustment as the equities may require." 12 Pa. C.S. § 5108(b)(1), (c). Because the Court finds that the Incarcerated Defendants transferred their interests in the seven properties that are subject to the Restitution Agreement with fraudulent intent, Plaintiff will be entitled to a judgment equivalent to the value of the seven

---

[35]   The parties have not specified the value of the outstanding mortgage.

43

properties, as set forth later in this section, to be applied

towards the satisfaction of its civil judgment.[36]

Defendants argue that the Court should decline to find that

Plaintiff is entitled to this relief because the properties are

---

[36]    Though Plaintiff seeks a money judgment, Plaintiff's
request misapprehends the purpose of the PUVTA. Only a
"creditor" may bring a claim under section 5014 of the PUVTA.
See 12 Pa. C.S. § 5104(a); id. at § 5107(a); id. at § 5108(b). A
creditor is defined as "[a] person that has a claim." id. at §
5101(b) (Definitions). A "claim" includes a court judgment a
creditor may have against a defendant-debtor. 18A Summa. Pa.
Jur. 2d Comm. L. § 22:6 (2d Ed.). Here, Plaintiff is a creditor
because it has a judgment, arising from the related state court
proceeding, against the Incarcerated Defendants.
        "[T]he purpose of the [PUVTA] is to protect creditors . . .
by preventing the debtor from placing assets otherwise available
to pay creditors out of the reach of those creditors." Id. "At
its core, fraudulent transfer law," including the PUVTA, "is a
debt-collection device" so that a creditor may recover on its
claim against the debtor. In re Lewis, 574 B.R. 536, 539 (Bankr.
E.D. Pa. 2017) (quoting Finkel v. Polichuk (In re Polichuk), 506
B.R. 405, 435 (Bankr. E.D. Pa. 2014)) (emphasis added). If a
debtor-defendant fraudulently transfers an asset, the creditor
may bring a claim under the PUVTA to void the transfer so the
creditor may execute on its judgment against the asset, as
Plaintiff has done here. 12 Pa. C.S. § 5108. If the assets are
no longer available, the creditor may also "recover judgment for
the value of the asset transferred" in order to satisfy its
underlying claim. 12 Pa. C.S. § 5108. This, however, does not
constitute a money judgment independent from the creditor's
claim because the PUVTA is "not a revenue generating tool." In
re Lewis, 574 B.R. at 539 (Bankr. E.D. Pa. 2017) (quoting In re
Polichuk, 506 B.R. at 435) (emphasis added).
        Thus, as explained herein, as a means of collecting on its
state court judgment, Plaintiff will be entitled to a judgment
for the value of the seven properties, less the value of any
mortgages or other liens on the properties at the time they were
fraudulently transferred.

subject to the Government's Restitution Agreement. Defendants argue that Plaintiff would recover double damages if Plaintiff receives restitution and is also able to execute on its state court judgment against the value of these properties. The Court finds that this argument is without merit.

Under federal law, restitution in the federal criminal action was entered pursuant to the Mandatory Victims Restitution Act of 1996 (the "MVRA"), Pub. L. No. 104-132, 110 Stat. 1227, codified at 18 U.S.C. §§ 3613A, 3663A. However, the MVRA does not prohibit victims from bringing a civil suit after they have been awarded restitution. Doe v. Hesketh, 828 F.3d 159, 168 n.10 (3d Cir. 2016). As the Third Circuit has explained, "Congress not only contemplated that a victim who had received restitution could file a subsequent civil action, but also provided procedures for that very situation." Id. at 169. Federal law provides that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in . . . any Federal civil proceeding" and in "any State civil proceeding, to the extent provided by the law of the state." 18 U.S.C. § 3664(j)(2).

And, under Pennsylvania law, receipt of restitution does not bar a party from recovering civil damages. Pennsylvania law similarly provides that "[n]o judgment or order of restitution

shall debar the victim, by appropriate action, to recover from
the offender as otherwise provided by law, provided that any
civil award shall be reduced by the amount paid under the
criminal judgment." 18 Pa. C.S. § 1106(g).

