# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHESTNUT STREET CONSOLIDATED, LLC,** | : | CIVIL ACTION |
| | : | |
| | : | |
| Plaintiff, | : | NO. 21-3046 |
| | : | |
| v. | : | |
| | : | |
| **BAHAA DAWARA,** | : | |
| | : | |
| **IMAD DAWARA,** | : | |
| | : | |
| **FATAN DAWARA** <br> **a/k/a FATEN DAWARA** | : | |
| | : | |
| **MAISAA DAWARA,** | : | |
| | : | |
| **MIRVAT DAWARA,** | : | |
| | : | |
| **ABEER NAIM,** | : | |
| | : | |
| **HITHAM ALBAROUKI** <br> **a/k/a HAITHAM ALBAROUKI,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

### PLAINTIFF CHESTNUT STREET CONSOLIDATED, LLC'S OMNIBUS REPLY IN SUPPORT OF MOTION TO ENFORCE ORDER AND HOLD CERTAIN DEFENDANTS IN CONTEMPT AND IN OPPOSITION TO THE MOTION TO STAY THE JUDGMENT PENDING APPEAL

Plaintiff, Chestnut Street Consolidated, LLC ("CSC"), by and through Gellert Scali Busenkell & Brown, LLC, its undersigned counsel, in the interests of justice, submits this omnibus reply in opposition to the Non-Incarcerated Defendants' Motion to Stay the Judgment pending appeal (the "Motion for Stay", ECF #147) and in further support of CSC's Motion to Enforce Court Order and Hold Certain Defendants in Contempt (the "Motion to Enforce", ECF #141, and

together with the Motion for Stay, the "Motions"). A hearing on both motions has been set for November 9, 2022.

### The Two Motions are Related

The Motions are largely interrelated: many questions of relevant fact and law overlap and the Court's decision to grant one of the Motions is likely to mean (and coincide with) a denial of the other Motion. An exception to the correlation appears to be the issue of contempt which may be decided separately from the balance of relief sought in the Motion to Enforce.

The Incarcerated Defendants, Bahaa and Imad Dawara, have not opposed the Motion to Compel. Given the non-opposition of the Incarcerated Defendants to the Motion to Compel, at issue here are the diametrically opposed positions seeking enforcement of the Court's Order entered on August 3, 2022 (the "Order") (under the Motion to Compel) or stay of enforcement of the order (under the Motion for Stay), with regard to three transferee defendants, Maisaa, Mirvat and Faten Dawara (the "Fraudulent Transferee Defendants").

The Court found that the Fraudulent Transferee Defendants improperly obtained title to the three Subject Properties. By its Order, the Court ordered the transfer of title to these properties back to the Incarcerated Defendants, so that CSC may proceed with its judgment execution against those properties.

### Defendants Concede Their Contempt

The Incarcerated Defendants have not opposed the Motion to Enforce and should be held in contempt as requested by CSC.

2

The Fraudulent Transferee Defendants admit in their response (ECF #146) that they have neither obtained a stay of the Order nor complied with its terms. Instead, 82 days later, they filed a motion seeking a stay of the Court-ordered deadline that had expired 55 days prior.

The Supreme Court succinctly stated in *Maness v. Meyers*, 419 U.S. 449, 458-59 (1975): "We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, **but absent a stay**, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt **even if the order is ultimately ruled incorrect** [*emphasis added – citations omitted*]. The orderly and expeditious administration of justice by the courts requires that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings' [*citations omitted*] . . . Remedies for judicial error may be cumbersome but the injury flowing from an error generally is not irreparable, and orderly processes are imperative to the operation of the adversary system of justice."; *accord, e.g.,* *United States v. United Mine Workers of America*, 330 U.S. 258, 312 (1947) (Frankfurter, J., concurring in affirmance of criminal contempt ruling) ("If one man can be allowed to determine for himself what is law, every man can. That means first chaos, then tyranny."). *See also, e.g.*, the Supreme Court's bankruptcy law ruling in *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 129 S.Ct. 2195, 2204-2206 (2009).