Under such circumstances, these "provisions ensure that a
victim will not have to re-litigate the conduct forming the
basis of a criminal conviction in a subsequent civil action and
a defendant will not be required to pay double damages for the
same loss if a subsequent civil action is successful." Hesketh,
828 F.3d at 169. Though Plaintiff's predecessors in interest had
the opportunity to submit relevant information to the Government
ahead of the Incarcerated Defendants' sentencing in the criminal
action, "a victim's participation in a sentencing court's
determination of restitution is limited to conferring with the
government, submitting information to a probation officer, or
potentially providing testimony at the sentencing court's
discretion." Id. (internal citations omitted). As the Third
Circuit has explained "[a] subsequent civil action allows a
victim to fully litigate the question of her damages to achieve
compensation for the full amount of her damages," id., as
victims are not "required to participate in any phase of a
restitution order." 18 U.S.C. § 3664(g)(1). This is especially
true because "[n]otwithstanding the rights reflected in the
restitution statutes, crime victims are not parties to a

46

criminal sentencing proceeding." United States v. Stoerr, 695 F.3d 271, 276 (3d Cir. 2012) (quoting United States v. Aguirre-Gonzalez, 597 F.3d 46, 53 (3d Cir. 2012)).

Thus, as provided by both federal and state law, Plaintiff is not precluded from separately recovering civil damages. And, Defendants do not point to any authority that would preclude the Court from entering a judgment for the value of the properties transferred pursuant to 12 Pa. C.S. § 5108(b)(1), (c). Again, Plaintiff will be able to collect on its state court judgment, but will not be entitled to double damages because any damages Plaintiff receives by executing on the state court judgment will be offset by any restitution awarded. In fact, in entering judgment, the Court of Common Pleas provided that compensatory damages shall be offset by the restitution Plaintiff is expected to receive. See Pl. Exs. P13, P1C, ECF Nos. 129-1, 129-2.

Finally, the Court must consider which defendants are liable for the value of each asset transferred. The PUVTA allows creditors to reach fraudulently transferred assets that are held by transferees. Section 5108 of the PUVTA provides that Plaintiff "may recover judgment for the value of the asset transferred" and the "judgment may be entered against"

> (i) the first transferee of the asset or the person for whose benefit the transfer was made; or
>
> (ii) an immediate or mediate transferee of the first transferee, other than:

47

Pa. C.S. § 5108(b)(1)(i)-(ii). Thus, the Non-Incarcerated transferees may be held liable for the value of the assets transferred.

However, the Incarcerated Defendants did not transfer the entirety of their interests in the seven properties to the Non-Incarcerated Defendants. Instead, the Incarcerated Defendants transferred only 50% of their interests in each of the seven properties to one of their relatives. Thus, the Court will, in its discretion, hold both the transferor and transferee jointly and severally liable here. See In re Blastein, 260 B.R. 698, 720-21 (E.D. Pa. 2001) (finding that "joint and several liability is an available remedy in fraudulent transfer cases" and the decision to impose such liability is at the discretion of the lower court). Here, the Court finds that Defendants are jointly and severally liable[37] for the value of the seven properties as follows:

1. Bahaa Dawara and Faten Dawara are jointly and severally liable for the value of the property at 134 Garfield Avenue, Woodlyn, Pennsylvania 19094. It is uncontested that the property is worth $324,900.00;[38]

---

[37]   Plaintiff argues that the Court should hold all Defendants jointly and severally liable for the total value of these properties. Plaintiff, however, fails to point to any authority that would allow for this result.

[38]   Pursuant to PUVTA, Plaintiff is entitled to recover "an amount equal to the value of the asset at the time of the transfer, subject to any adjustment as the equities may

2. Bahaa Dawara and Faten Dawara are jointly and severally liable for the value of the property at 140-142 Garfield Avenue, Woodlyn, Pennsylvania 19094. It is uncontested that the property is worth $289,000.00;

3. Bahaa Dawara and Faten Dawara are jointly and severally liable for the value of the property at 312 Fern Street, Darby, Pennsylvania 19023. It is uncontested that the property is worth $73,800.00;

4. Imad Dawara and Abeer Naim are jointly and severally liable for the value of the property at 1524 McKean Street, Essington, Pennsylvania 19145. It is uncontested that the property is worth $305,400.00;

5. Imad Dawara and Abeer Naim are jointly and severally liable for the value of the property at 321 Massasoit Street, Essington, Pennsylvania 19029. It is uncontested that the property is worth $258,600.00;

6. Imad Dawara and Abeer Naim are jointly and severally liable for the value of the property at 224 Erickson Avenue, Essington, Pennsylvania 19029. It is uncontested that the property is worth $203,000.00;

7. Imad Dawara and Abeer Naim are jointly and severally liable for the value of the property at 1007 Milmont Avenue, Swarthmore, Pennsylvania 19081. It is uncontested that the property is worth $528,700.00;