"It is well-settled that the mere filing of an appeal, in the absence of a stay of proceedings, cannot operate as an injunction where none has been granted by the court below; otherwise stated, an appeal from a decree dismissing a complaint seeking an injunction, or refusing to grant an injunction, will not disturb the operative effect of such a decree, and where the act sought to be

restrained has been performed, the appellate courts will deny review on the ground of mootness." *Brill v. General Industrial Enterprises*, 234 F.2d 465 (3rd Cir. 1956)[*citing Mills v. Green*, 1895, 159 U.S. 651, 16 S.Ct. 132, 40 L.Ed. 293].

The civil contempt has been established by clear and convincing evidence: The Incarcerated Defendants raise no defense.  The Fraudulent Transferee Defendants admit they have not complied with a clear and unambiguous court order, refuse to do so, and have not obtained a stay.  *Inmates of the Allegheny County Jail v. Wecht*, 754 F.2d 120, 129 (3d Cir.1985).

Pursuant to Federal Rule 62(c)(1), the injunctive nature of the judgment directed defendants to sign and deliver the deeds.  In these circumstances, Federal Rule 70 authorizes the Court to enter a judgment vesting title in the Plaintiff.

## Defendants' Arguments Are Not Defenses to Contempt

Federal Rule 62 clearly provides that "the following are not stayed after being entered, even if an appeal is taken: (1) an interlocutory or final judgment in an action for an injunction . . ."  The rule makes it clear that the filing of the notice of appeal did not stay the injunctive effect of the order requiring the transfer of the three properties.  An injunction is an order issued by a judge that forces a person or entity to perform an action or stop taking certain action. To the extent that the Order required Fraudulent Transferee Defendants to transfer property by signing and providing deeds, it contained an injunction.  The decision to grant permanent injunctive relief is an act of equitable discretion by the district court. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006).

Fraudulent Transferee Defendants argue that they should not be found in contempt because there is no obstruction to the *status quo* by letting them reside in all of the properties for free pending the resolution of the current appeal. This is obviously not so: the *status quo* that must be

4

protected is not the situation that existed before the Order, but rather the situation that existed after it, i.e. where Plaintiff has an immediate judgment lien over the properties and can execute on the properties to satisfy the court judgment entered by the Court of Common Pleas in Philadelphia. To preserve this new *status quo*, Plaintiff's losses from the delayed execution must be protected against and the Plaintiff must be protected from any breach in the status of the properties. Plaintiff will elaborate on the issue of *status quo* further below.

Fraudulent Transferee Defendants also claim without any proof that mortgages, taxes, insurance and expenses are being paid. However, plaintiff remains skeptical because when plaintiff requested proof of this, nothing was provided. Moreover, one of the few documents provided to Plaintiff during trial shows that the mortgage past due for over a year as of early 2022. In any event, even if Fraudulent Transferee Defendants' factual allegations may be proven true, this argument is not a defense to contempt.

It has been 55 days since the defendants were required to comply with the Order.  Absent a stay, they were obligated to comply with the Order.  They admit they have not done so. They have instead elected to take the law into their own hands, ignore the Court and thumb their noses at the Court despite the Order that clearly directs them to transfer the titles. This is precisely the type of conduct that the Supreme Court has warned must be prevented. *Maness v. Meyers*, 419 U.S. 449, 458-59 (1975).

Fraudulent Transferee Defendants argue that they should not be found in contempt because the Court did not award the properties to plaintiff. Defendants intentionally overlook the state court judgment that plaintiff has obtained against the transferors of these properties – the Incarcerated Defendants. That judgment will attach to the properties immediately upon their retransfer as ordered by the Court, and these properties will then be immediately available for execution. The

5

Fraudulent Transferee Defendants' refusal to retitle the properties further delays the plaintiff's realization of the losses sustained as a result of a fire in 2018. Fraudulent Transferee Defendants do not cite to any authority suggesting this could be a defense to contempt, as none exists.