The value of these properties will be diminished by any valid mortgage or other lien owed on the properties at the time of transfer. 12 Pa. C.S. § 5108(c). Accordingly, Plaintiff is

---

require." Pa. C.S. § 5108(b)(1), (c). As noted, Plaintiff has provided a list of the estimated value of the properties. These values are not contested so the Court has relied on them here. See Pl. Prop. Findings of Facts ¶ 52; supra note 12.

entitled to a judgment up to the value of these seven
properties.[39]

### 3. Punitive damages[40]

Plaintiff also seeks punitive damages. Though the PUVTA
does not expressly provide for punitive damages, Plaintiff
contends that that such relief is available because section 5107
of the PUVTA allows the Court to grant "any other relief
circumstances may require." 12 Pa. C.S. § 5107(a)(3)(iii).

Pennsylvania appellate courts have not opined on whether
section 5107 authorizes courts to award punitive damages. In
Klein v. Weidner, the Third Circuit "predict[ed] that the
Pennsylvania Supreme Court would conclude that punitive damages
are available under the [PUVTA]" based on the language of the
"catch-all" damages provision under section 5107(a)(3)(iii). 729
F.3d 280, 288, 292 (3d Cir. 2013). Pennsylvania courts have yet
to determine whether Klein's prediction is accurate. See, e.g.,
George M. Axilbund Trust v. Forman, No. 214-EDA-2021, 2021 WL
5370828, at *4-*5 (Super. Ct. Pa. Nov. 18, 2021) (noting Klein

---

[39]   Pursuant to section 5107 of the PUVTA, Plaintiff may
execute on its state court monetary judgment against the value
of these seven properties. See 12 Pa. C.S. 5107(b).

[40]   Consideration of punitive damages in this case is
restricted to the Court's review of the Incarcerated Defendants'
conduct in the fraudulent transfers at issue. The Court will, of
course, not consider the conduct that the Incarcerated
Defendants pled guilty to in the federal criminal action.

predicted that punitive damages would be available under the
PUVTA, but upholding a district court award of punitive basis on
a different basis).

Even assuming the PUVTA allows courts to award punitive
damages, courts may award punitive damages only in cases where
the plaintiff can show that the defendant engaged in outrageous
conduct in connection with the fraudulent transfer.[41] See Klein,
729 F.3d at 293. Generally, "[t]o justify the award of punitive
damages, there must be acts of malice, vindictiveness and a
wholly wanton disregard of the rights of others." Pittsburgh
Live, Inc. v. Servov, 615 A.2d 438, 442 (Pa. Super. Ct. 1992);
see also George M. Axilbund Trust, 2021 WL 5370828, at *3-*4
(citing Pittsburgh Live, Inc. and noting the same). The Court
will consider whether Plaintiff has provided evidence showing
that Defendants acted with the requisite intent by clear and
convincing evidence.

---

[41]   Generally, fraud must be proven by clear and convincing
evidence. As explained, PUVTA differs in that the statute
provides that actual fraud can be shown by a preponderance of
the evidence. See supra note 28.
     Pennsylvania courts have generally found that "[w]here the
plaintiff's evidence establishes actual fraud, the decision of
whether to award punitive damages and the amount to be awarded
are within the discretion of the factfinder." Noyes v. Cooper,
579 A.2d 407, 413 (Pa. Super. Ct. 1990). Because, under
Pennsylvania law, a plaintiff must typically establish fraud by
clear and convincing evidence, the Court will apply this
standard in considering punitive damages. The Court will do so
even though Plaintiff requests this relief in connection with
its PUVTA claim.

Plaintiff argues that Defendants fraudulently transferred the ten properties as a means to defraud victims of the Incarcerated Defendants' arson, so the Court should find that Defendants' acts constitute outrageous and wanton conduct.

Here, the Court finds that Plaintiff has shown, by clear and convincing evidence, that in orchestrating the scheme to transfer all of their interests in the ten properties when the Incarcerated Defendants were aware that they would be indebted to the victims of the arson, and therefore would be depriving the victims of their rights to recover, the Incarcerated Defendants acted with "malice, vindictiveness and a wholly wanton disregard of the rights of others." Pittsburgh Live, Inc., 615 A.2d at 442.