Fraudulent Transferee Defendants appear to argue that the Court's "inherent" authority under Federal Rule of Civil Procedure 70 does not apply here because the Fraudulent Transferee Defendants have appealed.  To the contrary, Rule 70 provides the Court with specific actual authority to divest defendants of ownership of the property because the defendants have failed and have refused to do as ordered with in the time period provided by the Court. All of the prerequisites of Rule 70 are admitted by Fraudulent Transferee Defendants in this case which triggers the Court's discretion to exercise its authority under Rule 70 and enter a judgment either divesting Fraudulent Transferee Defendants' title and vesting it in CSC subject to existing liens or divesting defendants' title and vesting it in the names of the Incarcerated Defendants. Fraudulent Transferee Defendants argue no pertinent facts or circumstances to mitigate their conduct or otherwise deter the Court from exercising the discretion provided by the Rule.

The arguments raised by the Fraudulent Transferee Defendants are not defenses to contempt. In these circumstances, Federal Rule 70 authorizes the Court to enter a judgment vesting title in the Plaintiff.

### *Status Quo*

The Fraudulent Transferee Defendants misconstrue the term "*status quo*" to preserve the situation during appeal as *their status quo* that existed *before* the Order, when they occupied the properties rent-free and kept title in their names. The *status quo* that must be preserved on appeal is the situation just *after* the Order was entered, namely where CSC is entitled to the *immediate* transfer of the properties back to the arsonists' names, CSC enjoys an immediate judgment lien in

its favor and in which CSC can *immediately* collect. Effectively this would mean an execution sale auction where CSC either *immediately* collects the full value of arsonists' equity in the properties (if CSC does not credit-bid and a third party buys them) or *immediately* begins to receive their rental value (if CSC credit-bids and obtains title).

Every day this process is delayed, CSC continues to suffer further damages in either rental payments which will never come and are effectively abated, or in delayed access to sale proceeds and the time value of such proceeds. These abatements and delays have real money value. CSC has waited long enough for the pre-Order "status quo" to be perpetuated any longer.

A bond for *at least* the full value of the equity in the properties plus reasonable interest to account for the time value of delay would be required to protect CSC.

The only alternative CSC sees that would at least effectively preserve a semblance of the appropriate "*status quo*" and protect CSC from further harm is one where the fair rental value of the properties is deposited into an escrow account from which CSC is able to collect if the appeal fails.

Defendants' nonsensical statement that "the properties are not going anywhere" does not provide any comfort that CSC's right to *status quo* is being respected, let alone protected.  The properties are subject to potential liens and claims of creditors of the Fraudulent Transferee Defendants.  The properties are subject to wear and tear and the value for use of the properties is lost to CSC.

**Plaintiff's Opposition to Fraudulent Transferee Defendants' Motion to Stay the Judgment**

Fraudulent Transferee Defendants must meet a heavy burden to justify the "extraordinary remedy" of a stay pending appeal. *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985).  Fraudulent Transferee Defendants fail to meet their burden as to each of the four

factors that this Court must consider in determining whether to grant a stay: (1) their appeals have little chance of success on the merits; (2) they have not shown irreparable harm absent a stay; (3) a stay would substantially injure the other parties interested in the proceeding; and (4) the public interest weighs heavily against a stay. *See Nken v. Holder*, 556 U.S. 418, 129 S. Ct. 1749 (2009). The first two factors are the most critical," and "require a showing of more than mere possibility." *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015).

Fraudulent Transferee Defendants have not persuasively demonstrated that they have a substantial likelihood of success on appeal. The motion does not specify any reason why they expect to prevail on appeal. No substantial question is argued. No issue on appeal is elucidated. No case authority is cited. No split of applicable authority is argued. Conclusory statements and repetition of their defenses at trial will not make their case any stronger. No new information, authority or analysis has been argued. There is simply no basis to conclude that they have demonstrated any, let alone a sufficient, probability of success on the merits of their appeal. On the other hand, the Court's analysis of the case after several days of trial was careful and correct. *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015). Thus, this factor is fatal to the proposed injunction pending appeal.