However, in determining whether the imposition of punitive damages is justified, the Court must also consider evidence of the Incarcerated Defendants' ability to pay. See Berry v. Anderson, 502 A.2d 717, 721 (Pa. Super. Ct. 1986) (noting that "punitive damages, to effectively deter reprehensible conduct, must be tailored to an individual's ability to pay."); Byrd v. Sacco, 1 Pa. D.&C. 5th 319, 333 (Ct. Comm. Pl. June 30, 2006) (noting it was relevant for the jury to consider evidence of the defendant's ability to pay punitive damages). Because the Incarcerated Defendants already owe $22,000,000.00 under the Restitution Agreement and $8,574,255.00 in compensatory damages

and $1,000,000.00 in punitive damages pursuant to the Court of Common Pleas' judgment, and because there is no evidence that the Incarcerated Defendants have an interest in additional assets recoverable by Plaintiff, the Court finds that the Incarcerated Defendants have no ability to pay an award of punitive damages. Accordingly, the Court will not award punitive damages with respect to the Incarcerated Defendants.

Moreover, though the Non-Incarcerated Defendants were the recipients of the Incarcerated Defendants' interests in the properties, the Court declines to find that Plaintiff has shown, by clear and convincing evidence, that the individual Non-Incarcerated Defendants acted with the requisite malice, vindictiveness, and wanton disregard for the rights of Plaintiff when agreeing to accept the transfer of the Incarcerated Defendants' interests in the properties, which would merit the imposition of punitive damages.

### 4. Pre and post-judgment Interest

Plaintiff finally requests that the Court award pre and post-judgment interest. In diversity cases, pre-judgment interest is governed by state law. See Yohannon v. Keene Corp., 924 F.2d 1255, 1265 (3d Cir. 1991); see also Talen Energy Marketing, LLC v. Aluminum Shapes, LLC, 19-4303, 2021 WL 534467, at *4 (E.D. Pa. Feb. 12, 2021). "[P]re-judgment interest may be awarded 'when a defendant holds money or property which belongs

in good conscience to the plaintiff, and the objective of the
court is to force disgorgement of his unjust enrichment.'"
Kaiser v. Old Repub. Ins. Co., 741 A.2d 748, 755 (Pa. Super. Ct.
1999) (quoting Dasher v. Dasher, 542 A.2d 164, 164-65 (Pa.
Super. Ct. 1988)). "Pennsylvania courts have awarded prejudgment
interest as of right in contract cases, 'but also as an
equitable remedy awarded to an injured party at the discretion
of the trial court.'" George M. Axilbund Trust, 2021 WL 5370828,
at *6 (quoting Somerset Community Hosp. v. Allan B. Mitchell &
Associates, Inc., 685 A.2d 141, 201 (Pa. Super. Ct. 1996)). As
Plaintiff points out, courts in this circuit have authorized the
award of pre-judgment interest in cases arising under the PUVTA.
See In re Blatstein, 260 B.R. at 722-23; Sikirica v. Wettach,
511 B.R. 760, 772-73 (W.D. Pa. 2014); Tiab Comm. Corp. v.
Keymarket of Nepa, Inc., 263 F. Supp. 2d 925, 947 (M.D. Pa.
2003).

Generally, "[t]he fairest way for a court is to decide
questions pertaining to interest according to a plain and simple
consideration of justice and fair dealing." George M. Axilbund
Trust, 2021 WL 5370828, at *6 (quoting Linde v. Linde, 220 A.3d
1119, 1150 (Pa. Super. Ct. 2019)). Courts in this circuit will
generally consider four factors in considering whether
prejudgment interest is warranted: (1) whether the claimant has
been less than diligent in prosecuting the action; (2) whether

the defendant has been unjustly enriched; (3) whether an award would be compensatory; and (4) whether countervailing equitable considerations militate against a surcharge. Feather v. United Mine Workers, 711 F.2d 530, 540 (3d Cir. 1983); In re Blatstein, 260 B.R. 698, 721 (E.D. Pa. 2001); Tiab Comm. Corp., 263 F. Supp. 2d at 947.

Here, Plaintiff contends it is entitled to pre-judgment interest because Plaintiff has been diligent in prosecuting the action, such interest would compensate Plaintiff for the necessary time and expenses of litigating this matter, and because no countervailing considerations militate against this award. Defendants do not dispute this. The Court agrees that Plaintiff is entitled to prejudgment interest here.

Under Pennsylvania law, unless otherwise specified by the parties, the rate of prejudgment interest is calculated as simple interest at a rate of six percent per year. 41 Pa. Stat. Ann. § 202 (West 1999). Thus, pre-judgment interest will be calculated based on the undisputed value of the seven properties from the date by which they were fraudulently transferred, less the value of any mortgage or other liens.[42]

Plaintiff is also entitled to post-judgment interest.