To justify the extraordinary remedy of a stay, a showing of irreparable harm is crucial. *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015). No factual showing has been made to show how Fraudulent Transferee Defendants will be irreparably harmed by denial of a stay. Without articulating why, Fraudulent Transferee Defendants seem to suggest that the stay is connected to their success on appeal. "[T]he fact that the decision on the stay may be dispositive of the appeal in some cases is a factor that an appellate court must consider," yet that factor "alone does not justify pretermitting an examination of the nature of the irreparable injury alleged and the particular

8

harm that will befall the appellant should the stay not be granted." *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991).    The Fraudulent Transferee Defendants wish to continue to reside in the three properties that were obtained from the arsonists but that is not irreparable harm.   Thus, the lack of irreparable harm is a critical factor that is fatal to the proposed injunction pending appeal.

The harm to plaintiff is clear.   Plaintiff continues to suffer losses stemming back to a fire started in 2018.   Enjoining the transfer of the three properties and execution on the monetary judgments would substantially continue to injure the plaintiff whose rights were derived from tort victims.   Despite clear entitlement to recovery, the Plaintiff has been delayed any recovery for several years due to fraudulent transfers.   Plaintiff has an interest in seeing justice implemented as soon as possible. Thus, this factor weighs against the proposed injunction pending appeal.

The public interest is not served by permitting recipients of fraudulent transfers to delay the relief to tort victims who have obtained a judgment.   The law must protect the victims and enforce promptly the remedies earned after a full trial. The public interest will be harmed by granting an injunction pending appeal.

Turning to the Third Circuit's analysis: "Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) and (b) will suffer irreparable harm absent a stay? . . .   if the movant does not make the requisite showings on either of these [first] two factors, the [ ] inquiry into the balance of harms [and the public interest] is unnecessary, and the stay should be denied without further analysis." *In re Revel AC, Inc*., 802 F.3d 558, 571 (3rd Cir. 2015).   The factors to determine the propriety of a stay weigh solidly against one. First, that Plaintiff would prevail on the merits was all but assured

because nothing in the record casts doubt on the validity of the court's judgment.  Second, Defendants have failed to demonstrate that, absent a stay there would be irreparable harm.

**Preservation of the *Status Quo***

Alternatively, if the Court determines that a stay is appropriate, the *status quo* can be maintained only with a bond for the full market value of the three properties[1] of $813,600.00 and fair market rent for 12 months which totals $54,720[2].  Additionally, plaintiff is entitled to a bond from the Monetary Judgment Debtors (Bahaa, Faten, Imad and Abeer Dawara) for the total sums due under the monetary part of the judgment[3]:

| Property | Judgment Debtors | Base Judgment Amount | Mortgage Offset | Net Judgment Amount |
|---|---|---|---|---|
| 134 Garfield | Bahaa and Faten | 324,900 | | 324,900 |
| 140-142 Garfield | Bahaa and Faten | 289,000 | 136,000 | 153,000 |
| 312 Fern | Bahaa and Faten | 73,800 | | 73,800 |
| | | | **Total Bahaa and Faten:** | **551,700** |
| | | | | |

---

[1] 19 Ridgeway Ave $350,600; 305 Seminole St $240,800; 407 Seminole St $222,200. Plaintiff's Trial Exhibit 7.

[2]  The $4,560 amount per month was determined by adding up the following 2022 Fair Market Rent figures from the HUD report (also see
         https://www.huduser.gov/portal/datasets/fmr/fmrs/FY2022_code/select_Geography.odn):
19 Ridgeway – 4 bedrooms in Zip 19074 – $1,540
305 Seminole – 3 bedrooms in Zip 19029 – $1,410
407 Seminole – 4 bedrooms in Zip 19029 – $1,610
The values were extracted from Plaintiff's Trial Exhibit 10.

[3] The Plaintiff and Fraudulent Transferee Defendants agreed to the contents of this chart in connection with the Third Circuit Appeal. The values were established by Plaintiff's Trial Exhibit 7.  The offsets were provided by counsel for the Fraudulent Transferee Defendants.