---

[42]   Because the Court will award only equitable relief with respect to the three properties not subject to the Restitution Agreement, the Court will award pre-judgment interest with respect to the remaining seven properties only.

The award of post-judgment interest is governed by the federal post-judgment interest statute, 28 U.S.C. § 1961. See Pierce Assocs., Inc. v. Nemours Found., 865 F.2d 530, 548 (3d Cir. 1988) (noting that issues of post-judgment interest were "governed by 28 U.S.C. § 1961 notwithstanding that this is a diversity action"); see also Allstate Ins. Co. v. Clymer, No. 93-0348, 1994 WL 423875, at *2 (E.D. Pa. Aug. 11, 1994) (collecting cases) ("As a general rule in federal cases where jurisdiction is based on diversity of citizenship, federal courts have held that post-judgment interest is governed by the federal post-judgment interest statute rather than by state law."); Talen Energy Marketing, LLC, 2021 WL 534467, at *5 (same).

Section 1961(a) states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). The statute mandates that such interest be "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." Id. Section 1961(b) requires that interest be computed "daily to the date of payment" and "compounded annually." Id. § 1961(b).[43]

---

[43]    The applicable post-judgment interest rate is 3.12%.

Defendants do not oppose the imposition of post-judgment interest. Accordingly, Plaintiff is entitled to post-judgment interest in accordance with 28 U.S.C. § 1961.

### 5. Attorneys' Fees

Plaintiff contends that it is entitled to receive attorneys' fees here. Under Pennsylvania law, "a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." Trizechahn Gateway LLC v. Titus, 976 A.2d 474, 482-83 (Pa. 2009).

Plaintiff argues that because section 5107(a)(3)(ii) of the PUVTA allows the Court to grant "any other relief circumstances may require," Pa. C.S. § 5107(a)(3)(iii), Plaintiff is entitled to reasonable attorneys' fees and legal costs. However, "there is no express statutory authorization for an award of attorneys' fees" under the PUVTA, or evidence of another established exception here. Wells Fargo Bank, Nat'l Assoc. v. Akanan, ___ F. Supp. 3d ___, 2021 WL 5910422, at *5 (W.D. Pa. 2021). Though section 5107(a)(3)(ii) of the PUVTA provides for a "catch-all" damages provision, because attorneys' fees are not explicitly authorized by the statute, the Court will decline to award attorney' fees here. See id. (holding that the plaintiff was not

entitled to attorneys' fees with respect to its claim of

fraudulent transfer under the PUVTA).[44]

## IV.   CONCLUSION

For the foregoing reasons, judgment on Count I of the

Complaint will be entered in favor of Plaintiff and against

Defendants. The following three transfers will be voided: (1)

the transfer of Bahaa Dawara's interest in 19 Ridgeway Avenue,

Norwood, PA 19074 to Faten Dawara (a/k/a Fatan Dawara); (2) the

transfer of Imad Dawara's interest in 305 Seminole Street,

Essington, PA 19029 to Maisaa Dawara; and (3) the transfer of

Imad Dawara's interest in 407 Seminole Street Essington, PA

19029 to Mirvat Dawara. Title to these properties will be

returned to the Incarcerated Defendants and, consistent with Pa.

C.S. § 5107(a)(3)(iii), the Incarcerated Defendants will be

permanently enjoined from further transferring their interests

in these properties until further order of the Court.

Plaintiff will be entitled to a judgment for the value of

the remaining seven properties. Defendants will be jointly and

severally liable for the value of the seven properties as

provided for in the accompanying Order and Judgment. Plaintiff

will be entitled to pre and post-judgment interest, which will

---

[44]    In any event, even if attorneys' fees were available under
the PUVTA, the Court would exercise its discretion and, in
considering the extent of the financial award in this case,
decline to award attorneys' fees here.

be calculated from the value of the seven properties subject to the Restitution Agreement. Plaintiff's request for punitive damages and attorneys' fees will be denied.

Because Plaintiff has failed to provide evidence supporting its allegation that the Incarcerated Defendants fraudulently transferred other unidentified assets to the Non-Incarcerated Defendants, as pled in Count II of the Complaint, Count II of the Complaint will be dismissed. Plaintiff also requests additional relief under Counts III, IV, and V of the Complaint. Because Plaintiff has not proven entitlement to additional relief that would not be duplicative of the relief awarded under Count I, Counts III, IV, and V will be dismissed as well.

An appropriate order follows.