10

| 1524 McKean | Imad and Abeer | 305,400 | 190,000 | 115,400 |
| 321 Massasoit | Imad and Abeer | 258,600 | 197,000 | 61,600 |
| 224 Erickson | Imad and Abeer | 203,000 | | 203,000 |
| 1007 Milmont | Imad and Abeer | 528,700 | | 528,700 |
| | | | **Total Imad and Abeer:** | **908,700** |

Courts also provide for pre and post judgment interest in the appeal bond. Based on the judgment, those sums are calculated as follows:

BAHAA DAWARA and FATAN DAWARA, a/k/a FATEN DAWARA

|  |  |  |
|---|---|---|
| Judgment Amount Due | | $ 551,700.00 |
| 6% Interest[4] from 12/31/19-08/03/22 | | $   85,793.13 |
| 3.12% Interest 08/03/22-10/10/22 | | $     3,206.81 |
| | Total: | $ 640,699.94 |
| **($47.16 per diem thereafter)** | | |

IMAD DAWARA and ABEER NAIM

|  |  |  |
|---|---|---|
| Judgment Amount Due | | $  908,700.00 |
| 6% Interest 12/31/19-08/03/22 | | $  141,309.07 |
| 3.12% Interest 08/03/22-10/10/22 | | $      5,281.91 |
| | **Total:** | **$1,055,290.98** |
| **($77.67 per diem thereafter)** | | |

Therefore, the *status quo* can be preserved in this case with a bond in the total sum of no less than $2,509,590.92. The purpose of an appeal bond is to maintain the *status quo* during appeal

---

[4] Per the court's decision, pre-judgment interest will be calculated based on the value of the seven properties as determined by the court, from the date by which they were fraudulently transferred, less the value of any mortgage or other liens at 6 percent and post judgment interest will be calculated at 3.12 percent. Transfer deeds for the properties were executed in October 2019, with titles recorded in December 2019. For purposes of interest calculation, the date of December 31, 2019 is being used, with 6% per annum calculated through the date of the judgment, August 3, 2022, and 3.12% per annum thereafter.

whereby the surety insurer issues a guarantee, on behalf of the appellants, to the appellee that, if the judgment is affirmed, the surety will pay the appellee if the appellants are unable to do so. *Poplar Grove Planting & Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190-91 (5th Cir. 1979).

The bond secures the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal.'" *Poplar Grove Planting & Ref. Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190-91 (5th Cir.1979). *See also, Crane v. Buckley*, 203 U.S. 441, 27 S.Ct. 56, 51 L.Ed. 260 (1906). The amount of the bond and the sufficiency of the sureties are matters of discretion of and for determination by the Court. *C. Albert Sauter Co., Inc. v. Richard S. Sauter Co., Inc.*, 368 F.Supp. 501 (E.D. Pa. 1973).

Without Fraudulent Transferee Defendants' compliance with the order or an adequate bond, Plaintiff will not only suffer loss from delay, but it also has no assurance that the value of the three properties will be preserved by incurring no further indebtedness (reducing equity in them and therefore plaintiff's eventual recovery). Fraudulent Transferee Defendants will continue to unfairly enjoy rent-free occupancy of three houses that do not belong to them, while the plaintiff is forestalled from execution and ultimately is deprived of such rental income. Finally, plaintiff also runs the risk that the properties may be uninsured, and if they are damaged or destroyed by a casualty such as fire, potentially wiping out plaintiff's entire eventual recovery. Defendants' assurances that the properties are insured ring hollow – no proof of this was provided, but since the true owners of the properties are convicted arsonists and insurance fraudsters, coverage may be denied if the situation has not been fully disclosed. The sooner title to the properties is out of the arsonists' and their family members' names, the sooner effective insurance protection can be obtained – in the name of the new title owner, such as CSC or a third-party purchaser.

Under the circumstances where a judgment debtor appellant seeks to except itself from the usual requirements of a full security appeal bond, the judgment debtor bears the burden to objectively demonstrate the reasons for such a departure. *Poplar Grove Planting & Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190-91 (5th Cir. 1979). It is not the burden of the judgment creditor to initiate contrary proof. While the court may condition a stay of execution under appropriate circumstances so long as the order adequately preserves the assets of the defendants for execution, the judgment debtor bears the responsibility of establishing the circumstances with evidence. *C. Albert Sauter Co., Inc. v. Richard S. Sauter Co., Inc.*, 368 F.Supp. 501 (E.D. Pa. 1973). It is noteworthy that CSC propounded discovery in aid of execution on September 22, 2022, to determine the assets and financial wherewithal of the defendants. To date, no response has been provided.

**Alternative Relief: Adequately Preserve the Assets of Defendants for Execution**

Courts have been held to have the power in extraordinary circumstances to provide conditions for the form and amount of security for a stay pending appeal. *C. Albert Sauter Co., Inc. v. Richard S. Sauter Co., Inc.*, 368 F.Supp. 501 (E.D. Pa. 1973).

As another alternative to Fraudulent Transferee Defendants posting a bond or immediately complying with the Court's judgment, Plaintiff consents to a stay of execution pending appeal, on the following conditions that will ensure Plaintiff's protection from the potential risks and losses but will also ensure that the Fraudulent Transferee Defendants get title to their property back if their appeal is successful:

1.    Title to the three properties ("Premises") is transferred to Plaintiff immediately, but Plaintiff is enjoined from transferring title to any other party or otherwise encumbering the properties pending the outcome of appeal.

13

2.      The Fraudulent Transferee Defendants must pay rent in the amount of $4,560 per month into an escrow account held by Plaintiff's counsel (Escrow Account) or vacate immediately if they fail to do so (in which case Plaintiff is free to rent or sell the properties as it chooses, with all proceeds going to the Escrow Account). A standard Pennsylvania Association of Realtors lease agreement, with names and terms filled out will govern the landlord-tenant relationship between the parties while the appeal is pending.

3.      The Mortgage for 19 Ridgeway will be paid from the Escrow Account. Fraudulent Transferee Defendants shall promptly provide mortgage statements to Plaintiff's counsel.

4.      Plaintiff will obtain landlord's insurance in its name for all three properties, which will be paid for from the escrow account.

5.      The Fraudulent Transferee Defendants will remain responsible to pay real estate taxes, municipal claims, utilities and tenant's insurance for all three properties, with proof of non-delinquency provided to Plaintiff's counsel upon request.

6.      The Fraudulent Transferee Defendants will remain responsible to repair and maintain the Premises in good and habitable condition.

7.      If the appeal is granted, Plaintiff will relinquish title to the properties back to the Fraudulent Transferee Defendants or as otherwise directed by the Court, and turn over the remaining balance in the escrow account.

8.      If the appeal is denied, the escrow balance will be paid to Plaintiff.  The escrow balance and the full market value of the three properties less any mortgage balances then due will be credited to the monetary state court judgment. Plaintiff will

14

immediately own the Premises in fee (any injunction affecting its interests will be terminated) subject to existing mortgages and Plaintiff will exercise all the rights of a month-to-month landlord with respect to any remaining leases in place.

These conditions that will ensure Plaintiff's interest in the properties is protected but will also ensure that the Fraudulent Transferee Defendants may continue to reside in the properties and have their property returned if their appeal is successful.

WHEREFORE Plaintiff respectfully requests that the Court find defendants in contempt of this Court's order dated August 3, 2022 ("Order"), that the Court enforce the Order by, among other things, entering an order directed to the Recorder of Deeds directing transfer of title to the properties from defendants to Plaintiff subject to existing mortgages and that the Court deny the defendants' motion to stay execution on the judgment pending their appeal.

Dated: November 2, 2022        GELLERT SCALI BUSENKELL & BROWN LLC

By:   /s/ Gary F. Seitz
       Gary F. Seitz
       8 Penn Center
       1628 JFK Blvd, Suite 1901
       Philadelphia, PA 19103
       Counsel for the Plaintiff
       Chestnut Street Consolidated, LLC

## CERTIFICATE OF SERVICE

I, Gary F. Seitz, hereby certify that on November 2, 2022, I caused a true and correct copy of the foregoing **Omnibus Reply of Plaintiff** to be served on all parties of record by email and ECF transmission.

/s/ Gary F. Seitz

Gary F. Seitz

16